Filing # 56527218 E-Filed 05/16/2017 07:09:01 PM

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA
CIVIL DIVISION

VINCENT DERAMO, JR.,
TRACY DERAMO, as Husband and Wife, and
VINCENT W. DERAMO AS TTEE U/A AS TO
AN UNDECIDED ½ INTEREST AND
TRACY DERAMO AS TTEE U/A AS TO AN
UNDECIDED ½ INTEREST, and
HOMES BY DERAMO, INC.,

     Plaintiffs,

vs.                                                  Case No: 2017 CA _____

WORLD BUSINESS LENDERS, LLC, and
WBL SPE II, LLC

     Defendant.

_____/

## COMPLAINT

Plaintiffs, VINCENT DERAMO, JR., TRACY DERAMO, and HOMES BY DERAMO,

INC., sue Defendants, WORLD BUSINESS LENDERS, LLC and WBL SPE II, LLC, and

allege:

### COUNT I
### DECLARATORY JUDGMENT

1.    This is a cause of action seeking a declaratory judgment pursuant to Florida

Statutes Chapter 86.

2.    Vincent DeRamo, Jr. and Tracy DeRamo are husband and wife and residents of

Sarasota County, Florida.

3.    Homes by DeRamo, Inc. (hereinafter sometimes referred to as "HBD") is a

Florida corporation that performs general contractor services in Sarasota County,

1

Florida. Vincent DeRamo, Jr. is the President and CEO of Homes by DeRamo, Inc.

4.     On March 27, 2001, Vincent DeRamo, Jr. and Tracy DeRamo transferred their Homestead property for estate planning purposes to VINCENT W. DERAMO AS TTEE U/A AS TO AN UNDECIDED ½ INTEREST AND TRACY DERAMO AS TTEE U/A AS TO AN UNDECIDED ½ INTEREST. It remains their Homestead.

5.     World Business Lenders, LLC (hereinafter sometimes referred to as "WBL") is a New York corporation with its principal office in New York City.

6.     Upon information and belief, WBL SPE II, LLC (hereinafter sometimes referred to as "WBL SPE") is an affiliate of World Business Lenders, LLC, and is a Delaware corporation.

7.     In the Fall of 2015, HBD became in need of a short term loan for cash flow purposes.

8.     WBL contacted Vincent DeRamo, Jr. and HBD proclaiming it was an agent for the Bank of Lake Mills, a Wisconsin Bank, and offered to loan HBD $400,000 for one year at 15% interest if Vincent DeRamo, Jr. signed a personal guaranty and VINCENT W. DERAMO AS TTEE U/A AS TO AN UNDECIDED ½ INTEREST AND TRACY DERAMO AS TTEE U/A AS TO AN UNDECIDED ½ INTEREST signed a mortgage against their Homestead property and pledged their Sarasota Homestead as collateral.

9.    The loan documents were signed in Sarasota, Florida on November 8, 2015 and
      returned to New York. The promissory note and personal guarantee is attached as
      Exhibit 1 and the mortgage is attached as Exhibit 2.

10.   The documents were prepared by WBL, were mailed to WBL, and at no time did
      the Plaintiffs have any contact with Bank of Lake Mills or the State of Wisconsin.

11.   Nowhere in any of the loan documents is the rate of interest disclosed.

12.   From November 15, 2015 through March 23, 2016, HBD made payments totaling
      $265,142.60 to WBL in New York.

13.   On or about March 24, 2016, WBL and HBD negotiated a refinance of the
      November 8, 2015 loan.

14.   Again, WBL told Vincent DeRamo, Jr. and HBD that the terms of the loan would
      be 15% interest, with a one year term.

15.   Despite the fact that HBD had paid $265,142.60 in less than four months, the
      $400,000 principal was increased to $457,625, but HBD received only
      $106,596.84 in additional funds.

16.   As with the first loan, WBL required that Vincent DeRamo, Jr. sign a guaranty
      and VINCENT W. DERAMO AS TTEE U/A AS TO AN UNDECIDED ½
      INTEREST AND TRACY DERAMO AS TTEE U/A AS TO AN UNDECIDED
      ½ INTEREST pledge their Homestead as collateral.

17.   On March 24, 2016, the promissory note, guaranty, and mortgage were signed in
      Sarasota, Florida and returned to WBL in New York. A copy of the promissory
      note and guaranty is attached as Exhibit 3 and the mortgage is attached as Exhibit
      4.

18. The documents were prepared by WBL, were mailed to WBL, and at no time did the Plaintiffs have any contact with Bank of Lake Mills or the State of Wisconsin.

19. Between March 24, 2016 and May 3, 2016, HBD paid WBL $78,548.82 in New York.

20. On the same day as Exhibits 3 and 4 were signed, March 24, 2016, the mortgage was assigned for Bank of Lake Mills to WBL (Exhibit 5). The assignment was signed by Alex Nadler, Vice President of WBL, as Power of Attorney for Bank of Lake Mills.

21. In March of 2016, HBD contacted WBL in New York requesting a loan against two empty lots located in Sarasota County.

22. WBL agreed to loan HBD $91,425 at 15% interest for a one year term and required the personal guaranty of Vincent DeRamo, Jr., a mortgage on the two lots, and a mortgage on the Sarasota Homestead of Vincent DeRamo, Jr. and Tracy DeRamo titled in the name of VINCENT W. DERAMO AS TTEE U/A AS TO AN UNDECIDED ½ INTEREST AND TRACY DERAMO AS TTEE U/A AS TO AN UNDECIDED ½ INTEREST.

23. On or about March 16, 2016, the loan documents were signed in Sarasota, Florida and returned to WBL in New York. A copy of the loan and guaranty is attached as Exhibit 6 and the mortgage as Exhibit 7.

24. On April 21, 2016, the lot loan mortgage was assigned by Bank of Lake Mills to WBL. This assignment was also signed by Alex Nadler as Vice President of WBL, as Power of Attorney for Bank of Lake Mills. The assignment is attached as Exhibit 8.

4

25.   Between March 16, 2016 and May 3, 2016, HBD paid WBL $14,729.00.

26.   In May of 2016, HBD became aware for the first time that WBL was charging
      interest at the rate of 72% for the November 15, 2015 loan, 73% on the March 24,
      2016 loan, and 73.6% on the March 17, 2016 loan, and stopped allowing daily
      payments to be withdrawn from its bank account.

27.   When HBD confronted WBL with the fact that it was being charged an
      outrageous and usurious interest rate, WBL replied that was because Wisconsin
      does not have usury loans on commercial loans and that despite the fact that HBD
      had no contact with the State of Wisconsin, the promissory notes prepared by
      WBL contained a provision that states that Wisconsin law applies.

28.   The mortgage, on the other hand, on Page 13 (again, prepared by WBL), state in
      bold the following:

              **"This mortgage will be governed by Federal law applicable to
              Lender and, to the extent not preempted by Federal law, the
              laws of the State of Florida without regard to its conflict of laws
              provisions. This mortgage has been accepted by the Lender in
              the State of Florida."**

29.   No substantial or normal relation exists between the loans and the State of
      Wisconsin.

30.   On May 8, 2017, the $457,625 mortgage and the $91,425 mortgages were
      assigned by WBL to WBL SPE II, LLC. Copies of the assignments are attached
      as Exhibits 9 and 10.

31. WBL SPE II, LLC was aware of the usurious interest being charged on these loans when they accepted the assignments.

32. There is a bona fide, actual, present, and practical need for the Declaratory Judgment.

33. The Declaration will deal with present ascertained or ascertainable states of facts or present controversy as to the state of facts.

34. That some immunity, power, privilege, or right of the Plaintiffs is dependent upon the facts and/or the law applicable to the facts.

35. All persons who have or reasonably may have an actual, present, adverse and antagonist interest in the subject matter are before the court by proper process.

36. The relief sought is not merely for the giving of legal advice by the court, or to answer questions propounded from curiosity.

37. The Plaintiffs contend that Florida law applies and the Florida usury laws must be applied to these loans and that pursuant to Florida Statutes Chapter 687, the interest charged is usurious and such usurious interest shall be forfeited to the Plaintiffs in an amount of double of what the Defendants received, took, or exacted.

38. The Plaintiffs are obligated to pay their attorney a reasonable fee and Defendants are liable for the payment of the Plaintiff's fees.

WHEREFORE, the Plaintiffs demand that the Court enter a Declaratory Judgment that Florida Law applies to these loans and mortgages upon the Plaintiffs' Homestead property and that the interest received, taken, or extracted by the Defendants is usurious and forfeited in an

amount to be doubled by the Court, and award the Plaintiffs' attorney's fees, interest, and court costs.

<div align="center">

**COUNT II**
**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA")**

</div>

39.    This is a cause of action seeking damages in excess of $15,000.00 for violation of FDUTPA, Florida Statute 501.201 – 501.213.

40.    Plaintiffs reallege Paragraphs 2 - 31 as if fully set forth herein.

41.    WBL actions to solicit loans from Florida residents and obtain mortgages upon their Homestead; to misstate the interest to be charged; to prepare loan documents that do not disclose the interest rate charged; and to utilize a "straw man" out of state bank to usurp Florida usury laws, resulting in interest in excess of 72%, 73%, and 73.6% are Deceptive and Unfair Trade Practices in violation of FDUPTA.

42.    As a direct and proximate result of WBL's violation of FDUTPA, Plaintiffs have sustained damages in excess of $15,000.00.

43.    Plaintiffs have retained the undersigned attorney and have agreed to pay him a reasonable fee for his services. Defendants are liable for the attorney's fees incurred by Plaintiffs in this action.

WHEREFORE, the Plaintiffs demand judgment for damages against the Defendants, plus interest, attorney's fees, and court costs.

<div align="center">

**DEMAND FOR JURY TRIAL**

</div>

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: May ___ 16 ___, 2017

_____
Dana J. Watts, Esq.
Florida Bar Number: 0292141
1620 Main Street, Suite One
Sarasota, FL 34236
(941) 955-5791 Telephone
(941) 951-2076 Facsimile
dana@danawattslaw.com Primary Email
legalassistant@danawattslaw.com Secondary
**Attorney for Plaintiffs**

Filing # 56527218 E-Filed 05/16/2017 07:09:01 PM

## BUSINESS LOAN SUMMARY*

| Borrower: Homes By De Ramo, Inc. 4610 Ashton Rd., Sarasota, FL 34233 | Lender: Bank of Lake Mills 136 E. Madison St., Lake Mills, WI 53551 |
|---|---|

**Disbursement to Borrower(s):**

$392,990.72

This amount is to be disbursed on 11/9/2015.

**Fees:**

$7,009.28

See Itemization on attached Page 2.

**Adjustments:**

$0

See Itemization on attached Page 2.

**Loan Amount:**

$400,000.00

See Itemization of attached Page 2.

**Interest Charge:**

$240,000.00

See Itemization on attached Page 2.

**Total Repayment Amount:**

$640,000.00

See Itemization on attached Page 2.

**Payment Schedule:** 209 payments of $3,047.62 due each "Business Day" commencing on 11/10/2015 until 9/8/2016, followed by a final payment of $3,047.42 on 9/9/2016 when any remaining outstanding Principal, interest and other unpaid charges shall be due and payable in full. "Business Day" means any Monday through Friday, except Federal Reserve holidays.

**Prepayment:** Borrower may make a full prepayment of unpaid Principal at any time accompanied by a prepayment premium. The prepayment premium will be equal to the greater of (a) fifteen percent (15%) of the amount of the unpaid Principal or (b) the aggregate amount required to be repaid by Borrower to Lender during the Repayment Period reduced by the sum of (i) the aggregate amount of any payments made by Borrower to Lender prior to the date of such prepayment and (ii) the amount of the unpaid Principal.

**Charges:** Returned (NSF/ACH) Payment Charge: $35.00.

*If there is any conflict between the terms of this Business Loan Summary and the related Business Promissory Note and Security Agreement entered into by Borrower, the terms of the Business Promissory Note and Security Agreement shall govern.

Borrower hereby acknowledge(s) reading and understanding all of the information disclosed above, and receiving a completed copy of this Business Loan Summary on the date indicated below.

Borrower: Homes By De Ramo, Inc.

By: _Vincent William De Ramo Jr._

Printed Name: Vincent William De Ramo Jr.

Title: president

Read, acknowledged and accepted on: This Day 07 of Month 11 of Year 2015

Rev. Sep 2014                                                                 P a g e  1



EXHIBIT
1

DocuSign Envelope ID: 3246BF42-FAE5-477A-9AA8-0149BBAA2461

## BUSINESS LOAN SUMMARY ITEMIZATION

| FEES | Description | Net Out | Capitalize |
|---|---|---|---|
| Processing | Standard processing fee | $795.00 | $0 |
| Notary | Fee for notary to collect vehicle titles and witness mortgage signing | $ | $ |
| Courier & Wire | Fee for courier and wire | $63.00 | $0 |
| Title Insurance | Fee for lenders Title Insurance Policy | $2,075.00 | $0 |
| Abstract Title Search | Fee for Title Search | $750.00 | $0 |
| Government Surcharge Fee | Fee for Government Surcharge | $3.28 | $0 |
| Residential Title Search & Exam | Fee for residential property lien search report(s) and exam | $0 | $0 |
| Residential BPO Fee | Fee for residential BPO | $385.00 | $0 |
| Commercial Title Search | Fee for commercial property lien search report(s) | $ | $0 |
| ALTA 8.1-06 | Environmental Protection Lien | $25.00 | $0 |
| Mortgage Recording | Fee for E-recording | $0 | $0 |
| Recording Service | Fee for title agency to record mortgage(s) | $205.50 | $0 |
| ALTA 9-06 | Restrictions, Encroachments & Minerals | $207.50 | $0 |
| Endorsements & Survey | Fee for change(s) in title insurance coverage | $0 | $0 |
| Closing Service Letter | Fee for closing service letter | $0 | $0 |
| Recordation Taxes | Fee for taxes and assessments | $2,200.00 | $0 |
| Settlement Fees | Fee for settlement | $300.00 | $0 |
| Additional Searches | Fee for Tidelands, and Upper court/Patriot Search | $0 | $0 |
| Prepaid Credit | Credit for prepayment of fees | $0 | $0 |
| Title Invoice | | $0 | $0 |
| Other 3 | | $0 | $0 |
| | TOTAL FEES | $7,009.28 | |

| ADJUSTMENTS | | | |
|---|---|---|---|
| Principal Balance (Refi Only) | Unpaid principal balance on previous loan | $0 | |
| Remaining Interest (Refi Only) | Unpaid interest due on previous loan | $0 | |
| Escrow | Amount in escrow to be released upon satisfaction of escrow condition(s) | $0 | |
| Third Party 1 Payoff | Payoff for City of Trenton | $0 | |
| Third Party 2 Payoff | Payoff for (Third Party 2) | $0 | |
| Third Party 3 Payoff | Payoff for (Third Party 3) | $0 | |
| Third Party 4 Payoff | Payoff for (Third Party 4) | $0 | |
| Other 1 | | $0 | |
| Other 2 | | $0 | |
| | TOTAL ADJUSTMENTS | $ | |

| BEGINNING PRINCIPAL | | | |
|---|---|---|---|
| Loan Amount Before Fees & Costs | | $400,000.00 | |
| Total Fees (Only if capitalize) | Sum of above itemized fees | $0 | |
| | TOTAL BEGINNING PRINCIPAL | $400,000.00 | |

| DISBURSEMENT AMOUNT | | | |
|---|---|---|---|
| Loan Amount Before Fees & Costs | | $400,000.00 | |
| Total Fees (Only if net out) | Sum of above itemized fees | $7,009.28 | |
| Total Adjustments | Sum of above itemized adjustments | $0 | |
| | TOTAL DISBURSEMENT | $392,990.72 | |

| INTEREST CHARGES | | | |
|---|---|---|---|
| Interest Charges | Total interest to be paid over the term of the loan | $240,000.00 | |
| | TOTAL INTEREST CHARGES | $240,000.00 | |

| TOTAL REPAYMENT | | | |
|---|---|---|---|
| Loan Amount Before Fees & Costs | | $400,000.00 | |
| Total Fees (only if capitalized) | Sum of above itemized fees | $0 | |
| Interest Charges | Total interest to be paid over the term of the loan | $240,000.00 | |
| | TOTAL REPAYMENT | $640,000.00 | |

Doc\_\_gn Envelope ID: 8246EF42-FAE5-477A-98A8-0149BBAA2461

BUSINESS LOAN AUTHORIZATION AGREEMENT FOR
DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS
(ACH DEBITS)

Date: 11/6/2015

**DISBURSEMENT OF BUSINESS LOAN PROCEEDS.** By signing below, Borrower authorizes Bank of Lake Mills, its successors and/or assigns ("Lender") to disburse the business loan proceeds, as evidenced by the Business Promissory Note and Security Agreement executed by Borrower of even date herewith, less the amount of any applicable fees, (a) by issuing (i) a check to Borrower or (ii) a check or bank wire to Borrower's checking account indicated below (or a substitute checking account Borrower later identifies and is acceptable to Lender) (hereinafter referred to as the "Designated Checking Account") or (b) by initiating an ACH credit entry to the Designated Checking Account. This authorization is to remain in full force and effect until Lender has received written notification from Borrower of its termination in such time and in such manner as to afford Lender and Borrower's depository bank a reasonable opportunity to act on it.

**AUTOMATIC PAYMENT PLAN.** Enrollment in Lender's Automatic Payment Plan is required for approval of the business loan. By signing below, Borrower agrees to enroll in the Automatic Payment Plan and authorizes Lender to collect payments required under the terms of the Business Promissory Note and Security Agreement by initiating ACH debit entries to the Designated Checking Account in the amounts and on the dates provided in the Payment Schedule set forth in the Business Promissory Note and Security Agreement. Borrower authorizes Lender to increase the amount of any scheduled ACH debit entry or assess multiple ACH debits for the amount of any previously scheduled payment(s) that was not paid as provided in the Payment Schedule and any unpaid charges. This authorization is to remain in full force and effect until the loan is paid in full or until Lender has received written notification from Borrower of its termination in such time and in such manner as to afford Lender and Borrower's depository bank a reasonable opportunity to act on it. Lender may suspend or terminate Borrower's enrollment in the Automatic Payment Plan immediately if Borrower fails to keep Borrower's Designated Checking Account in good standing or if there are insufficient funds in Borrower's Designated Checking Account to process any payment. If Borrower terminates this authorization or Lender suspends or terminates Borrower's enrollment in the Automatic Payment Plan, Borrower still will be responsible for making timely payments pursuant to the alternative payment method prescribed by Lender.

**BUSINESS PURPOSE ACCOUNT.** By signing below, Borrower attests that the Designated Checking Account was established by Borrower, and the loan proceeds will be used for business purposes only and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods.

**ACCOUNT CHANGES.** Borrower agrees to notify Lender promptly if there are any changes to the Designated Checking Account, including routing numbers.

**MISCELLANEOUS.** Lender are not responsible for any fees charged by Borrower's depository bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH transactions to Borrower's Designated Checking Account must comply with the provisions of U.S. law.

| Depository Bank Name: Suntrust | | |
|---|---|---|
| Branch: Sarasota, FL | | |
| City: Sarasota | State/Commonwealth: Florida | Zip: 34233 |
| Routing Number: 061000104 | Account Number: 0574000060097 | |
| Borrower Name: Homes By De Ramo, Inc. | Tax ID: 59-2508852 | |

BORROWER: Homes By De Ramo, Inc.

Signature: *Vincent William De Ramo Jr.*

Name/ Title: Vincent William De Ramo President

Date: 11/8/2015

*Rev. Sep 2014*

DocuSign Envelope ID: 8246BF42-FAE5-477A-98A8-0149BBAA2481

BUSINESS LOAN PURPOSE AFFIDAVIT

Date: 11/6/2015

AFFIDAVIT

STATE/COMMONWEALTH OF FL        )

                                )      ss.:

COUNTY OF _____          )

In connection with the business loan to Borrower evidenced by the Business Promissory Note and Security Agreement of even date herewith ("Loan Agreement"), Borrower being first duly sworn on oath deposes and states:

That the proceeds of the Loan Agreement of Four Hundred Thousand Dollars and Zero cents ($400,000.00), being furnished to Borrower will be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods.

Subscribed and sworn to by Borrower, under penalty of perjury, this _____ day of _____, in the year _____.

BORROWER: Homes By De Ramo, Inc.

By: _Vincent William De Ramo Jr._

Printed Name: Vincent William De Ramo Jr.

Title: president

Subscribed and sworn to me this _____ day of _____, in the year _____.

_____
Notary Public
My Commission expires:

*Rev. Sep 2014*

Docu... ...elope ID: 8246EF42-FAE5-477A-99A8-0148BBAA2461
...Bank of lake mills

## BUSINESS PROMISSORY NOTE AND SECURITY AGREEMENT

**BORROWER:** Homes By De Ramo, Inc.

**PRINCIPAL (including processing fees):** $400,000.00

**DATE:** 11/6/2015

1. **PROMISE TO PAY:** Homes By De Ramo, Inc.("Borrower"), with its principal place of business located at 4610 Ashton Rd., Sarasota, FL 34233, does hereby promise to pay to the order of BANK OF LAKE MILLS, its successors and/or assigns ("Lender") at its offices located at 136 E. Madison St., Lake Mills, WI 53551, or at such other location or in such other manner as designated by Lender, the sum of Four Hundred Thousand Dollars and Zero Cents ($400,000.00) ("Principal") plus interest at the daily interest rate set forth below in Section 2 in accordance with the payment schedule set forth below in Section 3. This Business Promissory Note and Security Agreement ("Loan Agreement") is accepted by Lender in Wisconsin.

2. **INTEREST RATE:** The unpaid Principal shall bear interest at the rate of 0.331513939726% per day until paid in full.

3. **PAYMENT SCHEDULE/APPLICATION OF PAYMENTS:** Borrower shall repay the Principal and interest commencing on 11/10/2015 and on each Business Day thereafter until 9/8/2016 with each daily payment equaling $3,047.62, followed by a final payment of $3,047.42 on 9/9/2016, when any remaining outstanding Principal, interest and other unpaid charges shall be due and payable in full. "Business Day" means any Monday through Friday, except Federal Reserve holidays. The period commencing on 11/10/2015 and ending on 9/9/2016 is referred to as the "Repayment Period."

All payments shall be made by automatic ACH debit from the "Designated Checking Account" set forth in the Business Loan Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) given by Borrower to Lender or pursuant to an alternative payment method prescribed by Lender, and Borrower shall maintain balances in the Designated Checking Account sufficient to make each daily payment due under this Loan Agreement.

Payments shall be applied on the date received first to late charges and other charges due under this Loan Agreement, then to unpaid accrued interest, and then to Principal.

4. **VOLUNTARY PREPAYMENT AND PREPAYMENT PREMIUM:** Borrower has the right to prepay the unpaid Principal in full at any time, but may not make partial prepayments (except as permitted by applicable law). Any such prepayment of the unpaid Principal shall be accompanied by a prepayment premium equal to the greater of (a) fifteen percent (15%) of the amount of the unpaid Principal as of the date of such prepayment or (b) the aggregate amount required to be repaid by Borrower to Lender during the Repayment Period reduced by the sum of (i) the aggregate amount of any payments made by Borrower to Lender pursuant to Section 3 above prior to the date of such prepayment and (ii) the amount of the unpaid Principal as of the date of such prepayment. This prepayment premium is in addition to any and all interest calculated and accrued on the unpaid Principal as of the date of such prepayment in accordance with Section 2 above together with all other amounts then due and payable under this Loan Agreement. No prepayment is permitted unless all outstanding charges are paid in full as of the date of prepayment. If Borrower desires to prepay, Borrower shall forward a written request to WBLPayoff@wbl.com. In addition, Borrower may contact Lender's Servicing Agent at 120 W. 45th St. 29th Floor, New York, NY 10036 or at 212-293-8200 and Lender's Servicing Agent shall provide Borrower with the amount of the unpaid Principal, prepayment premium, and any other amounts due under the terms of the Loan Agreement as of a date designated by Borrower. For the avoidance of doubt, as permitted under applicable law, if the Obligations (as defined below) have been accelerated on the happening of an Event of Default (as defined below), payment of Principal and interest shall be deemed a prepayment for purposes of this Section 4 and shall be accompanied by a prepayment premium.

5. **RETURNED PAYMENT CHARGE:** Borrower will pay a charge of thirty-five dollars ($35.00) ("NSF Charge") in connection with any payment by check or electronic transfer that is returned unpaid because of an insufficient balance in the Designated Checking Account or otherwise.

6. **SECURITY INTEREST:** Borrower grants to Lender a security interest in and to any and all property as described below in this Section 6 to secure payment of all debts, obligations and liabilities of Borrower to Lender evidenced by this Loan

*Rev. Sep 2014*                                                                                           P a g e |1

DocuSign Envelope ID: 8246EF42-5AE5-477A-98A8-0149B8AA2461

Agreement or any other loan agreement with Lender ("Obligations"). This is a continuing security interest and will continue in effect even though all or any part of the Obligations is paid in full and even though for a period of time Borrower may not be indebted to Lender. The collateral includes the property purchased with the proceeds of this Loan Agreement described on Schedule A attached to and made a part of this Loan Agreement ("Purchase Money Collateral"), the vehicles and other personal property described on Schedule B attached to and made a part of this Loan Agreement ("Specific Collateral") and all other personal property now owned or hereafter acquired by Borrower (which, along with Purchase Money Collateral and Specific Collateral, is collectively referred to as "Collateral"), including, but not limited to, all goods (except consumer goods), farm products, inventory, equipment, furniture, money, instruments, accounts, accounts receivable, contract rights, documents, chattel paper, general intangibles, including, but not limited to, all products and proceeds of Collateral and all additions and accessions to, replacements of, insurance proceeds of, and documents covering Collateral, all property received wholly or partly in trade or exchange for Collateral, all leases of Collateral and all rents, revenues, issues, profits and proceeds arising from the sale, lease encumbrance, collection, or any other temporary or permanent disposition, of the Collateral or any interest therein. Borrower agrees that Lender may file any financing statement, lien entry form or other document Lender requires in order to perfect, amend or continue Lender's security interest in the Collateral and Borrower agrees to cooperate with Lender as may be necessary to accomplish said filing and to do whatever Lender deems necessary to protect Lender's security interest in the Collateral. Borrower shall ensure that Lender is named as the only lien holder on the titles to the motor vehicles listed on Schedule B to this Loan Agreement as of the date of this Loan Agreement (or the nearest subsequent date as permitted under applicable law).

Borrower shall maintain the Collateral in good condition and repair and not permit its value to be impaired; keep the Collateral free from all liens, encumbrances and security interests (other than those created or expressly permitted by this Loan Agreement); defend the Collateral against all claims and legal proceedings by persons other than Lender; pay and discharge when due all taxes, license fees, levies and other charges upon the Collateral; not sell, lease or otherwise dispose of the Collateral or permit it to become a fixture or an accession to other goods, except as specifically authorized by Lender in writing; and not permit the Collateral to be used in violation of any applicable law, regulation or policy of insurance.

Borrower shall pay all expenses and, upon request, take any action reasonably deemed advisable by Lender to preserve the Collateral or to establish, determine priority of, perfect, continue perfected, terminate and/or enforce Lender's interest in the Collateral or rights under this Loan Agreement and, further, Borrower authorizes Lender, with full power of substitution, to execute in Borrower's name any documents necessary to perfect, amend or to continue Lender's interest in the Collateral or rights under this Loan Agreement or to demand termination of filings of other secured parties. Lender has no duty to protect, insure or realize upon the Collateral. Loss of or damage to the Collateral shall not release Borrower from any of the Obligations.

## 7. FOR BORROWERS OR COLLATERAL IN LOUISIANA ONLY:

(a)     Foreclosure. In the event that Borrower is domiciled in, or Collateral is located in, Louisiana, on the happening of an Event of Default, Lender shall have the right to commence appropriate foreclosure proceedings against the Collateral and against Borrower.

(b)     Seizure and Sale of Collateral. In the event that Lender elects to commence appropriate Louisiana foreclosure proceedings under the Loan Agreement, Lender may cause the Collateral, or any part or parts thereof, to be immediately seized and sold, whether in term of court or in vacation, under ordinary or executory process, in accordance with applicable Louisiana law, to the highest bidder for cash, with or without appraisement, and without the necessity of making additional demand upon or notifying Borrower or placing Borrower in default, all of which are expressly waived.

(c)     Executory Process. For purposes of foreclosure under Louisiana executory process procedures, Borrower confesses judgment and acknowledges to be indebted to Lender, up to the full amount of the Obligations, in Principal, interest, prepayment charges, NSF Charges, and any other unpaid costs and charges authorized by the Loan Agreement, reasonable attorneys' fees and all costs of collection. Borrower further confesses judgment and acknowledges to be indebted unto and in favor of Lender in the amount of any additional advances that Lender may make on Borrower's behalf pursuant to the Loan Agreement, together with interest thereon. To the extent permitted under applicable Louisiana law, Borrower additionally waives the following: (1) the benefit of appraisal as provided in Articles 2332, 2336, 2723, and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale; (2) the demand and three (3) days' delay as provided under Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; (3) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (4) the three (3) days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (5) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above.

*Rev. Sep 2014*                                                                                                                           P a g e |2



Docu... ...C: 8246EF42-FAE5-477A-99A8-0149BBAA2461
     of bike mills

(d)     Keeper. Should any or all of the Collateral be seized as an incident to an action for the recognition or enforcement of this Loan Agreement, by executory process, sequestration, attachment, writ of *fieri facias* or otherwise, Borrower hereby agrees that the court issuing any such order shall, if requested by Lender, appoint Lender, or any agent designated by Lender or any person or entity named by Lender at the time such seizure is requested, or any time thereafter, as "Keeper" of the Collateral as provided under La. R.S. 9:5136, *et seq*. Such a Keeper shall be entitled to reasonable compensation. Borrower agrees to pay the reasonable fees of such Keeper, which compensation to the Keeper shall also be secured by this Loan Agreement.

8. REPRESENTATIONS, WARRANTIES, AND COVENANTS: Borrower makes the following representations, warranties and covenants:

(a)   Borrower is the owner of or is acquiring the Purchase Money Collateral free of all liens, encumbrances and security interests (except Lender's security interest), and is the owner of all other Collateral free of all liens, encumbrances and security interests, except Lender's security interest and any security interests listed on Schedule C attached and made a part of this Loan Agreement;

(b)   the proceeds of this Loan Agreement will be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods. Borrower understands Lender is relying on the accuracy of this representation in disbursing the loan proceeds and that Borrower's agreement not to use the proceeds of this Loan Agreement for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods means that certain important duties imposed upon entities making loans for consumer/personal purposes, and certain important rights conferred upon consumers, pursuant to federal or state law will not apply to this Loan Agreement, or any other document or instrument given to Lender in connection with or related to this Loan Agreement. Borrower also understands that Lender will be unable to confirm whether the proceeds of this Loan Agreement will be used for business purposes only. Borrower acknowledges and agrees that a breach by Borrower of the provisions of this subsection 8(b) will not affect Lender's right to (I) enforce Borrower's promise to pay for all amounts owed under this Loan Agreement, regardless of the purpose for which the proceeds of this Loan Agreement are in fact obtained or (II) use any remedy legally available to Lender, even if that remedy would not have been available had the proceeds of this Loan Agreement been used for consumer purposes;

(c)   the Collateral will be kept at Borrower's address set forth above in Section 1, on Schedule D attached to and made a part of this Loan Agreement;

(d)   Borrower's name in Section 1 above is its exact name on its organizing and/or registered documents, if any, and is Borrower's principal place of business. Borrower shall immediately advise Lender of any change in Borrower's name or address as set forth above in Section 1;

(e)   Borrower is duly organized, validly existing and in good standing under the law of the jurisdiction in which it is organized, and has all licenses and authorizations necessary to carry on its business as now being conducted;

(f)   Borrower has the full power and authority to execute, deliver and perform all transactions contemplated by this Loan Agreement and the performance of and compliance with the terms of this Loan Agreement will not violate the Borrower's organizational documents or constitute a default of any contract, agreement or other instrument to which Borrower is a party;

(g)   Borrower has duly authorized the execution, delivery and performance of this Loan Agreement and has duly executed and delivered this Loan Agreement, and this Loan Agreement constitutes a legal, valid and binding obligation of the Borrower, enforceable against it in accordance with its terms;

(h)   there is no action, suit, proceeding or investigation pending or, to Borrower's knowledge, threatened against or affecting it or any of its assets before or by any court or other governmental authority which, if determined adversely to it, would have a material adverse effect on its financial condition, business or prospects, or the value of the Collateral; and

(i)   Borrower will provide any financial information on request or permit an examination of its books and records to permit Lender to confirm Borrower's ability to pay its Obligations and all other financial obligations.

DocuSign Envelope ID: 8246EF42-FAE5-477A-98A8-0149BBAA2461

(j) Borrower has not been notified by any of its lenders that it is in default under the terms of any of its credit agreements, nor has Borrower done, caused to be done, or failed to do any act or omission that would result in a default under any credit agreement.

(k) No third party source of financing for Borrower's customers has discontinued, or threatened to discontinue providing financing to Borrower's customers.

9. **DEFAULT:** On the happening of any of the following events (each an "Event of Default"):

(a) failure by Borrower to pay any daily or other payment required by this Loan Agreement when due;

(b) failure by Borrower to observe, perform, keep or abide by any term, covenant or condition contained in this Loan Agreement or any other document or instrument given to Lender in connection with or related to this Loan Agreement, including any real estate mortgage, security agreement or other agreement or document now or hereafter evidencing or creating any security for the payment of this Loan Agreement;

(c) the filing of a bankruptcy proceeding, assignment for the benefit of creditors, issuance of a judgment execution, garnishment or levy against, or the appointment of a representative of any kind for the commencement of any proceeding for relief from indebtedness by or against Borrower;

(d) the happening of any event, which, in the reasonable judgment of Lender, adversely affects Borrower's ability or the ability of any guarantor of Borrower's Obligations under this Loan Agreement ("Guarantor") to repay Borrower's Obligations, or materially affects the value of the Collateral;

(e) any written representation, statement or warranty made to Lender by Borrower or any Guarantor is untrue or is breached;

(f) the occurrence of (I) a default under any guaranty of Borrower's Obligations ("Guaranty"), or any other document or instrument given to Lender in connection with or related to this Loan Agreement, or (II) an event of default under any other loan agreement that Borrower may have with any other lender;

(g) any Guaranty is revoked or becomes unenforceable for any reason;

(h) Lender, upon examination of Borrower's financial information during the term of this Loan Agreement, becomes insecure in Borrower's ability to pay the Obligations,

Lender, at its option, without notice or demand (except as required by applicable law), may (A) declare the entire unpaid balance of all Obligations under this Loan Agreement or other agreements immediately due and payable, and shall have the right to proceed to collect such Obligations under applicable law and enforce its rights under any Guaranty; and (B) proceed against the Collateral and any other collateral securing any obligation to Lender as if said collateral secured the Obligations, as permitted under the applicable Uniform Commercial Code or any other applicable law. As permitted under the Uniform Commercial Code, Lender may take possession of Collateral without notice or hearing, which Borrower waives, and upon demand, Borrower shall assemble the Collateral and make it available to Lender at any convenient place designated by Lender. Lender's receipt of any payment after the occurrence of an Event of Default, whether or not the Obligations have been accelerated, shall not constitute a waiver of the default or of Lender's rights or remedies upon such default, including Lender's right to accelerate the unpaid balance of the Obligations and pursue collection thereof. Election by Lender to pursue or waive any remedy shall not exclude pursuit of any other remedy.

10. **INSPECTION OF COLLATERAL AND PLACE OF BUSINESS:** Lender and Lender's representatives and agents shall have the right at any reasonable time or times to inspect the Collateral wherever located and the interior and exterior of any Borrower place of business, and Borrower shall assist Lender and its representatives and agents in making any such inspection. During an inspection of any Borrower place of business, Lender or Lender's representatives and agents may examine, among other things, whether Borrower (i) has a place of business that is separate from any personal residence, (ii) is open for business, (iii) has sufficient inventory and/or staff to conduct Borrower's business and (iv) has one or more credit card terminals or point of sale systems if Borrower processes credit card transactions. When performing an inspection, Lender or Lender's representatives and agents may photograph the interior and exterior of any Borrower place of business, including any signage. Any photograph will become and remain the sole property of Lender and will be shared with

Dope ID: 8246EF42-FAE5-477A-99A8-0149BBAA2461
bank of lake mills

...nder's employees, representatives and agents. Borrower grants Lender the irrevocable and permanent right to display and share any photograph in all forms, including composite and modified representations, for all purposes, with Lender's employees, representatives and agents. Borrower agrees to reimburse Lender for the cost of the inspections described in this Section 10.

**11. EVALUATION OF CREDIT:** Borrower authorizes Lender to obtain business and personal credit bureau reports in Borrower's name, at any time and from time to time for purposes of deciding whether to approve the requested business loan or for any update, renewal, extension of credit or other lawful purpose. Upon Borrower's request, Lender will advise Borrower if Lender obtained a credit report and Lender will give Borrower the credit bureau's name and address. Borrower agrees to submit current financial information, a new credit application, or both, in Borrower's name at any time promptly upon Lender's request.

**12. ATTORNEYS' FEES, COLLECTION COSTS AND POST-JUDGMENT RATE OF INTEREST:** In the event Lender retains counsel with respect to enforcement of its rights under this Loan Agreement or any other document or instrument given to Lender, Borrower agrees to pay all expenses of Lender in enforcing its rights to collect the Obligations or in taking possession, holding, preparing for disposition, and disposing of the Collateral, including Lender's reasonable attorneys' fees (whether or not an action is commenced and whether or not in the court of original jurisdiction, appellate court, bankruptcy court or otherwise) and all costs of collection of any judgment and any costs of appeal. In the event this Loan Agreement is brought to a judgment, interest shall accrue at the interest rate set forth in Section 2 above until the judgment is satisfied, except as prohibited by applicable law.

**13. SALE OF LOAN AGREEMENT:** This Loan Agreement, or an interest in this Loan Agreement, together with the rights to the Collateral, may be sold, assigned, transferred or conveyed by Lender one or more times.

**14. INDEMNIFICATION:** Except for Lender's willful misconduct, Borrower will indemnify and save Lender harmless from all loss, costs, damage, liability or expenses (including, without limitation, court costs and reasonable attorneys' fees) that Lender may sustain or incur by reason of defending or protecting Lender's security interest or the priority thereof or enforcing its rights to collect the Obligations, or in the prosecution or defense of any action or proceeding concerning any matter growing out of or in connection with this Loan Agreement and/or any other documents or instruments now or hereafter executed in connection with this Loan Agreement and/or the Obligations and/or the Collateral. This indemnity shall survive the repayment of the Obligations and the termination of this Loan Agreement.

**15. MISCELLANEOUS:**

    (a) Delay or failure of Lender to exercise any of its rights under this Loan Agreement shall not be deemed a waiver thereof. No waiver of any condition or requirement shall operate as a waiver of any other or subsequent condition or requirement.

    (b) This Loan Agreement may not be modified orally, and may be modified only upon written agreement signed by Lender.

    (c) Lender is an FDIC insured, Wisconsin state chartered bank and this Loan Agreement is accepted by Lender in Wisconsin. CONSEQUENTLY, THIS AGREEMENT WILL BE GOVERNED BY FEDERAL LAW APPLICABLE TO AN FDIC INSURED INSTITUTION AND TO THE EXTENT NOT PREEMPTED BY FEDERAL LAW, THE LAWS OF THE STATE OF WISCONSIN WITHOUT REGARD TO CONFLICT OF LAW RULES. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and reserved under this Loan Agreement will be governed by such laws.

    (d) Borrower and Lender agree that any action or proceeding to enforce any rights or obligations arising out of this Loan Agreement shall be commenced either in Wisconsin, New York or the state (or commonwealth, as the case may be) of Borrower's address set forth in Section 1 above ("Borrower's State") and Borrower waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to Borrower at the address specified by Borrower above in Section 1, or as otherwise provided by the laws of the State of Wisconsin, the State of New York, the Borrower's State, or the United States of America. Borrower and Lender agree that venue is proper in such courts.

    (e) Without affecting the liability of Borrower or any Guarantor, Lender may accept partial payments marked "in full" or otherwise, release or impair any Collateral or agree not to sue any party liable on this Loan Agreement without


DocuSign Envelope ID: 8246EF42-FAE5-477A-98A8-0148BBAA2461
Bank of America

waiving any of its rights hereunder.

(f)   Presentment, protest, demand and notice of dishonor are waived.

(g)   Without affecting the liability of any Guarantor, Lender may from time to time, without notice, renew or extend the time for payment.

(h)   Borrower expressly agrees that the interest rate set forth above in Section 2 is appropriate under the circumstances and shall be the applicable rate at which unpaid Principal (and Costs, as defined below) shall bear interest under this Loan Agreement, notwithstanding any rate of interest prescribed by statute from time to time; provided, however, if fulfillment of any provisions of this Loan Agreement or any other instrument securing the Obligations is subject to a law that sets maximum interest rates or other charges, and that law is finally interpreted so that the interest or other fees collected or to be collected in connection with this Loan Agreement exceed the permitted limits, then (I) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit and (II) any sums already collected from Borrower that exceed the permitted limits will be refunded or credited to Borrower and the obligations created by this Loan Agreement shall be fulfilled to the limit of such validity as is permitted by law.

(i)   Borrower shall keep the Collateral and Lender's interest in it insured under policies with such provisions, for such amounts and by such insurers as shall be satisfactory to Lender from time to time, and shall furnish evidence of such insurance satisfactory to Lender upon request. Borrower assigns (and directs any insurer to pay) to Lender the proceeds of all such insurance and any premium refund and authorizes Lender to endorse in the name of Borrower any instrument for such proceeds or refunds and, at the option of Lender, to apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to restoration of the Collateral, returning any excess to Borrower. Lender is authorized, in the name of Borrower or otherwise, to make, adjust and/or settle claims under any insurance on the Collateral, or cancel the same after the occurrence of an Event of Default.

(j)   If Borrower fails to perform any of Borrower's duties set forth in this Loan Agreement or in any evidence of or document relating to the Obligations, Lender is authorized, in Borrower's name or otherwise, to take any such action, including, without limitation, signing Borrower's name or paying any amount so required, and the cost ("Cost") shall be one of the Obligations secured by this Loan Agreement and shall be payable by Borrower upon Lender's demand with interest at the interest rate set forth above in Section 2 from the date of payment by Lender.

(k)   Borrower releases Lender from any liability for any act or omission relating to the Obligations, the Collateral or this Loan Agreement, except Lender's willful misconduct.

(l)   Invalidity or unenforceability of any provision of this Loan Agreement shall not affect the validity or enforceability of any other provision.

(m)   The terms of this Loan Agreement shall be binding upon Borrower and its permitted successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

(n)   Borrower acknowledges that a broker may have received compensation in connection with this Loan Agreement.

(o)   Any of the Borrower, Lender or a Guarantor may choose to arbitrate any or all disputes and claims arising out of or relating to this Loan Agreement, the Guaranty or any other related document. A claim includes matters arising as an initial claim, counter-claim, cross-claim, third-party claim, or otherwise. If the Borrower, Lender or a Guarantor chooses to litigate any dispute or claim arising out of or relating to this Loan Agreement, the Guaranty or any related document through a judicial action, the decision to litigate shall not be deemed a waiver of arbitration, and if such judicial action is contested, any party may thereafter invoke its arbitration rights at any time before any discovery is taken in the judicial action. If the Borrower, Lender or a Guarantor seeks to have a dispute resolved by arbitration, that party must first send to the other party(ies) by certified mail, a written Notice of Intent to Arbitrate. If Borrower, Lender or a Guarantor do not reach an agreement to resolve the claim within 10 days after the Notice is received, any party may commence an arbitration proceeding with the American Arbitration Association ("AAA"). Lender will promptly reimburse Borrower or the Guarantor any arbitration filing fee, however, in the event that both the Borrower and the Guarantor must pay arbitration filing fees, Lender will only reimburse the Borrower's arbitration filing fee and, except as provided in the next sentence, the Lender will pay all arbitration administration and arbitrator fees. If the arbitrator finds that either the substance of any claim raised by Borrower or a Guarantor or the relief sought by

DocuSign Envelope ID: 8248EF42-FAE5-477A-99A9-0149BBAA2461

Borrower or a Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rule of Procedure 11(b), then Lender will pay the administration or arbitrator fees only if required by the AAA Rules. If the arbitrator grants relief to the Borrower or a Guarantor that is equal to or greater than the value of the relief requested by the Borrower or a Guarantor in the arbitration, Lender shall reimburse Borrower or the Guarantor, as applicable, for that party's reasonable attorneys' fees and expenses incurred for the arbitration. BORROWER AND LENDER AGREE THAT BY ENTERING INTO THIS LOAN AGREEMENT, EACH IS WAIVING THE RIGHT TO TRIAL BY JURY. BORROWER AND LENDER MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF REPRESENTATIVE OR CLASS MEMBER IN ANY PURPORTED REPRESENTATIVE OR CLASS PROCEEDING. Further, Borrower and Lender agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void. Any award by the individual arbitrator shall be final and binding, except for any appeal right under the Federal Arbitration Act ("FAA"), and may be entered and enforceable as a judgment in any court of competent jurisdiction, including as a judgment that permits Lender to initiate or complete the exercise of its remedies against, or its realization or foreclosure upon, any collateral or security provided for the benefit of Lender. This arbitration provision is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1.

(p) In order to ensure a high quality of service for Lender's customers, Lender may monitor and/or record telephone calls between Borrower and Lender's employees. Borrower acknowledges that Lender may do so and agrees in advance to any such monitoring or recording of telephone calls.

(q) Borrower authorizes Lender and Lender's affiliates, agents and independent contractors to contact Borrower at any telephone number Borrower provides to Lender or from which Borrower places a call to Lender, or any telephone number where Lender believes it may reach Borrower, using any means of communication, including, but not limited to, calls or text messages to mobile, cellular, wireless or similar devices or calls or text messages using an automated telephone dialing system and/or artificial voices or prerecorded messages, even if Borrower incurs charges for receiving such communications. Lender and Lender's affiliates, agents and independent contractors, may use any other medium not prohibited by law, including, but not limited to, mail, e-mail and facsimile, to contact Borrower. Borrower expressly consents to conduct business by electronic means.

(r) TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW, BORROWER AND LENDER WAIVE THEIR RIGHT TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON, ARISING OUT OF OR RELATED TO THIS LOAN AGREEMENT AND ALL OTHER DOCUMENTATION EVIDENCING THE OBLIGATIONS, IN ANY LEGAL ACTION OR PROCEEDING.

(s) This Loan Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument. For purposes of the execution of this Loan Agreement, electronic or fax signatures shall be treated in all respects as original signatures.

PRIOR TO SIGNING THIS LOAN AGREEMENT, BORROWER READ AND UNDERSTOOD ALL OF THE PROVISIONS OF THIS LOAN AGREEMENT. AFTER DUE CONSIDERATION, AND THE OPPORTUNITY TO CONSULT WITH OTHER LENDERS AND AN ATTORNEY, ACCOUNTANT OR OTHER COMPETENT PROFESSIONAL OF ITS CHOICE, BORROWER KNOWINGLY, WILLFULLY AND VOLUNTARILY AGREES TO THE TERMS OF THIS LOAN AGREEMENT.

BORROWER ACKNOWLEDGES RECEIPT OF A FULLY COMPLETED AND EXECUTED VERSION OF THIS LOAN AGREEMENT.

BORROWER: Homes By De Ramo, Inc.

By: _Vincent William De Ramo Jr._

Printed Name: Vincent William De Ramo Jr.

Title: president

DocuSign Envelope ID: 8246EF42-FAE5-477A-93A8-0149BBAA2461

## ACKNOWLEDGMENT

STATE/COMMONWEALTH OF FL        )

                                      )     ss.:

COUNTY OF _____            )

On the _____ day of _____, in the year ____ before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared _____Vincent William De Ramo Jr_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Business Promissory Note and Security Agreement and acknowledged to me that she/he executed the same in her/his capacity as_____ of _____, and that by her/his signature on the Business Promissory Note and Security Agreement, the individual, or the person upon behalf of which the individual acted, executed the Business Promissory Note and Security Agreement.


_____
Notary Public
My Commission expires:

DocuSign Envelope ID: 8346EF42-FAE5-477A-98A8-0149BBAA2461

## SCHEDULE A

### NONE

DocuSign Envelope ID: 8246EF42-FAE5-477A-99A8-0149GBAA2461

## SCHEDULE B

### NONE

DocuSign Envelope ID: 8246EF42-FAE5-477A-99A9-0149BBAA2461

## SCHEDULE C – PURCHASE MONEY COLLATERAL

NONE

DocuSign Envelope ID: 8246EF42-FAE5-477A-99A8-0149BBAA2491

## SCHEDULE D

### ADDRESS OTHER THAN BORROWER'S ADDRESS AT WHICH COLLATERAL IS KEPT

- 7614 Peninsular Dr. Sarasota FL 34233

DocuSign Envelope ID: 9246EF42-FAE5-477A-99A8-0149BBAA2461

 bank of lake mills

CONTINUING GUARANTY, PERSONAL (Unlimited)                                        Dated: 11/6/2015

**GUARANTY.** For value received, and to induce BANK OF LAKE MILLS, its successors and/or assigns ("Lender"), with offices at 136 E. Madison St., Lake Mills, WI 53551, to extend credit or grant or continue other credit accommodations to Homes By De Ramo, Inc. ("Borrower"), the undersigned ("Guarantor," whether one or more) jointly and severally guarantees payment of the Obligations defined below when due or at the time any Borrower becomes the subject of bankruptcy or other insolvency proceedings. Except as provided below, "Obligations" mean all debts, obligations and liabilities of Borrower to Lender arising out of credit previously granted, credit contemporaneously granted or credit granted in the future by Lender to Borrower. Obligations include interest and charges and the amount of payments made to Lender or another by or on behalf of Borrower which are recovered from Lender by a trustee, receiver, creditor or other party pursuant to applicable federal or state law, and all costs, expenses and attorneys' fees at any time paid or incurred before and after judgment in endeavoring to collect all or part of any of the above, or to realize upon this Guaranty, or any collateral securing any of the above, including those incurred in successful defense or settlement of any counterclaim brought by Borrower or Guarantor or incident to any action or proceeding involving Borrower or Guarantor brought pursuant to the United States Bankruptcy Code. Obligations do not include personal, consumer, family or household transactions. Guarantor grants to Lender a security interest and lien in any credit balance and other money now owing or hereafter owed Guarantor by Lender. Lender may, at any time after the occurrence of an event of default with respect to any Obligation, without prior notice or demand, set off against any such credit balance or other money any amount owing upon the Obligations. This Guaranty also is secured by all existing and future security agreements between Lender and Guarantor, and the titles to the motor vehicles listed on Exhibit 1 to this Guaranty, with respect to which, Guarantor shall ensure that Lender is named as the only lien holder on each such motor vehicle title as of the date of this Guaranty (or the nearest subsequent date as permitted under applicable law). This Guaranty is valid and enforceable against Guarantor even though any Obligation is invalid or unenforceable against the Borrower.

**WAIVER.** Guarantor expressly waives (a) notice of the acceptance of this Guaranty, the creation of any present or future Obligation, default under any Obligation, proceedings to collect from the Borrower or anyone else, (b) all diligence of collection and presentment, demand, notice and protest, (c) any right to disclosures from Lender regarding the financial condition of the Borrower or the enforceability of the Obligations, and (d) all other legal and equitable defenses of suretyship and impairment of collateral. No claim, including a claim for reimbursement, subrogation, contribution or indemnification which Guarantor may, as a guarantor of the Obligations, have against a co-guarantor of any of the Obligations or against the Borrower shall be enforced or any payment accepted until the Obligations are paid in full and no payments to or collections by Lender are subject to any right of recovery.

**CONSENT.** With respect to any of the Obligations, Lender may from time to time before or after revocation of this Guaranty without notice to Guarantor and without affecting the liability of Guarantor (a) surrender, release, impair, sell or otherwise dispose of any security or collateral for the Obligations, (b) release or agree not to sue any guarantor or surety, (c) fail to perfect its security interest in or realize upon any security or collateral, (d) fail to realize upon any of the Obligations or to proceed against any Borrower or any guarantor or surety, (e) renew or extend the time of payment, (f) increase or decrease the rate of interest or the amount of the Obligations, (g) accept additional security or collateral, (h) determine the allocation and application of payments and credits and accept partial payments, (i) apply the proceeds of disposition of any collateral for the Obligations to any obligation of Borrower secured by such collateral in such order and amounts as it elects, (j) determine what, if anything, may at any time be done with reference to any security or collateral, and (k) settle or compromise the amount due or owing or claimed to be due or owing from the Borrower, which settlement or compromise shall not affect Guarantor's liability for the full amount of the unpaid Obligations. Guarantor expressly consents to and waives notice of all of the above. Guarantor consents to and authorizes Lender to obtain business and personal credit bureau reports in Guarantor's name, at any time and from time to time for purposes of deciding whether to approve the business loan requested by borrower or for any update, renewal, extension of credit to Borrower or other lawful purpose. Guarantor expressly authorizes Lender, agents or designees to report the payment history and loan performance to any national credit bureau for the purpose of inclusion of the related data in Guarantor's consumer credit report. Nothing contained in this Guaranty shall require Lender to first seek or exhaust any remedy against Borrower or to first proceed against any collateral or security for any of the Obligations or this Guaranty.

*Rev. Sep 2014*                                                                      P a g e | 1

DocuSign Envelope ID: 9246EF42-FAE5-477A-99A8-014986AA2461

 BLM bank of lake mills

**PERSONS BOUND.** This Guaranty benefits and is enforceable by Lender, and its successors and assigns (collectively called "successors" and each a "successor"), and binds Guarantor, and Guarantor's heirs, personal representatives, successors and assigns. This Guaranty shall continue in full force and effect notwithstanding any change in structure or status of Borrower or Lender, whether by merger, consolidation, reorganization or otherwise, or assignment of this Guaranty to a successor Lender. This Guaranty includes additional provisions below.

---

**NOTICE TO GUARANTOR**

You are being asked to guarantee the past, present and future Obligations of Borrower. If Borrower does not pay, you will have to. You may also have to pay collection costs. Lender can collect the Obligations from you without first trying to collect from Borrower or another guarantor or proceeding against any collateral or other security for the Obligations.

---

Vincent William De Ramo Jr
(Guarantor Name)

| (Guarantor Signature) | Vincent William De Ramo Jr. |
| | Vincent deramo |

(Guarantor Address)

---

For Married Residents Only: Each Guarantor who signs below represents that this obligation is incurred in the interest of his or her marriage or family.

X_____    X_____

---

## ADDITIONAL PROVISIONS

**ENTIRE AGREEMENT.** This Guaranty is intended by Guarantor and Lender as a final expression of this Guaranty and as a complete and exclusive statement of its terms, there being no conditions to the full effectiveness of this Guaranty. This Guaranty may not be supplemented or modified, except in writing by Lender.

**REPRESENTATIONS.** Guarantor acknowledges and agrees that Lender (a) has not made any representations or warranties with respect to, (b) does not assume any responsibility to Guarantor for, and (c) has no duty to provide information to Guarantor regarding, the enforceability of any of the Obligations or the financial condition of the Borrower. Guarantor has independently determined the creditworthiness of Borrower and the enforceability of the Obligations and until the Obligations are paid in full will independently and without reliance on Lender continue to make such determinations.

**REVOCATION.** This is a continuing guaranty and shall remain in full force and effect until Lender receives written notice of its revocation signed by Guarantor or actual notice of the death of Guarantor. Upon revocation by written notice or actual notice of death, this Guaranty shall continue in full force and effect as to all Obligations contracted for or incurred before revocation and, as to them, Lender shall have the rights provided by this Guaranty as if no revocation had occurred. Any renewal, extension or increase in the interest rate of any such Obligation, whether made before or after revocation, shall constitute an Obligation contracted for or incurred before revocation. Obligations contracted for or incurred before revocation shall also include credit extended after revocation pursuant to commitments made before revocation. Revocation by one Guarantor shall not affect any of the liabilities or obligations of any other Guarantor and this Guaranty shall continue in full force and effect with respect to them.

**ARBITRATION.** Any of the Borrower, Lender or a Guarantor may choose to arbitrate any or all disputes and claims arising out of or relating to this Guaranty or any other related document. A claim includes matters arising as an initial claim, counter-claim, cross-claim, third-party claim, or otherwise. If the Borrower, Lender or a Guarantor chooses to litigate any dispute or claim arising out of or relating to this Guaranty or any related document through a judicial action,

DocuSign Envelope ID: 6246EF42-FAE5-477A-99A8-0149BBAA2461

 bank of lake mills

the decision to litigate shall not be deemed a waiver of arbitration, and if such judicial action is contested, any party may thereafter invoke its arbitration rights at any time before any discovery is taken in the judicial action.  If the Borrower, Lender or a Guarantor seeks to have a dispute resolved by arbitration, that party must first send to the other party(ies) by certified mail, a written Notice of Intent to Arbitrate.  If Borrower, Lender or a Guarantor do not reach an agreement to resolve the claim within 10 days after the Notice is received, any party may commence an arbitration proceeding with the American Arbitration Association ("AAA").  Lender will promptly reimburse Borrower or the Guarantor any arbitration filing fee, however, in the event that both the Borrower and the Guarantor must pay arbitration filing fees, Lender will only reimburse the Borrower's arbitration filing fee and, except as provided in the next sentence, the Lender will pay all arbitration administration and arbitrator fees.  If the arbitrator finds that either the substance of any claim raised by Borrower or a Guarantor or the relief sought by Borrower or a Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rule of Procedure 11(b), then Lender will pay the administration and arbitrator fees only if required by the AAA Rules.  If the arbitrator grants relief to the Borrower or a Guarantor that is equal to or greater than the value of the relief requested by the Borrower or a Guarantor in the arbitration, Lender shall reimburse Borrower or the Guarantor, as applicable, for that party's reasonable attorneys' fees and expenses incurred for the arbitration. GUARANTOR AND LENDER AGREE THAT BY ENTERING INTO THIS GUARANTY, EACH IS WAIVING THE RIGHT TO TRIAL BY JURY. GUARANTOR AND LENDER MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF REPRESENTATIVE OR CLASS MEMBER IN ANY PURPORTED REPRESENTATIVE OR CLASS PROCEEDING. Further, Guarantor and Lender agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void.  Any award by the individual arbitrator shall be final and binding, except for any appeal right under the Federal Arbitration Act ("FAA"), and may be entered and enforceable as a judgment in any court of competent jurisdiction, including as a judgment that permits Lender to initiate or complete the exercise of its remedies against, or its realization or foreclosure upon, any collateral or security provided for the benefit of Lender.  This arbitration provision is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1.

**INTERPRETATION.** Lender is an FDIC insured, Wisconsin state chartered bank. CONSEQUENTLY, THIS GUARANTY WILL BE GOVERNED BY FEDERAL LAW APPLICABLE TO AN FDIC INSURED INSTITUTION AND TO THE EXTENT NOT PREEMPTED BY FEDERAL LAW, THE LAWS OF THE STATE OF WISCONSIN WITHOUT REGARD TO CONFLICT OF LAW RULES. The legality, enforceability and interpretation of this Guaranty and the amounts guaranteed will be governed by such laws.

**JURISDICTION.** Guarantor irrevocably consents with respect to any suit, action or proceeding relating to this Guaranty or any of the other loan documents relating to the Obligations, that venue shall be either in Wisconsin, New York or the state (or commonwealth, as the case may be) of Borrower's principal place of business ("Borrower's State") and Guarantor waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to Guarantor at the address specified by Guarantor above, or as otherwise provided by the laws of the State of Wisconsin, the State of New York, the Borrower's State, or the United States of America. Guarantor agrees that venue is proper in such courts.

---

**JURY WAIVER**

GUARANTOR KNOWINGLY AND VOLUNTARILY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BASED UPON, ARISING OUT OF OR IN ANY WAY RELATING TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED BY THIS GUARANTY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, AND AGREES AND CONSENTS THAT ANY SUCH ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM SHALL BE DECIDED BY TRIAL TO THE COURT WITHOUT A JURY. GUARANTOR ACKNOWLEDGES AND UNDERSTANDS THAT THIS WAIVER AND CONSENT CONSTITUTES A MATERIAL INDUCEMENT TO LENDER TO ENTER INTO THE TRANSACTION WITH THE BORROWER.

GUARANTOR 1        Vincent William De Ramo Jr        GUARANTOR 2

                   Vincent William De Ramo Jr.

---

*Rev. Sep 2014*                                                        Page | 2

DocuSign Envelope ID: 8246EF42-FAE5-477A-99A8-0149BBAA2461

BLM bank of lake mills

ACKNOWLEDGEMENT

STATE/COMMONWEALTH OF FL )

) ss.

COUNTY OF ________ )

On the _____ day of _________, in the year ____, before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared Vincent William De Ramo Jr, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Continuing Guaranty (Unlimited) and acknowledged to me that she/he executed the same in her/his capacity, and that by her/his signature on the Continuing Guaranty (Unlimited), the individual, or the person upon behalf of which the individual acted, executed the Continuing Guaranty (Unlimited).

Notary Public
My Commission expires:

ACKNOWLEDGEMENT

STATE/COMMONWEALTH OF FL)

) ss.

COUNTY OF ________ )

On the _____ day of _________, in the year ____, before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Continuing Guaranty (Unlimited) and acknowledged to me that she/he executed the same in her/his capacity, and that by her/his signature on the Continuing Guaranty (Unlimited), the individual, or the person upon behalf of which the individual acted, executed the Continuing Guaranty (Unlimited).

Notary Public
My Commission expires:

DocuSign Envelope ID: 8248EF42-FAE5-477A-99A8-0149BBAA2461

BLM bank of lake mills

**EXHIBIT 1**

**NONE**

DocuSign Envelope ID: 8046EF42-FAE5-477A-89A8-0149BBAA2461

 **BLM** bank of lake mills

<div align="right">COOPERATION AGREEMENT</div>

DATE: 11/6/2015

In connection with the business loan to Borrower evidenced by the Business Promissory Note and Security Agreement of even date herewith, Borrower hereby agrees:

In the event any further documentation is required by Lender in connection with the loan, Borrower hereby agrees to execute such documentation, including, but not limited to, any amendments, corrections, deletions or additions to the loan documents being executed on even date herewith.

In the event Borrower is required to furnish such necessary documentation and fails to do so within ten (10) days from receipt of written demand, then such failure shall be an event of default under the terms of the loan and Lender or its successors and assigns shall have the right to demand payment in full under the loan documents and enforce all other rights against Borrower.

The terms "Borrower" and "Lender" have the same meanings as set forth in the Business Promissory Note and Security Agreement.

BORROWER: Homes By De Ramo, Inc.

By: _Vincent William De Ramo Jr._

Printed Name: Vincent William De Ramo Jr.

Title: president

STATE/COMMONWEALTH OF FL　　　}

　　　　　　　　　　　　　　　}　ss.:

COUNTY OF _____　　　　}

On the _____ day of _____, in the year ____ before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared ____Vincent William De Ramo Jr personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Cooperation Agreement and acknowledged to me that she/he executed the same in her/his capacity as _____ of _____, and that by her/his signature on the Cooperation Agreement, the individual, or the person upon behalf of which the individual acted, executed the Cooperation Agreement.

_____
Notary Public
My Commission expires

DocuSign Envelope ID: 8246EF42-FAE5-477A-99A6-0149BBAA2461

**World Business Lenders**

World Business Lenders, LLC
120 w 45th St, 29th Floor
New York, NY 10029
Direct: 212-763-6200

Contact:
Direct:

## Business Loan Application

Fax:
Email:



BLM
Bank of Lake Mills

Bank of Lake Mills
136 E Madison Street
Lake Mills, WI 53551
Tel: 920-648-8336

### COMPANY INFORMATION

| | |
|---|---|
| Legal Name of Entity: Homes By Deramo, Inc. | Business Inception Date: 2/1985 |

| | |
|---|---|
| Federal Tax ID (EIN): 59-2508852 | State Where Business Was Formed: FL |

Legal Structure: ⦿Corporation  ◯LLC  ◯Partnership  ◯Sole Proprietorship

| | | |
|---|---|---|
| Full Time Employees: | Part Time Employees: | Home Based Business:  ◯Yes  ⦿No |

Business Address: 4610 Ashton Rd.

| | | | |
|---|---|---|---|
| City: Sarasota | State: FL | ZIP Code: 34233 | Estimated Monthly Revenue: |

| | | |
|---|---|---|
| Phone: | Ext: | Website: |

Ownership of Business Location:  ⦿Rented  ◯Owned by Business   | If Owned, Property Value:

| | | |
|---|---|---|
| Landlord Name: | Landlord Phone: | Monthly Rent: |

Landlord Type:  ◯Management Company  ◯Sole Ownership  ◯Corporation  ◯Other:

### BUSINESS OWNER

| | |
|---|---|
| Name: Vincent William Deramo Jr. | Date of Birth: 3/27/1957 |

Primary Address: 7614 Peninsular Dr.

| | | |
|---|---|---|
| City: Sarasota | State: FL | ZIP Code: 34231 |

| | |
|---|---|
| Home Phone: 941-926-2600 | Mobile Phone: 941-650-4983 |

| | |
|---|---|
| E-mail: bill@homesbyderamo.com | Social Security #: 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 |

| | |
|---|---|
| Driver's License #: D650-879-57-107-0 | Driver's License State: FL   Ownership% 100 |

### CO-APPLICANT

| | |
|---|---|
| Name: Tracy Elizabeth Deramo | Date of Birth: 4/1/1958 |

Primary Address: 7614 Peninsular Dr.

| | | |
|---|---|---|
| City: Sarasota | State: FL | ZIP Code: 34231 |

| | |
|---|---|
| Home Phone: | Mobile Phone: |

| | |
|---|---|
| E-mail: | Social Security #: 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 |

| | |
|---|---|
| Driver's License #: D650-805-58-621-0 | Driver's License State: FL   Ownership %: |

### LOAN REQUEST

Requested Funding Amount: $400,000.00

Use of Funds: Consolidation and working capital

### CERTIFICATION AND AGREEMENT

The originating lender to which this Business Loan Application ("Application") is directed at the Bank of Lake Mills, Lake Mills, Wisconsin ("Lender"). By signing and submitting this application to World Business Lenders ("WBL"), each of the undersigned certifies to WBL and the Lender that (i) I am authorized to apply for business financing on behalf of the entity identified above in the Company Information section, (ii) the information provided within this Application is true and accurate and (iii) I will promptly notify WBL of any material changes to such information. This Application must be accompanied by additional supporting documents and information as directed by the Lender in order to be considered for approval. The undersigned authorizes WBL to submit this Application and any other supporting documents and information to the Lender. By submitting this Application, each of the undersigned authorizes Lenders, and their respective agents, assignees and/or providers to make all inquiries deemed necessary to verify the accuracy of the information provided in this Application (including requesting business and personal credit bureau reports from credit reporting agencies and other sources). Each of the undersigned agrees and understands that WBL will retain this Application and all supporting documents and information whether or not this Application is approved.

| Business Owner Signature: | Co-Applicant Signature: |
|---|---|
| DocuSigned by:<br>*Vincent William De Ramo Jr.*<br>C8BAA66DF28F438... | |
| Title:  president | Title: |
| Date:  11/8/2015 | Date: |

Filing # 56527218 E-Filed 05/16/2017 07:09:01 PM

INSTRUMENT # 2015140067    19  PG(S)

11/10/2015 3:30 PM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY, FLORIDA
SIMPLIFILE             Receipt # 1922036
Doc Stamp-Mort: $1,400.00

Intang. Tax: $800.00

RECORDATION REQUESTED BY:
World Business Lenders, LLC
120 West 45th Street
New York, NY 10036

WHEN RECORDED MAIL TO:
World Business Lenders, LLC
120 West 45th Street
New York, NY 10036

FOR RECORDER'S USE ONLY

WW-1453-FL

## MORTGAGE

THIS MORTGAGE dated November 6th 2015, is made and executed between Vincent W. DeRamo, Trustee under agreement dated 3/7/00, as to an undivided one-half interest, and Tracy E. DeRamo, Trustee under agreement dated 3/7/00, as to an undivided one-half interest, reserving a life estate interest, whose address is 7614 Peninsular Drive, Sarasota, FL 34233 (referred to below as "Grantor") and Bank of Lake Mills, its Successors and or Assigns, whose address is 136 E. Madison St., Lake Mills, WI 53551 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor mortgages and warrants to Lender all of Grantor's right, title, and interest whether existing or hereafter acquired, in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances, public or private, now or hereafter used in connection with the Property; all rights to make divisions of the land that are exempt from the platting requirements of all applicable land division and/or platting acts, as amended from time to time; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation right(s); all Personal Property; all licenses, contracts, permits and agreements required or used in connection with the ownership, operation or maintenance of the Property; all insurance proceeds; all awards, including interest, make to Grantor for any taking by eminent domain of the Property; all existing and future leases, subleases, licenses and other agreements for the use and/or occupancy of the Property, oral or written, including all extensions, renewals, replacements and holders; all Rents from the Property; and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Sarasota County, State of Florida:

See Exhibit A, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as 7614 Peninsular Drive, Sarasota, FL 34233.

Cross-Collateralization. In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, where now existing or hereafter arising, whether

FLORIDA – RESIDENTIAL PROPERTY - GUARANTOR



related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

Grantor unconditionally, irrevocably and presently assigns, grants, conveys and sets over to Lender all of Grantor's right, title and interest in and to all present and future leases, subleases, licenses and other agreements for the use and/or occupancy of the Property, oral or written, including all extensions, renewals, replacements and holdovers (collectively the "Leases") and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Mortgage is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender

2

in writing, (e) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances.

Grantor and any occupants of the Property shall exercise extreme care in handling Hazardous Substances and, if Grantor or any occupant uses or encounters any Hazardous Substances at the Property, Grantor shall, at its own cost and expense, in addition to complying with all applicable federal, state and local laws, regulations and ordinances, including, without limitation, all Environmental Laws, undertake any and all preventive, investigatory or remedial action (including emergency response, removal, containment and other remedial action) necessary to prevent or minimize (a) property damage (including damage to Grantor's or any occupant's own property), (b) personal injury, (c) damage to the environment or (d) the threat of any such damage or injury, in each case, by reason of any release of or exposure to any Hazardous Substances at the Property or the operations of Grantor or any occupant at the Property.

Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of this Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. If, pursuant to the section set forth below regarding expenditures by Lender, Lender performs any of the actions required of Grantor under this section of the Mortgage, Lender shall not, by reason of such performance, be deemed to be assuming any responsibility of Grantor under any Environmental Law or to any third party.

Grantor shall immediately notify Lender upon becoming aware of any of the following: (a) any spill, release or disposal of any Hazardous Substances at the Property or in connection with any of operations at the Property, if such spill, release or disposal must be reported to any governmental authority under applicable Environmental Laws; (b) any contamination, or imminent threat of contamination, of the Property by any Hazardous Substances or any violation of Environmental Laws in connection with the Property or any operations conducted at the Property; (c) any order, notice of violation, fine, penalty or other similar action by any governmental authority relating to Hazardous Substances, Environmental Laws, the Property or the operations conducted at the Property; (d) any judicial or administrative investigation or proceeding relating to Hazardous Substances, Environmental Laws, that would give a reasonably prudent lender cause to be concerned that the value of Lender's security interest in the Property may be reduced or threatened or that may impair, or threaten to impair, Grantor's ability to perform any of its obligations under this Mortgage when such performance is due. Grantor shall deliver to Lender, at Lender's request, copies of any and all documents in Grantor's possession (or to which it has access) relating to Hazardous Substances, Environmental Laws, the Property or the operations conducted at the Property, including, without limitation, the results of laboratory analyses, site assessments or studies, environmental audit reports and other consultants' studies and reports.

Grantor hereby (1) releases and waives any future claims against any Indemnified Person (as defined below) for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws; and (2) agrees to indemnify, defend, and hold harmless each Indemnified Person against any and all claims, losses, liabilities, damages, penalties, and expenses which any Indemnified Person may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of (a) any breach of this section of the Mortgage, (b) any use, generation, manufacture, storage, disposal, release or threatened release occurring during or prior to Grantor's

3

ownership or interest in the Property, whether or not the same was or should have been known to Grantor, (c) any investigatory or remedial action involving the Property, the operations conducted at the Property or any other operations of Grantor or any occupant at the Property that is required by any Environmental Laws and (d) the contamination of the Property by any Hazardous Substances, by any means whatsoever (including, without limitation, any migration of any Hazardous Substances onto the Property, present or future. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Subsequent Liens.** Grantor shall not allow any subsequent liens or mortgages on all or any portion of the Property without the prior written consent of Lender.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans with Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Florida law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes,

4

special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insured in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the indebtedness, payment of any lien affecting

5

the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Unexpired Insurance at Sale.** Any unexpired insurance shall inure to the benefit of, and pass to, the purchaser of the Property covered by this Mortgage at any trustee's sale or other sale held under the provisions of this Mortgage, or at any foreclosure sale of such Property.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests, including but not limited to discharging costs for insuring, maintaining and preserving the Property. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default and shall be exercisable by Lender to the extent permitted by applicable law. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender, or have otherwise been previously disclosed to and accepted by Lender in writing in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations and warranties, agreements, and statements Grantor has made in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as Borrower's

6

Indebtedness is paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**ASSIGNMENT OF RENTS AND LEASES.** The following provisions relating to this Mortgage as an assignment of Rents and Leases are a part of this Mortgage:

**License to Grantor.** Unless and until Lender exercises its right to collect the Rents as provided below, and so long as no Event of Default exists, Grantor shall have a license to (a) remain in possession and control of the Property, (b) operate and manage the Property and (c) collect the Rents; provided that the granting of such license shall not constitute Lender's consent to the use of cash collateral in any bankruptcy proceedings. The foregoing license shall automatically and immediately terminate, without notice to Grantor, upon the occurrence of any Event of Default. After the occurrence of any Event of Default, Lender may exercise any of the rights and remedies set forth below and/or elsewhere in this Mortgage. Any Rents that are collected by Grantor after the occurrence of any Event of Default shall be held in trust for the benefit of Lender.

**Grantor's Representations, Warranties and Covenants.** Grantor represents, warrants and covenants that: (a) Grantor has good title to the Leases and is entitled to receive the Rents, in each case, free and clear of all rights, loans, liens, encumbrances, and claims, except as disclosed to and accepted by Lender

7

in writing; (b) Grantor has the full right, power and authority to assign and convey the Leases and Rents to Lender; (c) Grantor has not previously assigned or conveyed the Leases and/or Rents to any other person or entity by an instrument now in force; (d) Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's right in the Leases and/or the Rents; (e) Grantor will fulfill and perform its obligations under all Leases and will give Lender prompt notice of any default in the performance of the terms of any of the Leases by either Grantor or any tenant, together with copies of all notices sent to or received by Grantor in connection with any Lease; (f) Grantor will enforce the tenants' obligations under the Leases; (g) Grantor will not, in any way enter into any new Lease, amend, assign, cancel, or terminate any Lease, accept a surrender of any Lease or any leased premises, accept any payment of Rent more than one month in advance or waive, release, discharge or compromise any Rent or any of the obligations of the tenants under any of the Leases, in each case, without the prior written consent of Lender; (h) Grantor will appear in and defend or prosecute any action growing out of any Lease, at Grantor's cost and expense; (i) there is no present default by any tenant under any Lease; (j) all existing Leases are in full force and effect and unmodified; (k) to the best of Grantor's knowledge, no person or entity other than authorized tenants is in possession of all or any part of the Property; (l) Grantor will provide copies of any and all Leases and Lease amendments, and all records relating thereto, to Lender upon Lender's request.

**Lender's Right to Receive and Collect Rents.** Subject to the license granted to Grantor above, Lender shall have the right, at any time from and after the occurrence of any Event of Default to collect and receive the Rents. For this purpose, Lender is hereby given and granted the following rights, powers, and authority:  (a) Lender may send notices to any and all tenants of the Property advising them of this assignment and directing all Rents to be paid directly to Lender or Lender's agent. (b) Lender may (i) enter upon and take possession of the Property, (ii) demand, collect and receive from the tenants (or from any other persons liable therefor) all of the Rents of the Property, (iii) institute and carry on all legal proceedings necessary for the protection of the Property, including such proceeds as may be necessary to recover possession of the Property and collect the Rents, (iv) remove any tenant or other persons from the Property, (v) enter upon the Property to maintain the Property and keep the same in repair, and pay the costs thereof and of all services of all employees, including their equipment, and all continuing costs and expenses of maintaining the Property in proper repair and condition and (vi) pay all taxes, assessments and water utilities and the premiums on fire and other insurance effected by Lender on the Property; (c) Lender may do any and all things necessary or advisable to executed and comply with all applicable laws, rules, orders, ordinances and requirements of all governmental agencies; (d) Lender may (i) rent or lease the whole or any part of the Property for such terms or terms and on such conditions as Lender may deem appropriate and (ii) modify, terminate or accept the surrender of any Leases and/or waive, release, discharge or compromise any Rent or any obligations of any of the tenants under the Leases; (e) Lender may make any payment including necessary costs, expenses and reasonable attorney fees, or perform any action required of Grantor under any Lease, without releasing Grantor from the obligation to do so and without notice to or demand on Grantor; (f) Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents; and (g) Lender may do all such other things and acts with respect to the Property, the Leases and the Rents as Lender may deem appropriate and may act exclusively and solely in the place and stead of grantor.  Lender has all of the power of Grantor for the purposes stated above.  Lender shall not be required to do any of the foregoing acts or things and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.  The foregoing rights and remedies of Lender are in addition to and not in limitation of the rights and remedies of Lender under the RIGHTS AND REMEDIES UPON DEFAULT section of this Mortgage including the rights and remedies set forth in the "Collect Rents" provision, all of which rights and remedies are incorporated into this ASSIGNMENT OF RENTS section.

**Application of Rents.**  Any Rents received by Lender shall be applied against the indebtedness (including Lender's costs and expenses) in such order or manner as Lender shall elect in its sole discretion.

8

**Right to Rely.** Grantor hereby irrevocably authorizes and directs the tenants under the Leases to pay Rents to Lender upon written demand by Lender, without further consent of Grantor. The tenants may rely upon any written statement delivered by Lender to the tenants. Any such payment to Lender shall constitute payment of Grantor under the Leases. The provisions of this paragraph are intended solely for the benefit of the tenants and shall never inure to the benefit of Grantor or any person claiming through or under Grantor, other than a tenant who has not received such notice. The assignment of Rents and Leases set forth herein is not contingent upon any notice or demand by Lender to the tenants.

**Lender In Possession.** Lender's acceptance of this Mortgage shall not, prior to entry upon and taking possession of the Property by Lender, be deemed to constitute Lender a "mortgagee in possession," nor obligate Lender to: (a) appear in or defend any proceedings relating to any of the Leases, the Rents or to the Property; (b) taken any action hereunder; (c) expend any money, incur any expenses or perform any obligations or liability under the Leases; or (d) assume any obligation for any deposits delivered to Grantor by any tenant and not delivered to Lender. Lender shall not be liable for any injury or damage to any person or property in or about the Property. Grantor indemnifies Lender and holds it harmless from all liability or damages which Lender may incur under any Lease and from all claims and demands which may be asserted against Lender by reason of any alleged obligation on its part to perform any term of any Lease.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Grantor hereby authorizes Lender to file such financing statements with respect to the Property as Lender shall deem appropriate and Grantor shall take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property and shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters

9

referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Grantor pay all the Indebtedness when due, and Grantor otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following and each Event of Default (as defined in the Note) described in Section 8 of the Note, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Break Other Promises.** Borrower or Grantor breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Mortgage or in any agreement related to this Mortgage.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Mortgage, the Note or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor (regardless of whether election to continue is made), any member or partner withdraws from the limited liability company or limited partnership, or any other termination of Grantor's existence as a going business or the death of Borrower or Grantor, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure, replevin, repossession, attachment, levy, execution, or forfeiture proceedings, either by judicial proceeding, self-help, or any other method, by any creditor of Grantor, or by any governmental agency against the Collateral or any other assets of Grantor. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceedings, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of Borrower's or Grantor's property in which Lender has a lien. This includes taking of, garnishing of or levying on Borrower's or Grantor's accounts with Lender. However, if Borrower or Grantor disputes in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if

10

Borrower or Grantor gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any Indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Borrower would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender personally, or by Lender's agents or attorneys may enter into and upon all or any part of the Property, and may exclude Grantor, Grantor's agents and servants wholly from the Property. Lender may use, operate, manage and control the Property. Lender shall be entitled to collect and receive all earnings, revenues, rents, issues, profits and income of the Property and every part thereof, all of which shall for all purposes constitute property of Grantor. After deducting the expenses of conducting the business thereof, and of all maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements and amounts necessary to pay for taxes, assessments, insurance and prior or other property charges upon the Property or any part thereof, as well as just and reasonable compensation for the services of Lender. Lender shall apply such monies first to the payment of the principal of the Note, and the interest thereon, when and as the same shall become payable and second the payment of any other sums required to be paid by Grantor under this Mortgage.

**Appoint Receiver.** In the event of a suit being instituted to foreclose this Mortgage, Lender shall be entitled to apply at any time pending such foreclosure suit to the court having jurisdiction thereof for the appointment of a receiver of any or all of the Property, and of all rents, incomes, profits, issues and revenues thereof, from whatsoever source. The parties agree that the court shall forthwith appoint such receiver with the usual powers and duties of receivers in like cases. Such appointment shall be made by the court as a matter of strict right to Lender and without notice to Grantor, and without reference to the adequacy or inadequacy of the value of the Property, or to Grantor's solvency or any other party defendant to such suit. Grantor hereby specifically waives the right to object to the appointment of a receiver and agrees that such appointment shall be made as an admitted equity and as a matter of absolute right to Lender, and consents to the appointment of any officer or employee of Lender as receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

11

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Nonjudicial Sale.** If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property or the Real Property by non-judicial sale.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waive any and all right to have the Property marshaled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender will give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Insurance Policies.** Lender shall have the right upon an Event of Default, but not the obligation, to assign all of Grantor's right, title and interest in and to all policies of insurance on the Property and any unearned premiums paid on such insurance to any receiver or any purchaser of the Property at a foreclosure sale, and Grantor hereby appoints Lender as attorney in fact to assign and transfer such policies.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Mortgage, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent

12

permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any person may change his or her address for notices under this Mortgage by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be recipient Grantor's responsibility to tell the others of the notice from Lender.

**JURY WAIVER.** THE UNDERSIGNED AND LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG THE UNDERSIGNED AND LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS DOCUMENT, THE RELATED DOCUMENTS, OR ANY RELATIONSHIP BETWEEN OR AMONG THE UNDERSIGNED AND LENDER WHETHER ANY SUCH RIGHT NOW OR HEREAFTER EXISTS. THIS PROVISION IS A MATERAL INDUCEMENT TO LENDER TO PROVIDE THE FINANCING EVIDENCED BY THIS DOCUMENT AND THE RELATED DOCUMENTS.

**INFORMATION WAIVER.** Lender may provide, without any limitation whatsoever, to any one or more purchasers, potential purchasers, or affiliates of Lender, any information or knowledge Lender may have about Grantor or about any matter relating to this Mortgage, and Grantor hereby waives any right to privacy Grantor may have with respect to such matters.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** What is written in this Mortgage and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Mortgage. To be effective, any change or amendment to this Mortgage must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of Florida.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of the State of Florida, in the county in which Borrower's following address is located: **Sarasota County, Florida.**

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to

13

Borrower shall mean each and every Borrower.  This means that each Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.**  Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender.  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage.  No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions.  Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Indemnity.**  Grantor hereby agrees to indemnify, defend and hold harmless Lender, and its officers, directors, employees, agents and representatives (each an "Indemnified Person"), from and against any and all liabilities, obligations, claims, losses, damages, penalties , actions, judgments, suits, costs, expenses or disbursements of any kind or natures (collectively, the "Claims") which may be imposed on, incurred by or asserted against any Indemnified Person (whether or not caused by an Indemnified Person's sole, concurrent or contributory negligence) arising in connection with the Related Documents, the Indebtedness or the Property (including, without limitation, the enforcement of the Related Documents and the defense of any Indemnified Person's action and/or inaction in connection with the Related Documents), except to the limited extent that the Claims against the Indemnified Person are proximately caused by such Indemnified Person's gross negligence or willful misconduct.  The indemnification provided for in this section shall survive the termination of this Mortgage and shall extend and continue to benefit each individual or entity who is, become or has any time been an Indemnified Person hereunder.

**Severability.**  If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance.  If feasible, the offending provision shall be considered modified as so that it becomes legal, valid and enforceable.  If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage.  Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.**  There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.**  Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns.  If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.**  Time is of the essence in the performance of this Mortgage.

**Waiver of Homestead Exemption.**  Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Florida as to all Indebtedness secured by this Mortgage.

**DEFINITIONS.**  The following words shall have the following meanings when used in this Mortgage: Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.  Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code to the extent that this Mortgage encumbers Personal Property that is governed by the Florida

14

Uniform Commercial Code.

**Borrower.** The word "Borrower" means Homes by DeRamo, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal, local and foreign statutes, judicial decisions, regulations, ordinances, rules, judgments, orders, decrees, plans, injunctions, permits, concessions, grants, franchises, licenses, agreements and other governmental restrictions relating to (i) the protection of human health or the environment, (ii) the effect of the environment on human health, (iii) emissions, discharges or releases of pollutants, contaminants, hazardous substances or wastes into surface water, ground water or land or (iv) the manufacture, processing, distribution, use, treatment, storage, disposal, transport or handling of pollutants, contaminants, hazardous substances or wastes or the clean-up or other remediation thereof, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9801, et seq., ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means Vincent W. DeRamo, Trustee under agreement dated 3/7/00, as to an undivided one-half interest, and Tracy E. DeRamo, Trustee under agreement dated 3/7/00, as to an undivided one-half interest, reserving a life estate interest.

**Guarantor.** The word "Guarantor" means Vincent William De Ramo, Jr.

**Guaranty.** The word "Guaranty" means the Continuing Guaranty (Unlimited) from Guarantor to Lender, dated November 6th 2015.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, all explosive or radioactive substances or wastes and all hazardous or toxic substances, wastes or other pollutants, including petroleum or petroleum distillates, asbestos or asbestos containing materials, polychlorinated biphenyls, radon gas, infectious or medical wastes and all other substances or wastes of any nature regulated pursuant to any Environmental Law.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. In addition, and without limitation, the term "Indebtedness" includes all amounts identified in the Cross-Collateralization paragraph of this Mortgage.

**Lender.** The word "Lender" means Bank of Lake Mills, its Successors and or Assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

15

**Note.** The word "Note" means the Business Promissory Note and Security Agreement dated November 6th 2015, in the original principal amount of $400,000.00 from Borrower to Lender, together with all renewals, extensions, modifications, refinancings, consolidations, and substitutions thereof. The interest rate on the Note is 0.33161393939726% per day. The Note is payable commencing on 11/10/2015 and on each Business Day thereafter until 9/08/2016 with each daily payment equaling $3,047.62, followed by a final payment of $3,047.42 on 9/09/2016, when any remaining outstanding Principal, interest and other unpaid charges shall be due and payable in full. The maturity date of the Note is 9/09/2016.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, including the Guaranty, any and all other guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

[SIGNATURE PAGE TO FOLLOW; REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

16

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND
GRANTOR AGREES TO ITS TERMS.

GRANTOR:  Vincent W. DeRamo AKA Vincent William De Ramo Jr., Trustee under agreement
dated 3/7/00, as to an undivided one-half interest, reserving a life estate interest

*Vincent W. DeRamo AKA Vincent William DeRamo, Jr. Trustee*

### INDIVIUAL ACKNOWLEDGMENT

STATE OF FLORIDA         :
                         :          :SS
COUNTY OF Sarasota       :

The foregoing instrument was acknowledged before me this 6th day of November, 2015, by
GTG ☒ Vincent W. DeRamo AKA Vincent William DeRamo Jr. , who is personally known to me or
who has produced FL Drivers license as identification and who did (did not) take an oath.

*Gail T. Gold*
(Signature of Person Taking Acknowledgment)

*Gail T. Gold*
(Name of Acknowledger Typed, Printed or Stamped)

*Notary*
(Title or Rank)

*FF097911*
(Serial Number, if any)

GTG

Notary Public State of Florida
Gail T Gold
My Commission FF 097911
Expires 03/24/2018

Notary Public State of Florida
Gail T Gold
My Commission FF 097911
Expires 03/24/2018

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND
GRANTOR AGREES TO ITS TERMS.

GRANTOR: Tracy E. DeRamo aka Tracy Elizabeth DeRamo, Trustee under agreement dated 3/7/00,
as to an undivided one-half interest, reserving a life estate interest

*Tracy E DeRamo AKA Tracy Elizabeth DeRamo, Trustee*

### INDIVIUAL ACKNOWLEDGMENT

STATE OF FLORIDA          :
                          :          :SS
COUNTY OF *Sarasota*      :

The foregoing instrument was acknowledged before me this *6th* day of *November*, 201*5*, by
*Tracy E DeRamo AKA Tracy Elizabeth DeRamo*, who is personally known to me or
who has produced *FL Drivers' license* as identification and who did (did not) take an oath.

*Gail T. Gold*
(Signature of Person Taking Acknowledgment)

*Gail T. Gold*
(Name of Acknowledger Typed, Printed or Stamped)

*Notary*
(Title or Rank)

*FF097911*
(Serial Number, if any)

Notary Public State of Florida
Gail T Gold
My Commission FF 097811
Expires 03/24/2018

Exhibit A

Legal Description

ALL THAT CERTAIN lot or piece of ground situate in the City of Sarasota, County of Sarasota, State of Florida.
Lot 62, SOUTHPOINTE SHORES, Unit No. 2, as per plat thereof, recorded in Plat Book 10, Page 58, of the Public Records of Sarasota County, Florida.

Commonly Known as 7614 Peninsular Drive, Sarasota, FL 34233

Filing # 56527218 E-Filed 05/16/2017 07:09:01 PM

## BUSINESS LOAN SUMMARY*

| Borrower: Homes By De Ramo, Inc. | Lender: Bank of Lake Mills |
|---|---|
| 4610 Ashton Rd., Sarasota, Florida, 34233 | 136 E. Madison St., Lake Mills, WI 53551 |

| Disbursement to Borrowers: |
|---|
| **$106,596.84** |
| This amount is to be disbursed on 3/17/2016 |

| Fees: |
|---|
| **$7,625.00** |
| See Itemization on attached Page 2 |

| Adjustments: |
|---|
| **$343,403.16** |
| See Itemization on attached Page 2 |

| Loan Amount: |
|---|
| **$457,625.00** |
| See Itemization on attached Page 2 |

| Interest Charge: |
|---|
| **$334,086.13** |
| See Itemization on attached Page 2 |

| Total Repayment Amount: |
|---|
| **$791,711.13** |
| See Itemization on attached Page 2 |

**Payment Schedule: 251** payments of **$3,141.73** due each "Business Day" commencing on **3/18/2016** until **3/17/2017**, followed by a final payment of **$3,136.90** on **3/20/2017** when any remaining outstanding Principal, interest and other unpaid charges shall be due and payable in full. "Business Day" means any Monday through Friday, except Federal Reserve holidays. The period commencing on **3/18/2016** and ending on **3/20/2017** is referred to as the "Repayment Period."

**Prepayment:** Borrower may make a full prepayment of unpaid Principal at any time accompanied by a prepayment premium. The prepayment premium will be equal to the greater of (a) fifteen percent (15%) of the amount of the unpaid Principal or (b) the aggregate amount required to be repaid by Borrower to Lender during the Repayment Period reduced by the sum of (i) the aggregate amount of any payments made by Borrower to Lender prior to the date of such prepayment and (ii) the amount of the unpaid Principal.

**Charges:** Returned (NSF/ACH) Payment Charge: $35.00.

*If there is any conflict between the terms of this Business Loan Summary and the related Business Promissory Note and Security Agreement entered into by Borrower, the terms of the Business Promissory Note and Security Agreement shall govern.

Borrower hereby acknowledge(s) reading and understanding all of the information disclosed above, and receiving a completed copy of this Business Loan Summary on the date indicated below.

Borrower: Homes By De Ramo, Inc.

By: _Vincent William De Ramo Jr._

Printed Name: _Vincent William De Ramo Jr._

Title: _president_

Read, acknowledged and accepted This Day __16__ of Month __03__ of Year __2016__.



EXHIBIT

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5
bank of lake mills

## BUSINESS LOAN SUMMARY ITEMIZATION

| FEES | Description | Net Out | Capitalize |
|---|---|---|---|
| Processing Fee | Fee for loan processing | $0.00 | $795.00 |
| Notary Fee | Fee for notary to witness mortgage signing | $0.00 | $0.00 |
| Courier & Wire | Fee to deliver documents and wire fund | $0.00 | $0.00 |
| Settlement Fee | Fee for settlement or closing fee | $0.00 | $0.00 |
| Title Exam Fee | Fee for title examination | $0.00 | $0.00 |
| Business Inspection | Fee for inspection of business | $0.00 | $0.00 |
| Estimated Title Fee | Estimate of Title Fees | $0.00 | $7,000.00 |
| Residential Title Insurance | Fee for residential property insurance | $0.00 | $0.00 |
| Commercial Title Search | Fee for commercial property lien search report(s) | $0.00 | $0.00 |
| Commercial Title Insurance | Fee for commercial property insurance | $0.00 | $0.00 |
| Closing Protection Letter | Fee for Closing Protection Letter | $0.00 | $0.00 |
| Recording Fee | Fee for title agency to record mortgage(s) | $0.00 | $0.00 |
| Endorsement | Fee for change(s) in title insurance coverage | $0.00 | $0.00 |
| Mortgage State Tax Stamps | Fee for state tax stamps | $0.00 | $0.00 |
| Tax Certification | Fee for confirming if property tax is current | $0.00 | $0.00 |
| Certificate of Good Standing | Fee for Certificate of Good Standing | $0.00 | $0.00 |
| Broker Price Opinion Fee | Fee for evaluating the property | $0.00 | $0.00 |
| Prepaid Fees | Borrower prepaid fee credit | ($0.00) | ($365.00) |
| Abstract fee | | | $195.00 |
| | | | |
| | | | |
| | | | |
| | | $0.00 | |
| | TOTAL FEES | $7,625.00 | |
| **ADJUSTMENTS** | | | |
| Principal Balance (Refi Only) | Unpaid principal balance on previous loan | $342,223.16 | |
| Remaining Interest (Refi Only) | Unpaid interest due on previous loan | $0.00 | |
| Interest Due | Current daily interest charge | $0.00 | |
| Funds Held in Escrow | Amount in escrow to be released upon satisfaction of escrow condition(s) | $0.00 | |
| Third Party 1 Payoff | Payoff for Prepayment for Title Fees for 2nd Part of loan | $580.00 | |
| Third Party 2 Payoff | Payoff for Prepayment for BPO on 2nd part of loan | $600.00 | |
| Third Party 3 Payoff | | $0.00 | |
| Third Party 4 Payoff | | $0.00 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | TOTAL ADJUSTMENTS | $343,403.16 | |
| **BEGINNING PRINCIPAL** | | | |
| Loan Amount Before Fees & Costs | | $450,000.00 | |
| Total Fees (only if capitalized) | Sum of above itemized fees | $7,625.00 | |
| | TOTAL BEGINNING PRINCIPAL | $457,625.00 | |
| **DISBURSEMENT AMOUNT** | | | |
| Loan Amount Before Fees & Costs | | $450,000.00 | |
| Total Fees (Only if net out) | Sum of above itemized fees | $0.00 | |
| Total Adjustments | Sum of above itemized adjustments | $343,403.16 | |
| | TOTAL DISBURSEMENT | $106,596.84 | |
| **INTEREST CHARGES** | | | |
| Interest Charges | Total interest to be paid over the term of the loan | $334,086.13 | |
| | TOTAL INTEREST CHARGES | $334,086.13 | |
| **TOTAL REPAYMENT** | | | |
| Loan Amount Before Fees & Costs | | $450,000.00 | |
| Total Fees (only if capitalized) | Sum of above itemized fees | $7,625.00 | |
| Interest Charges | Total interest to be paid over the term of the loan | $334,086.13 | |
| | TOTAL REPAYMENT | $791,711.13 | |

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5

 bank of lake mills

**BUSINESS LOAN AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)**

**Date: 03-16-2016**

**DISBURSEMENT OF BUSINESS LOAN PROCEEDS.** By signing below, Borrower authorizes Lender to disburse the business loan proceeds, as evidenced by the Business Promissory Note and Security Agreement executed by Borrower of even date herewith, less the amount of any applicable fees, (a) by issuing (i) a check to Borrower or (ii) a check or bank wire to Borrower's checking account indicated below (or a substitute checking account Borrower later identifies and is acceptable to Lender) (hereinafter referred to as the Designated Checking Account ) or (b) by initiating an ACH credit entry to the Designated Checking Account. This authorization is to remain in full force and effect until Lender has received written notification from Borrower of its termination in such time and in such manner as to afford Lender and Borrower's depository bank a reasonable opportunity to act on it.

**AUTOMATIC PAYMENT PLAN.** Enrollment in Lender's Automatic Payment Plan is required for approval of the business loan.By signing below, Borrower agrees to enroll in the Automatic Payment Plan and authorizes Lender to collect payments required under the terms of the Business Promissory Note and Security Agreement by initiating ACH debit entries to the Designated Checking Account in the amounts and on the dates provided in the Payment Schedule set forth in the Business Promissory Note and Security Agreement. Borrower authorizes Lender to increase the amount of any scheduled ACH debit entry or assess multiple ACH debits for the amount of any previously scheduled payment(s) that was not paid as provided in the Payment Schedule and any unpaid charges.This authorization is to remain in full force and effect until the loan is paid in full or until Lender has received written notification from Borrower of its termination in such time and in such manner as to afford Lender and Borrower's depository bank a reasonable opportunity to act on it. Lender may suspend or terminate Borrower's enrollment in the Automatic Payment Plan immediately if Borrower fails to keep Borrower's Designated Checking Account in good standing or if there are insufficient funds in Borrower'sDesignated Checking Account to process any payment. If Borrower terminates this authorization or Lender suspends or terminates Borrower's enrollment in the Automatic Payment Plan, Borrower still will be responsible for making timely payments pursuant to the alternative payment method prescribed by Lender.

**BUSINESS PURPOSE ACCOUNT.** By signing below, Borrower attests that the Designated Checking Account was established by Borrower, and the loan proceeds will be used for business purposes only and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods.

**ACCOUNT CHANGES.** Borrower agrees to notify Lender promptly if there are any changes to the Designated Checking Account, including routing numbers.

**MISCELLANEOUS.** Lender is not responsible for any fees charged by Borrower's depository bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH transactions to Borrower's Designated Checking Account must comply with the provisions of U.S. law.

**Depository Bank Name:** Suntrust Bank
**Branch:** Sarasota
**Branch Address:** PO Box 305183 Nashville, TN 37230
**Account Name:** Homes By Deramo, Inc
**Account #:** 0574000060097
**Routing #:** 061000104
**Customer Federal Tax ID (EIN):** 59-2508852

BORROWER: Homes by De Ramo, Inc.
Signature: *Vincent William De Ramo Jr.*      Name/Title: Vincent William De Ramo Jr, President
                    2B12683CFE9F438...
Date: 3/16/2016

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5

**BLMI** bank of lake mills

**BUSINESS LOAN PURPOSE AFFIDAVIT**

**Date:** 3/16/2016

**AFFIDAVIT**

STATE/COMMONWEALTH OF _____ )

                                            )      ss.:

COUNTY OF _____ )

In connection with the business loan to Borrower evidenced by the Business Promissory Note and Security Agreement of even date herewith ("Loan Agreement"), Borrower being first duly sworn on oath deposes and states:

That the proceeds of the Loan Agreement of  FOUR HUNDRED FIFTY-SEVEN THOUSAND SIX HUNDRED TWENTY-FIVE DOLLARS AND ZERO CENTS ($457,625.00), being furnished to Borrower will be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods.

Subscribed and sworn to by Borrower, under penalty of perjury, this _____ day of _____, in the year ____.

BORROWER: Homes By De Ramo, Inc.

By: _Vincent William De Ramo Jr._
              —2BAA883CFE9F438—
Printed Name: Vincent William De Ramo Jr.

Title: president

Subscribed and sworn to me this _____ day of _____, in the year ____.

_____
Notary Public
My Commission expires:

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5



BUSINESS PROMISSORY NOTE AND SECURITY AGREEMENT

**BORROWER: Homes By De Ramo, Inc.**

**PRINCIPAL (including processing fees): $457,625.00**

**DATE: 3/16/2016**

1. <u>PROMISE TO PAY</u>: Homes By De Ramo, Inc. ("Borrower"), with its principal place of business located at 4610 Ashton Rd., Sarasota, Florida, 34233, does hereby promise to pay to the order of BANK OF LAKE MILLS, its successors and/or assigns ("Lender") at its offices located at 136 E. Madison St., Lake Mills, WI 53551, or at such other location or in such other manner as designated by Lender, the sum of FOUR HUNDRED FIFTY-SEVEN THOUSAND SIX HUNDRED TWENTY-FIVE DOLLARS AND ZERO CENTS ($457,625.00) plus interest at the daily interest rate set forth below in Section 2 in accordance with the payment schedule set forth below in Section 3. This Business Promissory Note and Security Agreement ("Loan Agreement") is accepted by Lender in Wisconsin.

2. <u>INTEREST RATE</u>: The unpaid Principal shall bear interest at the rate of 0.335% per day until paid in full.

3. <u>PAYMENT SCHEDULE/APPLICATION OF PAYMENTS</u>: Borrower shall repay the Principal and interest commencing on 3/18/2016 and on each Business Day thereafter until 3/17/2017 with each daily payment equaling $3,141.73, followed by a final payment of $3,136.90 on 3/20/2017, when any remaining outstanding Principal, interest and other unpaid charges shall be due and payable in full. "Business Day" means any Monday through Friday, except Federal Reserve holidays. The period commencing on 3/18/2016 and ending on 3/20/2017 is referred to as the "Repayment Period."

All payments shall be made by automatic ACH debit from the "Designated Checking Account" set forth in the Business Loan Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) given by Borrower to Lender or pursuant to an alternative payment method prescribed by Lender, and Borrower shall maintain balances in the Designated Checking Account sufficient to make each daily payment due under this Loan Agreement.

Payments shall be applied on the date received first to late charges and other charges due under this Loan Agreement, then to unpaid accrued interest, and then to Principal.

4. <u>VOLUNTARY PREPAYMENT AND PREPAYMENT PREMIUM</u>: Borrower has the right to prepay the unpaid Principal in full at any time, but may not make partial prepayments (except as permitted by applicable law). Any such prepayment of the unpaid Principal shall be accompanied by a prepayment premium equal to the greater of (a) fifteen percent (15%) of the amount of the unpaid Principal as of the date of such prepayment or (b) the aggregate amount required to be repaid by Borrower to Lender during the Repayment Period reduced by the sum of (i) the aggregate amount of any payments made by Borrower to Lender pursuant to Section 3 above prior to the date of such prepayment and (ii) the amount of the unpaid Principal as of the date of such prepayment. This prepayment premium is in addition to any and all interest calculated and accrued on the unpaid Principal as of the date of such prepayment in accordance with Section 2 above together with all other amounts then due and payable under this Loan Agreement. No prepayment is permitted unless all outstanding charges are paid in full as of the date of prepayment. If Borrower desires to prepay, Borrower shall forward a written request to WBLPayoff@wbl.com. In addition, Borrower may contact Lender s Servicing Agent at 120 W. 45th St. 29th Floor, New York, NY 10036 or at 212-293-8200 and Lender s Servicing Agent shall provide Borrower with the amount of the unpaid Principal, prepayment premium, and any other amounts due under the terms of the Loan Agreement as of a date designated by Borrower. For the avoidance of doubt, as permitted under applicable law, if the Obligations (as defined below) have been accelerated on the happening of an Event of Default (as defined below), payment of Principal and interest shall be deemed a prepayment for purposes of this Section 4 and shall be accompanied by a prepayment premium.

5. <u>RETURNED PAYMENT CHARGE</u>: Borrower will pay a charge of thirty-five dollars ($35.00) ("NSF Charge") in connection with any payment by check or electronic transfer that is returned unpaid because of an insufficient balance in the Designated Checking Account or otherwise.

6. <u>SECURITY INTEREST</u>: Borrower grants to Lender a security interest in and to any and all property as described below in this Section 6 to secure payment of all debts, obligations and liabilities of Borrower to Lender evidenced by this Loan Agreement or any other loan agreement with Lender ("Obligations"). This is a continuing security interest and will continue in effect even though all or any part of the Obligations is paid in full and even though for a period of time Borrower may not be indebted to Lender. The collateral includes the property purchased with the proceeds of this Loan Agreement described on <u>Schedule A</u> attached to and made a part of this Loan Agreement ("Purchase Money Collateral"), the vehicles and other personal property described on <u>Schedule B</u> attached to and made a part of this Loan Agreement ("Specific Collateral") and all other

*Rev. Sep 2014*                                                                                                   P a g e  |5

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5
bank of lake mills

personal property now owned or hereafter acquired by Borrower (which, along with Purchase Money Collateral and Specific Collateral, is collectively referred to as "Collateral"), including, but not limited to, all goods (except consumer goods), farm products, inventory, equipment, furniture, money, instruments, accounts, accounts receivable, contract rights, documents, chattel paper, general intangibles, including, but not limited to, all products and proceeds of Collateral and all additions and accessions to, replacements of, insurance proceeds of, and documents covering Collateral, all property received wholly or partly in trade or exchange for Collateral, all leases of Collateral and all rents, revenues, issues, profits and proceeds arising from the sale, lease encumbrance, collection, or any other temporary or permanent disposition, of the Collateral or any interest therein. Borrower agrees that Lender may file any financing statement, lien entry form or other document Lender requires in order to perfect, amend or continue Lender's security interest in the Collateral and Borrower agrees to cooperate with Lender as may be necessary to accomplish said filing and to do whatever Lender deems necessary to protect Lender's security interest in the Collateral. Borrower shall ensure that Lender is named as the only lien holder on the titles to the motor vehicles listed on Schedule B to this Loan Agreement as of the date of this Loan Agreement (or the nearest subsequent date as permitted under applicable law).

Borrower shall maintain the Collateral in good condition and repair and not permit its value to be impaired; keep the Collateral free from all liens, encumbrances and security interests (other than those created or expressly permitted by this Loan Agreement); defend the Collateral against all claims and legal proceedings by persons other than Lender; pay and discharge when due all taxes, license fees, levies and other charges upon the Collateral; not sell, lease or otherwise dispose of the Collateral or permit it to become a fixture or an accession to other goods, except as specifically authorized by Lender in writing; and not permit the Collateral to be used in violation of any applicable law, regulation or policy of insurance.

Borrower shall pay all expenses and, upon request, take any action reasonably deemed advisable by Lender to preserve the Collateral or to establish, determine priority of, perfect, continue perfected, terminate and/or enforce Lender's interest in the Collateral or rights under this Loan Agreement and, further, Borrower authorizes Lender, with full power of substitution, to execute in Borrower's name any documents necessary to perfect, amend or to continue Lender's interest in the Collateral or rights under this Loan Agreement or to demand termination of filings of other secured parties. Lender has no duty to protect, insure or realize upon the Collateral. Loss of or damage to the Collateral shall not release Borrower from any of the Obligations.

## 7. FOR BORROWERS OR COLLATERAL IN LOUISIANA ONLY:

(a)     Foreclosure. In the event that Borrower is domiciled in, or Collateral is located in, Louisiana, on the happening of an Event of Default, Lender shall have the right to commence appropriate foreclosure proceedings against the Collateral and against Borrower.

(b)     Seizure and Sale of Collateral. In the event that Lender elects to commence appropriate Louisiana foreclosure proceedings under the Loan Agreement, Lender may cause the Collateral, or any part or parts thereof, to be immediately seized and sold, whether in term of court or in vacation, under ordinary or executory process, in accordance with applicable Louisiana law, to the highest bidder for cash, with or without appraisement, and without the necessity of making additional demand upon or notifying Borrower or placing Borrower in default, all of which are expressly waived.

(c)     Executory Process. For purposes of foreclosure under Louisiana executory process procedures, Borrower confesses judgment and acknowledges to be indebted to Lender, up to the full amount of the Obligations, in Principal, interest, prepayment charges, NSF Charges, and any other unpaid costs and charges authorized by the Loan Agreement, reasonable attorneys' fees and all costs of collection. Borrower further confesses judgment and acknowledges to be indebted unto and in favor of Lender in the amount of any additional advances that Lender may make on Borrower's behalf pursuant to the Loan Agreement, together with interest thereon. To the extent permitted under applicable Louisiana law, Borrower additionally waives the following: (1) the benefit of appraisal as provided in Articles 2332, 2336, 2723, and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale; (2) the demand and three (3) days' delay as provided under Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; (3) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (4) the three (3) days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (5) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above.

(d)     Keeper. Should any or all of the Collateral be seized as an incident to an action for the recognition or enforcement of this Loan Agreement, by executory process, sequestration, attachment, writ of *fieri facias* or otherwise, Borrower hereby agrees that the court issuing any such order shall, if requested by Lender, appoint Lender, or any agent designated by Lender or any person or entity named by Lender at the time such seizure is requested, or any time thereafter, as "Keeper" of the Collateral as provided under La. R.S. 9:5136, *et seq.* Such a Keeper shall be entitled to reasonable

*Rev. Sep 2014*                                                                                                          P a g e |6

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5
**bank of lake mills**

compensation. Borrower agrees to pay the reasonable fees of such Keeper, which compensation to the Keeper shall also be secured by this Loan Agreement.

**8. REPRESENTATIONS, WARRANTIES, AND COVENANTS:** Borrower makes the following representations, warranties and covenants:

(a) Borrower is the owner of or is acquiring the Purchase Money Collateral free of all liens, encumbrances and security interests (except Lender's security interest), and is the owner of all other Collateral free of all liens, encumbrances and security interests, except Lender's security interest and any security interests listed on Schedule C attached and made a part of this Loan Agreement;

(b) **the proceeds of this Loan Agreement will be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods. Borrower understands Lender is relying on the accuracy of this representation in disbursing the loan proceeds and that Borrower's agreement not to use the proceeds of this Loan Agreement for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods means that certain important duties imposed upon entities making loans for consumer/personal purposes, and certain important rights conferred upon consumers, pursuant to federal or state law will not apply to this Loan Agreement, or any other document or instrument given to Lender in connection with or related to this Loan Agreement. Borrower also understands that Lender will be unable to confirm whether the proceeds of this Loan Agreement will be used for business purposes only. Borrower acknowledges and agrees that a breach by Borrower of the provisions of this subsection 8(b) will not affect Lender's right to (I) enforce Borrower's promise to pay for all amounts owed under this Loan Agreement, regardless of the purpose for which the proceeds of this Loan Agreement are in fact obtained or (II) use any remedy legally available to Lender, even if that remedy would not have been available had the proceeds of this Loan Agreement been used for consumer purposes;**

(c) the Collateral will be kept at Borrower's address set forth above in Section 1, on Schedule D attached to and made a part of this Loan Agreement;

(d) Borrower's name in Section 1 above is its exact name on its organizing and/or registered documents, if any, and is Borrower's principal place of business. Borrower shall immediately advise Lender of any change in Borrower's name or address as set forth above in Section 1;

(e) Borrower is duly organized, validly existing and in good standing under the law of the jurisdiction in which it is organized, and has all licenses and authorizations necessary to carry on its business as now being conducted;

(f) Borrower has the full power and authority to execute, deliver and perform all transactions contemplated by this Loan Agreement and the performance of and compliance with the terms of this Loan Agreement will not violate the Borrower's organizational documents or constitute a default of any contract, agreement or other instrument to which Borrower is a party;

(g) Borrower has duly authorized the execution, delivery and performance of this Loan Agreement and has duly executed and delivered this Loan Agreement, and this Loan Agreement constitutes a legal, valid and binding obligation of the Borrower, enforceable against it in accordance with its terms;

(h) there is no action, suit, proceeding or investigation pending or, to Borrower's knowledge, threatened against or affecting it or any of its assets before or by any court or other governmental authority which, if determined adversely to it, would have a material adverse effect on its financial condition, business or prospects, or the value of the Collateral; and

(i) Borrower will provide any financial information on request or permit an examination of its books and records to permit Lender to confirm Borrower's ability to pay its Obligations and all other financial obligations.

(j) Borrower has not been notified by any of its lenders that it is in default under the terms of any of its credit agreements, nor has Borrower done, caused to be done, or failed to do any act or omission that would result in a default under any credit agreement.

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5

(k) No third party source of financing for Borrower's customers has discontinued, or threatened to discontinue providing financing to Borrower's customers.

9. **DEFAULT:** On the happening of any of the following events (each an "Event of Default"):

(a) failure by Borrower to pay any daily or other payment required by this Loan Agreement when due;

(b) failure by Borrower to observe, perform, keep or abide by any term, covenant or condition contained in this Loan Agreement or any other document or instrument given to Lender in connection with or related to this Loan Agreement, including any real estate mortgage, security agreement or other agreement or document now or hereafter evidencing or creating any security for the payment of this Loan Agreement;

(c) the filing of a bankruptcy proceeding, assignment for the benefit of creditors, issuance of a judgment execution, garnishment or levy against, or the appointment of a representative of any kind for the commencement of any proceeding for relief from indebtedness by or against Borrower;

(d) the happening of any event, which, in the reasonable judgment of Lender, adversely affects Borrower's ability or the ability of any guarantor of Borrower's Obligations under this Loan Agreement ("Guarantor") to repay Borrower's Obligations, or materially affects the value of the Collateral;

(e) any written representation, statement or warranty made to Lender by Borrower or any Guarantor is untrue or is breached;

(f) the occurrence of (I) a default under any guaranty of Borrower's Obligations ("Guaranty"), or any other document or instrument given to Lender in connection with or related to this Loan Agreement, or (II) an event of default under any other loan agreement that Borrower may have with any other lender;

(g) any Guaranty is revoked or becomes unenforceable for any reason;

(h) Lender, upon examination of Borrower's financial information during the term of this Loan Agreement, becomes insecure in Borrower's ability to pay the Obligations,

Lender, at its option, without notice or demand (except as required by applicable law), may (A) declare the entire unpaid balance of all Obligations under this Loan Agreement or other agreements immediately due and payable, and shall have the right to proceed to collect such Obligations under applicable law and enforce its rights under any Guaranty; and (B) proceed against the Collateral and any other collateral securing any obligation to Lender as if said collateral secured the Obligations, as permitted under the applicable Uniform Commercial Code or any other applicable law. As permitted under the Uniform Commercial Code, Lender may take possession of Collateral without notice or hearing, which Borrower waives, and upon demand, Borrower shall assemble the Collateral and make it available to Lender at any convenient place designated by Lender. Lender's receipt of any payment after the occurrence of an Event of Default, whether or not the Obligations have been accelerated, shall not constitute a waiver of the default or of Lender's rights or remedies upon such default, including Lender's right to accelerate the unpaid balance of the Obligations and pursue collection thereof. Election by Lender to pursue or waive any remedy shall not exclude pursuit of any other remedy.

10. **INSPECTION OF COLLATERAL AND PLACE OF BUSINESS:** Lender and Lender's representatives and agents shall have the right at any reasonable time or times to inspect the Collateral wherever located and the interior and exterior of any Borrower place of business, and Borrower shall assist Lender and its representatives and agents in making any such inspection. During an inspection of any Borrower place of business, Lender or Lender's representatives and agents may examine, among other things, whether Borrower (i) has a place of business that is separate from any personal residence, (ii) is open for business, (iii) has sufficient inventory and/or staff to conduct Borrower's business and (iv) has one or more credit card terminals or point of sale systems if Borrower processes credit card transactions. When performing an inspection, Lender or Lender's representatives and agents may photograph the interior and exterior of any Borrower place of business, including any signage. Any photograph will become and remain the sole property of Lender and will be shared with Lender's employees, representatives and agents. Borrower grants Lender the irrevocable and permanent right to display and share any photograph in all forms, including composite and modified representations, for all purposes, with Lender's employees, representatives and agents. Borrower agrees to reimburse Lender for the cost of the inspections described in this Section 10.

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5
bank of lake mills

**11. EVALUATION OF CREDIT:** Borrower authorizes Lender to obtain business and personal credit bureau reports in Borrower's name, at any time and from time to time for purposes of deciding whether to approve the requested business loan or for any update, renewal, extension of credit or other lawful purpose. Upon Borrower's request, Lender will advise Borrower if Lender obtained a credit report and Lender will give Borrower the credit bureau's name and address. Borrower agrees to submit current financial information, a new credit application, or both, in Borrower's name at any time promptly upon Lender's request.

**12. ATTORNEYS' FEES, COLLECTION COSTS AND POST-JUDGMENT RATE OF INTEREST:** In the event Lender retains counsel with respect to enforcement of its rights under this Loan Agreement or any other document or instrument given to Lender, Borrower agrees to pay all expenses of Lender in enforcing its rights to collect the Obligations or in taking possession, holding, preparing for disposition, and disposing of the Collateral, including Lender's reasonable attorneys' fees (whether or not an action is commenced and whether or not in the court of original jurisdiction, appellate court, bankruptcy court or otherwise) and all costs of collection of any judgment and any costs of appeal. In the event this Loan Agreement is brought to a judgment, interest shall accrue at the interest rate set forth in Section 2 above until the judgment is satisfied, except as prohibited by applicable law.

**13. SALE OF LOAN AGREEMENT:** This Loan Agreement, or an interest in this Loan Agreement, together with the rights to the Collateral, may be sold, assigned, transferred or conveyed by Lender one or more times.

**14. INDEMNIFICATION:** Except for Lender's willful misconduct, Borrower will indemnify and save Lender harmless from all loss, costs, damage, liability or expenses (including, without limitation, court costs and reasonable attorneys' fees) that Lender may sustain or incur by reason of defending or protecting Lender's security interest or the priority thereof or enforcing its rights to collect the Obligations, or in the prosecution or defense of any action or proceeding concerning any matter growing out of or in connection with this Loan Agreement and/or any other documents or instruments now or hereafter executed in connection with this Loan Agreement and/or the Obligations and/or the Collateral. This indemnity shall survive the repayment of the Obligations and the termination of this Loan Agreement.

**15. MISCELLANEOUS:**

    (a) Delay or failure of Lender to exercise any of its rights under this Loan Agreement shall not be deemed a waiver thereof. No waiver of any condition or requirement shall operate as a waiver of any other or subsequent condition or requirement.

    (b) This Loan Agreement may not be modified orally, and may be modified only upon written agreement signed by Lender.

    (c) Lender is an FDIC insured, Wisconsin state chartered bank and this Loan Agreement is accepted by Lender in Wisconsin. CONSEQUENTLY, THIS AGREEMENT WILL BE GOVERNED BY FEDERAL LAW APPLICABLE TO AN FDIC INSURED INSTITUTION AND TO THE EXTENT NOT PREEMPTED BY FEDERAL LAW, THE LAWS OF THE STATE OF WISCONSIN WITHOUT REGARD TO CONFLICT OF LAW RULES. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and reserved under this Loan Agreement will be governed by such laws.

    (d) Borrower and Lender agree that any action or proceeding to enforce any rights or obligations arising out of this Loan Agreement shall be commenced either in Wisconsin, New York or the state (or commonwealth, as the case may be) of Borrower's address set forth in Section 1 above ("Borrower's State") and Borrower waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to Borrower at the address specified by Borrower above in Section 1, or as otherwise provided by the laws of the State of Wisconsin, the State of New York, the Borrower's State, or the United States of America. Borrower and Lender agree that venue is proper in such courts.

    (e) Without affecting the liability of Borrower or any Guarantor, Lender may accept partial payments marked "in full" or otherwise, release or impair any Collateral or agree not to sue any party liable on this Loan Agreement without waiving any of its rights hereunder.

    (f) Presentment, protest, demand and notice of dishonor are waived.

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5

bank of lake mills

(g) Without affecting the liability of any Guarantor, Lender may from time to time, without notice, renew or extend the time for payment.

(h) Borrower expressly agrees that the interest rate set forth above in Section 2 is appropriate under the circumstances and shall be the applicable rate at which unpaid Principal (and Costs, as defined below) shall bear interest under this Loan Agreement, notwithstanding any rate of interest prescribed by statute from time to time; provided, however, if fulfillment of any provisions of this Loan Agreement or any other instrument securing the Obligations is subject to a law that sets maximum interest rates or other charges, and that law is finally interpreted so that the interest or other fees collected or to be collected in connection with this Loan Agreement exceed the permitted limits, then (I) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit and (II) any sums already collected from Borrower that exceed the permitted limits will be refunded or credited to Borrower and the obligations created by this Loan Agreement shall be fulfilled to the limit of such validity as is permitted by law.

(i) Borrower shall keep the Collateral and Lender's interest in it insured under policies with such provisions, for such amounts and by such insurers as shall be satisfactory to Lender from time to time, and shall furnish evidence of such insurance satisfactory to Lender upon request. Borrower assigns (and directs any insurer to pay) to Lender the proceeds of all such insurance and any premium refund and authorizes Lender to endorse in the name of Borrower any instrument for such proceeds or refunds and, at the option of Lender, to apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to restoration of the Collateral, returning any excess to Borrower. Lender is authorized, in the name of Borrower or otherwise, to make, adjust and/or settle claims under any insurance on the Collateral, or cancel the same after the occurrence of an Event of Default.

(j) If Borrower fails to perform any of Borrower's duties set forth in this Loan Agreement or in any evidence of or document relating to the Obligations, Lender is authorized, in Borrower's name or otherwise, to take any such action, including, without limitation, signing Borrower's name or paying any amount so required, and the cost ("Cost") shall be one of the Obligations secured by this Loan Agreement and shall be payable by Borrower upon Lender's demand with interest at the interest rate set forth above in Section 2 from the date of payment by Lender.

(k) Borrower releases Lender from any liability for any act or omission relating to the Obligations, the Collateral or this Loan Agreement, except Lender's willful misconduct.

(l) Invalidity or unenforceability of any provision of this Loan Agreement shall not affect the validity or enforceability of any other provision.

(m) The terms of this Loan Agreement shall be binding upon Borrower and its permitted successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

(n) Borrower acknowledges that a broker may have received compensation in connection with this Loan Agreement.

(o) Any of the Borrower, Lender or a Guarantor may choose to arbitrate any or all disputes and claims arising out of or relating to this Loan Agreement, the Guaranty or any other related document. A claim includes matters arising as an initial claim, counter-claim, cross-claim, third-party claim, or otherwise. If the Borrower, Lender or a Guarantor chooses to litigate any dispute or claim arising out of or relating to this Loan Agreement, the Guaranty or any related document through a judicial action, the decision to litigate shall not be deemed a waiver of arbitration, and if such judicial action is contested, any party may thereafter invoke its arbitration rights at any time before any discovery is taken in the judicial action. If the Borrower, Lender or a Guarantor seeks to have a dispute resolved by arbitration, that party must first send to the other party(ies) by certified mail, a written Notice of Intent to Arbitrate. If Borrower, Lender or a Guarantor do not reach an agreement to resolve the claim within 10 days after the Notice is received, any party may commence an arbitration proceeding with the American Arbitration Association ("AAA"). Lender will promptly reimburse Borrower or the Guarantor any arbitration filing fee, however, in the event that both the Borrower and the Guarantor must pay arbitration filing fees, Lender will only reimburse the Borrower's arbitration filing fee and, except as provided in the next sentence, the Lender will pay all arbitration administration and arbitrator fees. If the arbitrator finds that either the substance of any claim raised by Borrower or a Guarantor or the relief sought by Borrower or a Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rule of Procedure 11(b), then Lender will pay the administration or arbitrator fees only if required by the AAA Rules. If the arbitrator grants relief to the Borrower or a Guarantor that is equal to or greater than the value of the relief requested by the Borrower or a Guarantor in the arbitration, Lender shall reimburse Borrower or the Guarantor, as applicable, for

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5

that party's reasonable attorneys' fees and expenses incurred for the arbitration. BORROWER AND LENDER AGREE THAT BY ENTERING INTO THIS LOAN AGREEMENT, EACH IS WAIVING THE RIGHT TO TRIAL BY JURY. BORROWER AND LENDER MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF REPRESENTATIVE OR CLASS MEMBER IN ANY PURPORTED REPRESENTATIVE OR CLASS PROCEEDING. Further, Borrower and Lender agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void. Any award by the individual arbitrator shall be final and binding, except for any appeal right under the Federal Arbitration Act ("FAA"), and may be entered and enforceable as a judgment in any court of competent jurisdiction, including as a judgment that permits Lender to initiate or complete the exercise of its remedies against, or its realization or foreclosure upon, any collateral or security provided for the benefit of Lender. This arbitration provision is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1.

(p) In order to ensure a high quality of service for Lender's customers, Lender may monitor and/or record telephone calls between Borrower and Lender's employees. Borrower acknowledges that Lender may do so and agrees in advance to any such monitoring or recording of telephone calls.

(q) Borrower authorizes Lender and Lender's affiliates, agents and independent contractors to contact Borrower at any telephone number Borrower provides to Lender or from which Borrower places a call to Lender, or any telephone number where Lender believes it may reach Borrower, using any means of communication, including, but not limited to, calls or text messages to mobile, cellular, wireless or similar devices or calls or text messages using an automated telephone dialing system and/or artificial voices or prerecorded messages, even if Borrower incurs charges for receiving such communications. Lender and Lender's affiliates, agents and independent contractors, may use any other medium not prohibited by law, including, but not limited to, mail, e-mail and facsimile, to contact Borrower. Borrower expressly consents to conduct business by electronic means.

(r) TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW, BORROWER AND LENDER WAIVE THEIR RIGHT TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON, ARISING OUT OF OR RELATED TO THIS LOAN AGREEMENT AND ALL OTHER DOCUMENTATION EVIDENCING THE OBLIGATIONS, IN ANY LEGAL ACTION OR PROCEEDING.

(s) This Loan Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument. For purposes of the execution of this Loan Agreement, electronic or fax signatures shall be treated in all respects as original signatures.

**PRIOR TO SIGNING THIS LOAN AGREEMENT, BORROWER READ AND UNDERSTOOD ALL OF THE PROVISIONS OF THIS LOAN AGREEMENT. AFTER DUE CONSIDERATION, AND THE OPPORTUNITY TO CONSULT WITH OTHER LENDERS AND AN ATTORNEY, ACCOUNTANT OR OTHER COMPETENT PROFESSIONAL OF ITS CHOICE, BORROWER KNOWINGLY, WILLFULLY AND VOLUNTARILY AGREES TO THE TERMS OF THIS LOAN AGREEMENT.**

**BORROWER ACKNOWLEDGES RECEIPT OF A FULLY COMPLETED AND EXECUTED VERSION OF THIS LOAN AGREEMENT.**

BORROWER: Homes By De Ramo, Inc.

By: Vincent William De Ramo Jr.

Printed Name: Vincent William De Ramo Jr.

Title: president

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5

BLM bank of lake mills

## ACKNOWLEDGMENT

STATE/COMMONWEALTH OF _____ )

                                         )      ss.:

COUNTY OF _____ )

On the_____ day of _____, in the year ____ before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared <u>Vincent William De Ramo Jr</u>, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Business Promissory Note and Security Agreement and acknowledged to me that she/he executed the same in her/his capacity as_____ of_____, and that by her/his signature on the Business Promissory Note and Security Agreement, the individual, or the person upon behalf of which the individual acted, executed the Business Promissory Note and Security Agreement.


_____
Notary Public
My Commission expires:

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5

bank of lake mills

## SCHEDULE A - PURCHASE MONEY COLLATERAL

NONE

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5
bank of lake mills

## SCHEDULE B

NONE

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5

bank of lake mills

## SCHEDULE C

NONE

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5

bank of lake mills

## **SCHEDULE D**

### **ADDRESS OTHER THAN BORROWER'S ADDRESS AT WHICH COLLATERAL IS KEPT**

| Property Address |
|---|
| 7614  Penninsular Dr, Sarasota FL 34231 |

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5

 **BLM** bank of lake mills

**CONTINUING GUARANTY, PERSONAL (Unlimited)**          Dated: 3/16/2016

**GUARANTY.** For value received, and to induce BANK OF LAKE MILLS, its successors and/or assigns ("Lender"), with offices at 136 E. Madison St., Lake Mills, WI 53551, to extend credit or grant or continue other credit accommodations to Homes By De Ramo, Inc. ("Borrower"), the undersigned ("Guarantor," whether one or more) jointly and severally guarantees payment of the Obligations defined below when due or at the time any Borrower becomes the subject of bankruptcy or other insolvency proceedings. Except as provided below, "Obligations" mean all debts, obligations and liabilities of Borrower to Lender arising out of credit previously granted, credit contemporaneously granted or credit granted in the future by Lender to Borrower. Obligations include interest and charges and the amount of payments made to Lender or another by or on behalf of Borrower which are recovered from Lender by a trustee, receiver, creditor or other party pursuant to applicable federal or state law, and all costs, expenses and attorneys' fees at any time paid or incurred before and after judgment in endeavoring to collect all or part of any of the above, or to realize upon this Guaranty, or any collateral securing any of the above, including those incurred in successful defense or settlement of any counterclaim brought by Borrower or Guarantor or incident to any action or proceeding involving Borrower or Guarantor brought pursuant to the United States Bankruptcy Code. Obligations do not include personal, consumer, family or household transactions. Guarantor grants to Lender a security interest and lien in any credit balance and other money now owing or hereafter owed Guarantor by Lender. Lender may, at any time after the occurrence of an event of default with respect to any Obligation, without prior notice or demand, set off against any such credit balance or other money any amount owing upon the Obligations. This Guaranty also is secured by all existing and future security agreements between Lender and Guarantor, and the titles to the motor vehicles listed on Exhibit 1 to this Guaranty, with respect to which, Guarantor shall ensure that Lender is named as the only lien holder on each such motor vehicle title as of the date of this Guaranty (or the nearest subsequent date as permitted under applicable law). This Guaranty is valid and enforceable against Guarantor even though any Obligation is invalid or unenforceable against the Borrower.

**WAIVER.** Guarantor expressly waives (a) notice of the acceptance of this Guaranty, the creation of any present or future Obligation, default under any Obligation, proceedings to collect from the Borrower or anyone else, (b) all diligence of collection and presentment, demand, notice and protest, (c) any right to disclosures from Lender regarding the financial condition of the Borrower or the enforceability of the Obligations, and (d) all other legal and equitable defenses of suretyship and impairment of collateral. No claim, including a claim for reimbursement, subrogation, contribution or indemnification which Guarantor may, as a guarantor of the Obligations, have against a co-guarantor of any of the Obligations or against the Borrower shall be enforced or any payment accepted until the Obligations are paid in full and no payments to or collections by Lender are subject to any right of recovery.

**CONSENT.** With respect to any of the Obligations, Lender may from time to time before or after revocation of this Guaranty without notice to Guarantor and without affecting the liability of Guarantor (a) surrender, release, impair, sell or otherwise dispose of any security or collateral for the Obligations, (b) release or agree not to sue any guarantor or surety, (c) fail to perfect its security interest in or realize upon any security or collateral, (d) fail to realize upon any of the Obligations or to proceed against any Borrower or any guarantor or surety, (e) renew or extend the time of payment, (f) increase or decrease the rate of interest or the amount of the Obligations, (g) accept additional security or collateral, (h) determine the allocation and application of payments and credits and accept partial payments, (i) apply the proceeds of disposition of any collateral for the Obligations to any obligation of Borrower secured by such collateral in such order and amounts as it elects, (j) determine what, if anything, may at any time be done with reference to any security or collateral, and (k) settle or compromise the amount due or owing or claimed to be due or owing from the Borrower, which settlement or compromise shall not affect Guarantor's liability for the full amount of the unpaid Obligations. Guarantor expressly consents to and waives notice of all of the above. Guarantor consents to and authorizes Lender to obtain business and personal credit bureau reports in Guarantor's name, at any time and from time to time for purposes of deciding whether to approve the business loan requested by borrower or for any update, renewal, extension of credit to Borrower or other lawful purpose. Guarantor expressly authorizes Lender, agents or designees to report the payment history and loan performance to any national credit bureau for the purpose of inclusion of the related data in Guarantor's consumer credit report. Nothing contained in this Guaranty shall require Lender to first seek or exhaust any remedy against Borrower or to first proceed against any collateral or security for any of the Obligations or this Guaranty.

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5

 **BLM** bank of lake mills

**PERSONS BOUND.** This Guaranty benefits and is enforceable by Lender, and its successors and assigns (collectively called "successors" and each a "successor"), and binds Guarantor, and Guarantor's heirs, personal representatives, successors and assigns. This Guaranty shall continue in full force and effect notwithstanding any change in structure or status of Borrower or Lender, whether by merger, consolidation, reorganization or otherwise, or assignment of this Guaranty to a successor Lender. **This Guaranty includes additional provisions below.**

---

**NOTICE TO GUARANTOR**
**You are being asked to guarantee the past, present and future Obligations of Borrower. If Borrower does not pay, you will have to. You may also have to pay collection costs. Lender can collect the Obligations from you without first trying to collect from Borrower or another guarantor or proceeding against any collateral or other security for the Obligations.**

---

(Guarantor Name) Vincent William De Ramo Jr

(Guarantor Signature) _Vincent William De Ramo Jr._

(Guarantor Address) 8614 peninusalr drive

(Guarantor Name) Vincent W Deramo and Tracy E. Deramo as Trustees under agreement dated 3/67/00

(Guarantor Signature) _Vincent William De Ramo Jr._

(Guarantor Address) 8614 peninusalr drive

---

**For Married Residents Only:** Each Guarantor who signs below represents that this obligation is incurred in the interest of his or her marriage or family.

X _Vincent William De Ramo Jr._

X _____

---

**ADDITIONAL PROVISIONS**

**ENTIRE AGREEMENT.** This Guaranty is intended by Guarantor and Lender as a final expression of this Guaranty and as a complete and exclusive statement of its terms, there being no conditions to the full effectiveness of this Guaranty. This Guaranty may not be supplemented or modified, except in writing by Lender.

**REPRESENTATIONS.** Guarantor acknowledges and agrees that Lender (a) has not made any representations or warranties with respect to, (b) does not assume any responsibility to Guarantor for, and (c) has no duty to provide information to Guarantor regarding, the enforceability of any of the Obligations or the financial condition of the Borrower. **Guarantor has independently determined the creditworthiness of Borrower and the enforceability of the Obligations and until the Obligations are paid in full will independently and without reliance on Lender continue to make such determinations.**

**REVOCATION.** This is a continuing guaranty and shall remain in full force and effect until Lender receives written notice of its revocation signed by Guarantor or actual notice of the death of Guarantor. Upon revocation by written notice or actual notice of death, this Guaranty shall continue in full force and effect as to all Obligations contracted for or incurred before revocation and, as to them, Lender shall have the rights provided by this Guaranty as if no revocation had occurred. Any renewal, extension or increase in the interest rate of any such Obligation, whether made before or after revocation, shall constitute an Obligation contracted for or incurred before revocation. Obligations contracted for or incurred before revocation shall also include credit extended after revocation pursuant to commitments made before revocation. Revocation by one Guarantor shall not affect any of the liabilities or obligations of any other Guarantor and this Guaranty shall continue in full force and effect with respect to them.

**ARBITRATION.** Any of the Borrower, Lender or a Guarantor may choose to arbitrate any or all disputes and claims arising out of or relating to this Guaranty or any other related document. A claim includes matters arising as an initial claim, counter-claim, cross-claim, third-party claim, or otherwise. If the Borrower, Lender or a Guarantor chooses to

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5



litigate any dispute or claim arising out of or relating to this Guaranty or any related document through a judicial action, the decision to litigate shall not be deemed a waiver of arbitration, and if such judicial action is contested, any party may thereafter invoke its arbitration rights at any time before any discovery is taken in the judicial action.   If the Borrower, Lender or a Guarantor seeks to have a dispute resolved by arbitration, that party must first send to the other party(ies) by certified mail, a written Notice of Intent to Arbitrate.  If Borrower, Lender or a Guarantor do not reach an agreement to resolve the claim within 10 days after the Notice is received, any party may commence an arbitration proceeding with the American Arbitration Association ("AAA").  Lender will promptly reimburse Borrower or the Guarantor any arbitration filing fee, however, in the event that both the Borrower and the Guarantor must pay arbitration filing fees, Lender will only reimburse the Borrower's arbitration filing fee and, except as provided in the next sentence, the Lender will pay all arbitration administration and arbitrator fees.  If the arbitrator finds that either the substance of any claim raised by Borrower or a Guarantor or the relief sought by Borrower or a Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rule of Procedure 11(b), then Lender will pay the administration and arbitrator fees only if required by the AAA Rules.  If the arbitrator grants relief to the Borrower or a Guarantor that is equal to or greater than the value of the relief requested by the Borrower or a Guarantor in the arbitration, Lender shall reimburse Borrower or the Guarantor, as applicable, for that party's reasonable attorneys' fees and expenses incurred for the arbitration. GUARANTOR AND LENDER AGREE THAT BY ENTERING INTO THIS GUARANTY, EACH IS WAIVING THE RIGHT TO TRIAL BY JURY.  GUARANTOR AND LENDER MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF REPRESENTATIVE OR CLASS MEMBER IN ANY PURPORTED REPRESENTATIVE OR CLASS PROCEEDING.  Further, Guarantor and Lender agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void.  Any award by the individual arbitrator shall be final and binding, except for any appeal right under the Federal Arbitration Act ("FAA"), and may be entered and enforceable as a judgment in any court of competent jurisdiction, including as a judgment that permits Lender to initiate or complete the exercise of its remedies against, or its realization or foreclosure upon, any collateral or security provided for the benefit of Lender.  This arbitration provision is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1.

**INTERPRETATION.** Lender is an FDIC insured, Wisconsin state chartered bank. CONSEQUENTLY, THIS GUARANTY WILL BE GOVERNED BY FEDERAL LAW APPLICABLE TO AN FDIC INSURED INSTITUTION AND TO THE EXTENT NOT PREEMPTED BY FEDERAL LAW, THE LAWS OF THE STATE OF WISCONSIN WITHOUT REGARD TO CONFLICT OF LAW RULES. The legality, enforceability and interpretation of this Guaranty and the amounts guaranteed will be governed by such laws.

**JURISDICTION.** Guarantor irrevocably consents with respect to any suit, action or proceeding relating to this Guaranty or any of the other loan documents relating to the Obligations, that venue shall be either in Wisconsin, New York or the state (or commonwealth, as the case may be) of Borrower's principal place of business ("Borrower's State") and Guarantor waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to Guarantor at the address specified by Guarantor above, or as otherwise provided by the laws of the State of Wisconsin, the State of New York, the Borrower's State, or the United States of America. Guarantor agrees that venue is proper in such courts.

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5

 **BLM** bank of lake mills

### JURY WAIVER

GUARANTOR KNOWINGLY AND VOLUNTARILY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BASED UPON, ARISING OUT OF OR IN ANY WAY RELATING TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED BY THIS GUARANTY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, AND AGREES AND CONSENTS THAT ANY SUCH ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM SHALL BE DECIDED BY TRIAL TO THE COURT WITHOUT A JURY. GUARANTOR ACKNOWLEDGES AND UNDERSTANDS THAT THIS WAIVER AND CONSENT CONSTITUTES A MATERIAL INDUCEMENT TO LENDER TO ENTER INTO THE TRANSACTION WITH THE BORROWER.

Guarantor Vincent William De Ramo Jr

DocuSigned by:

*Vincent William De Ramo Jr.*

2BAA883CFE9F438...

Guarantor Vincent W Deramo and Tracy E. Deramo as Trustees under agreement dated 3/7/00

DocuSigned by:

*Vincent William De Ramo Jr.*

2BAA883CFE9F438...

Acknowledgement to signature(s) on following pages.

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5

 bank of lake mills

## ACKNOWLEDGEMENT

STATE/COMMONWEALTH OF _____ )
                                                ) ss.
COUNTY OF _____              )

On the _____ day of _____, in the year ____, before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared <u>Vincent William De Ramo Jr</u>, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Continuing Guaranty (Unlimited) and acknowledged to me that she/he executed the same in her/his capacity, and that by her/his signature on the Continuing Guaranty (Unlimited), the individual, or the person upon behalf of which the individual acted, executed the Continuing Guaranty (Unlimited).

_____
Notary Public
My Commission expires:

## ACKNOWLEDGEMENT

STATE/COMMONWEALTH OF _____ )
                                                ) ss.
COUNTY OF _____              )

On the _____ day of _____, in the year ____, before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared <u>Vincent W Deramo and Tracy E. Deramo as Trustees under agreement dated 3/7/00</u>, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Continuing Guaranty (Unlimited) and acknowledged to me that she/he executed the same in her/his capacity, and that by her/his signature on the Continuing Guaranty (Unlimited), the individual, or the person upon behalf of which the individual acted, executed the Continuing Guaranty (Unlimited).

_____
Notary Public
My Commission expires:

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5

BLM   bank of lake mills

# EXHIBIT 1

NONE

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5

 bank of lake mills

**COOPERATION AGREEMENT**

DATE: 3/16/2016

In connection with the business loan to Borrower evidenced by the Business Promissory Note and Security Agreement of even date herewith, Borrower hereby agrees:

In the event any further documentation is required by Lender in connection with the loan, Borrower hereby agrees to execute such documentation, including, but not limited to, any amendments, corrections, deletions or additions to the loan documents being executed on even date herewith.

In the event Borrower is required to furnish such necessary documentation and fails to do so within ten (10) days from receipt of written demand, then such failure shall be an event of default under the terms of the loan and Lender or its successors and assigns shall have the right to demand payment in full under the loan documents and enforce all other rights against Borrower.

The terms "Borrower" and "Lender" have the same meanings as set forth in the Business Promissory Note and Security Agreement.

BORROWER: Homes By De Ramo, Inc.

By: _Vincent William De Ramo Jr._
—2BAA883CFE9F438...

Printed Name: Vincent William De Ramo Jr.

Title: president

STATE/COMMONWEALTH OF _____ )

                                    )    ss.:

COUNTY OF _____               )

On the _____ day of _____, in the year _____ before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared _Vincent William De Ramo Jr_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Cooperation Agreement and acknowledged to me that she/he executed the same in her/his capacity as _____ of _____, and that by her/his signature on the Cooperation Agreement, the individual, or the person upon behalf of which the individual acted, executed the Cooperation Agreement.

_____
Notary Public
My Commission expires

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5

### ESTIMATED TITLE INVOICE AGREEMENT

In connection with the loan and all related agreements dated 3/16/2016 (the "Agreement") between Bank of Lake Mills, its successors and/or assigns ("Lender") and Homes by De Ramo, Inc. ("Borrower"), Borrower has requested the disbursement of the loan proceeds, notwithstanding that one or more title invoices needed to accurately establish the loan balance, net proceeds and/or required loan payments have not been received. Borrower has requested that Lender estimate the amount of the title invoice and establish the loan balance and/or net proceeds (as the case may be) and required loan payments based upon the estimated invoice.

Upon receipt of the actual invoice, Lender will notify the Borrower of the amount of the actual invoice(s) and the difference between the actual invoice and the estimated amount used at closing. If the estimate is lower than the actual cost of the related title services and premium, Borrower will be obligated to reimburse Lender for the shortfall and Borrower expressly authorizes Lender to ACH the shortfall from Borrower's business account along with the daily or weekly payment. In the event the actual invoice is less than the estimated invoice, Borrower will receive a refund for the excess amount.

Where the invoice received is less than the estimated invoice, Borrower has the option in lieu of a refund to request an amendment to the Agreement that reduces the loan amount and required daily or weekly payments accordingly. Requests must be sent to closing@wbl.com from the email address provided in the loan application. In the event that no amendment request is received within 5 business days of the disbursement of the loan proceeds to Borrower, Lender will automatically process a refund of the excess amount and Borrower agrees that the loan balance and daily payments will remain unchanged.

Homes By De Ramo, Inc.

By: *Vincent William De Ramo Jr.*

Date: 3/16/2016


World Business Lenders, LLC

By: _____

Date: _____

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5



**World Business Lenders, LLC**
120 w 45th St, 29th Floor
New York, NY 10029
**Direct:** 212-293-8200

Contact:
Direct:

## Business Loan Application

Fax:
Email:



**Bank of Lake Mills**
136 E Madison Street
Lake Mills, WI 53551
**Tel:** 920-648-8336

| COMPANY INFORMATION | |
|---|---|
| Legal Name of Entity: Homes By Deramo, Inc. | Business Inception Date: 2/1985 |
| Federal Tax ID (EIN):59-2508852 | State Where Business Was Formed: FL |
| Legal Structure: ⊙ Corporation ○ LLC ○ Partnership ○ Sole Proprietorship | |
| Full Time Employees:    Part Time Employees: | Home Based Business: ○ Yes ⊙ No |
| Business Address: 4610 Ashton Rd. | |
| City: Sarasota   State: FL   ZIP Code: 34233 | Estimated Monthly Revenue: |
| Phone:   Ext: | Website: |
| Ownership of Business Location: ⊙ Rented ○ Owned by Business | If Owned, Property Value: |
| Landlord Name:   Landlord Phone: | Monthly Rent: |
| Landlord Type: ○ Management Company ○ Sole Ownership ○ Corporation ○ Other: | |

| BUSINESS OWNER | |
|---|---|
| Name: Vincent William Deramo Jr. | Date of Birth: 3/27/1957 |
| Primary Address: 7614 Peninsular Dr. | |
| City: Sarasota | State: FL   ZIP Code: 34231 |
| Home Phone: 941-926-2600 | Mobile Phone: 941-650-4983 |
| E-mail: bill@homesbyderamo.com | Social Security #: 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 |
| Driver's License #: D650-879-57-107-0 | Driver's License State: FL   Ownership% 100 |

| CO-APPLICANT | |
|---|---|
| Name: | Date of Birth: |
| Primary Address: | |
| City: | State:   ZIP Code: |
| Home Phone: | Mobile Phone: |
| E-mail: | Social Security #: |
| Driver's License #: | Driver's License State:   Ownership %: |

| LOAN REQUEST |
|---|
| Requested Funding Amount: $400,000.00 |
| Use of Funds: Consolidation and working capital |

| CERTIFICATION AND AGREEMENT |
|---|
| The originating lender to which this Business Loan Application ("Application") is directed as the Bank of Lake Mills, Lake Mills, Wisconsin ("Lender"). By signing and submitting this application to World Business Lenders ("WBL"), each of the undersigned certifies to WBL and the Lender that (i) I am authorized to apply for business financing on behalf of the entity identified above in the Company information section, (ii) the information provided within this Application is true and accurate and (iii) I will promptly notify WBL of any material changes to such information. This Application must be accompanied by additional supporting documents and information as directed by the Lender in order to be considered for approval. The undersigned authorizes WBL to submit this Application and any other supporting documents and information to the Lender. By submitting this Application, each of the undersigned authorizes Lenders, and their respective agents, assignees and/or third-party providers to make all inquiries deemed necessary to verify the accuracy of the information provided in this Application (including requesting business and personal credit bureau reports from credit reporting agencies and other sources). Each of the undersigned agrees and understands that WBL will retain this Application and all supporting documents and information whether or not this Application is approved. |

| Business Owner Signature: | Co-Applicant Signature: |
|---|---|
| *Vincent William De Ramo Jr.* <br> 2BAA0000FE9F480... | |
| Title: president | Title: |
| Date: 3/16/2016 | Date: |

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5

| DEPARTMENT OF HOMELAND SECURITY<br>FEDERAL EMERGENCY MANAGEMENT AGENCY<br>STANDARD FLOOD HAZARD DETERMINATION FORM (SHDF) | Cust Num:  224057<br>Cost Cent: | O.M.B No. 1660-0040<br>Expires May 30, 2015 |
|---|---|---|

### SECTION I

| 1. LENDER NAME AND ADDRESS<br><br>WORLD BUSINESS LENDERS, LLC<br>120 W 45TH STREET - 29TH FLOOR<br>NEW YORK, NY 10036 | 2. COLLATERAL (Building/Mobile Home/Personal property ) PROPERTY ADDRESS<br>(Legal description may be attached)<br><br>DERAMO, VINCENT W & DERAMO TRUSTEES, TRACY E<br>7614 PENINSULAR DR<br>SARASOTA, FL 34231-5320 | |
|---|---|---|
| 3. LENDER ID. NO. | 4. LOAN IDENTIFIER<br><br>18528 | 5. AMOUNT OF FLOOD INSURANCE REQUIRED<br><br>$ |

### SECTION II

#### A. NATIONAL FLOOD INSURANCE PROGRAM (NFIP) COMMUNITY JURISDICTION

| 1. NFIP community name<br><br>SARASOTA COUNTY * | 2. County(ies)<br><br>Unincorporated Areas | 3. State<br><br>FL | 4. NFIP community number<br><br>125144 |
|---|---|---|---|

#### B. NATIONAL FLOOD INSURANCE PROGRAM (NFIP) DATA AFFECTING BUILDING / MOBILE HOME

| 1. NFIP map number or community - panel number (community name, if not the same as in "A").<br><br>1251440207E | 2. NFIP map panel effective/ revised date<br><br>09/03/1992 | 3. LOMA/LOMR<br><br>☐ ____<br>Yes    Date | 4. Flood zone/BFE<br><br>AE BFE: 11 | 5. No NFIP map |
|---|---|---|---|---|

#### C. FEDERAL FLOOD INSURANCE AVAILABILITY (check all that apply)

1. [X] Flood insurance is available (community participates in NFIP).   [X] Regular Program   ☐ Emergency Program of NFIP
2. ☐ Federal Flood insurance is not available because community is not participating in the NFIP.
3. ☐ Building/Mobile home is in a Coastal Barrier Resources Area (CBRA) or Otherwise Protected Area ( OPA ), Federal Flood insurance may not be available.

CBRA/OPA designation date: _____

#### D. DETERMINATION

**IS BUILDING / MOBILE HOME IN SPECIAL FLOOD HAZARD AREA**   [X] Yes   ☐ No
**( ZONES CONTAINING THE LETTERS "A" OR "V")?**
If yes, flood insurance is required by the Flood Disaster Protection Act of 1973.
If no, flood insurance is not required by the Flood Disaster Protection Act of 1973. Please note, the risk of flooding in this area is only reduced, not removed.

#### E. COMMENTS (optional):

Request Date: 11/03/2015          Service Type: Life Of Loan
                                   Requested By: JO57213A

Input address: 7614 PENINSULAR DRIVE, SARASOTA, FL 34233
HMDA Information: MSA/MD: 42260 NECTA: State: 12 County: 115 Census Tract: 0020.05

This flood determination is provided solely for the use and benefit of the entity named in Section 1, Box 1 in order to comply with the 1994 Reform Act and may not be used for or relied upon by any other entity or individual for any purpose, including, but not limited to deciding whether to purchase a property or determining the value of a property.

This determination is based on examining the NFIP map, any Federal Emergency Management Agency revisions to it, and any other information needed to locate the building/mobile home on the NFIP map.

| F. PREPARER'S INFORMATION | Certificate:   56558731-0 |
|---|---|
| Name, address, telephone number (if other than lender) | DATE OF DETERMINATION |
| Great Lakes Flood Certification, LLC<br>P.O.Box 663<br>Wautoma, WI 54982<br>(920) 787 - 7664 | 11/03/2015 |

FEMA FORM 086-0-32, (4/12)          PREVIOUSLY FEMA FORM 81-93

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5

## NOTICE OF SPECIAL FLOOD HAZARDS
## AND AVAILABILITY OF FEDERAL DISASTER RELIEF

| | | | | |
|---|---|---|---|---|
| Prepared by: | Great Lakes Flood Certification, LLC | | Loan #: | 18528 |
| Customer: | WORLD BUSINESS LENDERS, LLC | | Certificate #: | 56558731-0 |
| Client #: | 224057 | | Date: | 11/03/2015 |

Borrower:   DERAMO, VINCENT W & DERAMO TRUSTEES, TRACY E
Property:   7614 PENINSULAR DR
            SARASOTA, FL 34231-5320

We are giving you this notice to inform you that:

✚ The building or mobile home securing the loan for which you have applied is or will be located in an area prone to high flood risks that we call a Special Flood Hazard Area (SFHA).

✚ The area has been identified by the Federal Emergency Management Agency (FEMA) as an SFHA using the Flood Insurance Rate Map (FIRM) or the Flood Hazard Boundary Map (FHBM) for the community number 125144. FIRMs are prepared by FEMA in cooperation with the applicable community to identify high flood risk and low-to-moderate flood risk areas. The SFHA in which your building or mobile home is or will be located has at least a one percent chance of a flood equal to or exceeding the base flood elevation (a 100-year flood) in any given year. During the life of a 30-year mortgage loan, the risk of flooding in an SFHA is 26 percent.

✚ Federal law allows a lender and borrower jointly to request the Administrator of FEMA to review the determination of whether the property securing the loan is located in an SFHA. If you would like to make such a request, please contact us for further information. Borrowers may also call a FEMA mapping specialist at (877) 336-2627 to discuss their concerns.

✚ Federal financial assistance, including FEMA disaster assistance, flood mitigation grants and federally backed mortgage lending is available in the NFIP participating communities. Mandatory flood insurance requirements are applicable to all Federal financial assistance. The mandatory flood insurance purchase requirements under section 102(b) of the Flood Disaster Protection Act of 1973 are applicable to Federally regulated lenders making loans in SFHAs. We will not make you the loan that you have applied for if you do not purchase flood insurance. If you fail to renew flood insurance on the property, federal law authorizes and requires us to purchase the flood insurance for you at your expense. The flood insurance must be maintained for the life of your loan.

   ✓ Flood insurance coverage under the NFIP may be purchased through an insurance agent who will obtain the policy either directly through the NFIP or through a Write Your Own (WYO) company that has agreed to write and service NFIP policies on behalf of FEMA. Flood insurance also may be available from private insurers that are not Federally backed.

   ✓ At minimum, flood insurance purchased must cover the lowest of: (1) the outstanding principal balance of the loan(s); or (2) the maximum amount of coverage allowed for the type of building under the NFIP; or (3) the full replacement cost value (RCV) of the building and/or contents securing the loan. The market value or land value on which the building is located has no bearing on the RCV of the building.

✚ Federal disaster relief assistance, the majority of which is in the form of a low- interest disaster assistance loan from the Small Business Administration (SBA), may be available for losses not covered by your flood insurance policy. Flood insurance requirements apply to recipients of Federal disaster assistance grants and SBA disaster assistance loans. If you are planning to build a structure or make repairs, contact the local community's chief executive official to determine building standards for structures within an SFHA.

Notified Borrower Signature: _Vincent William De Ramo Jr._     Date: _3/16/2016_

Authorized Lender Signature: _____     Date: _____

DocuSign Envelope ID: DC7C0BF8-7CE3-4FA4-9FC2-370BBA8A90C5

 **World Business Lenders**

## Conditional Closing Agreement

We are pleased to inform you that you have been approved for a business loan in the principal amount of $457,625.00 with an anticipated funding date 3/17/2016. By signing below, Borrower understands and acknowledges that Lender will not consider funding Borrower's loan/lease application until such time as all closing conditions (including, but not limited to, the additional conditions set forth below) are met:

- the title company has received any and all relevant documentation needed to satisfy the requirements listed on the title search
- the title company is able to provide a clear and acceptable final title policy to the Lender in accordance with the Lender's guidelines and the Loan Approval of the subject loan transaction
- Lender has reviewed and approved the fully executed loan documents
- Borrower provides Lender with an Attorney Opinion Letter with the attorneys Errors & Omissions Policy that is satisfactory to Lender.
- Borrower provides updated Flood Insurance for the property located at 7614 Peninsular Drive, Sarasota, FL 34233.

Nothing herein shall be construed as an obligation of Lender to provide funds to Borrower, it being expressly understood that the obligations of the parties shall be established pursuant to the terms of the Business Promissory Note dated 3/16/2016 only upon actual funding of Borrower's loan.

BORROWER: Homes By De Ramo, Inc.

By: *Vincent William De Ramo Jr.*
———2BAA8B3CFE9F458...———

Printed Name: Vincent William De Ramo Jr.

Title: president

Filing # 56527218 E-Filed 05/16/2017 07:09:01 PM

RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 2016043540   73  PG(S)

4/12/2016 11:07 AM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY, FLORIDA

**RECORDATION REQUESTED BY:**
World Business Lenders, LLC
120 West 45th Street
New York, NY 10036

SIMPLIFILE                    Receipt # 1972148

Doc Stamp-Mort: $319.55

**WHEN RECORDED MAIL TO:**
World Business Lenders, LLC
120 West 45th Street
New York, NY 10036

Intang. Tax: $182.43

FOR RECORDER'S USE ONLY

## MORTGAGE         $\mathcal{WW}$-1546·FC

THIS MORTGAGE dated March 24, 2016, is made and executed between Tracy E. DeRamo and Vincent W. DeRamo, wife and husband, (Premises A, B) and  Vincent W. DeRamo, Trustee under agreement dated 3/7/00 and Tracy E. Deramo, Trustee under agreement dated 3/7/00 (Premises C) whose address is 7614 Peninsular Drive, Sarasota, FL 34233 (referred to below as "Grantor") and Bank of Lake Mills, its Successors and or Assigns, whose address is 136 E. Madison St., Lake Mills, WI 53551 (referred to below as "Lender").

GRANT OF MORTGAGE.  For valuable consideration, Grantor mortgages and warrants to Lender all of Grantor's right, title, and interest whether existing or hereafter acquired, in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances, public or private, now or hereafter used in connection with the Property; all rights to make divisions of the land that are exempt from the platting requirements of all applicable land division and/or platting acts, as amended from time to time; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation right(s); all Personal Property; all licenses, contracts, permits and agreements required or used in connection with the ownership, operation or maintenance of the Property; all insurance proceeds; all awards, including interest, make to Grantor for any taking by eminent domain of the Property; all existing and future leases, subleases, licenses and other agreements for the use and/or occupancy of the Property, oral or written, including all extensions, renewals, replacements and holders; all Rents from the Property; and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Sarasota County, State of Florida:

See Exhibit A, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as 74 Sugarmill Drive, Osprey, FL 34229, and 82 Sugarmill Drive, Osprey, FL 34229, and 7614 Peninsular Drive, Sarasota, FL 34231.

Cross-Collateralization.  In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, where now existing or hereafter arising, whether

FLORIDA – RESIDENTIAL PROPERTY - GUARANTOR



EXHIBIT
4

related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

Grantor unconditionally, irrevocably and presently assigns, grants, conveys and sets over to Lender all of Grantor's right, title and interest in and to all present and future leases, subleases, licenses and other agreements for the use and/or occupancy of the Property, oral or written, including all extensions, renewals, replacements and holdovers (collectively the "Leases") and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE.   THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

GRANTOR'S WAIVERS.  Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

GRANTOR'S REPRESENTATIONS AND WARRANTIES.  Grantor warrants that:  (a) this Mortgage is executed at Borrower's request and not at the request of Lender;  (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property;  (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and  (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

PAYMENT AND PERFORMANCE.  Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

POSSESSION AND MAINTENANCE OF THE PROPERTY.  Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use.  Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

Duty to Maintain.  Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws.  Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender

2

in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances.

Grantor and any occupants at the Property shall exercise extreme care in handling Hazardous Substances and, if Grantor or any occupant uses or encounters any Hazardous Substances at the Property, Grantor shall, at its own cost and expense, in addition to complying with all applicable federal, state and local laws, regulations and ordinances, including, without limitation, all Environmental Laws, undertake any and all preventive, investigatory or remedial action (including emergency response, removal, containment and other remedial action) necessary to prevent or minimize (a) property damage (including damage to Grantor's or any occupant's own property), (b) personal injury, (c) damage to the environment or (d) the threat of any such damage or injury, in each case, by reason of any release of or exposure to any Hazardous Substances at the Property or the operations of Grantor or any occupant at the Property.

Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of this Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. If, pursuant to the section set forth below regarding expenditures by Lender, Lender performs any of the actions required of Grantor under this section of the Mortgage, Lender shall not, by reason of such performance, be deemed to be assuming any responsibility of Grantor under any Environmental Law or to any third party.

Grantor shall immediately notify Lender upon becoming aware of any of the following: (a) any spill, release or disposal of any Hazardous Substances at the Property or in connection with any of operations at the Property, if such spill, release or disposal must be reported to any governmental authority under applicable Environmental Laws; (b) any contamination, or imminent threat of contamination, of the Property by any Hazardous Substances or any violation of Environmental Laws in connection with the Property or any operations conducted at the Property; (c) any order, notice of violation, fine, penalty or other similar action by any governmental authority relating to Hazardous Substances, Environmental Laws, the Property or the operations conducted at the Property; (d) any judicial or administrative investigation or proceeding relating to Hazardous Substances, Environmental Laws, that would give a reasonably prudent lender cause to be concerned that the value of Lender's security interest in the Property may be reduced or threatened or that may impair, or threaten to impair, Grantor's ability to perform any of its obligations under this Mortgage when such performance is due. Grantor shall deliver to Lender, at Lender's request, copies of any and all documents in Grantor's possession (or to which it has access) relating to Hazardous Substances, Environmental Laws, the Property or the operations conducted at the Property, including, without limitation, the results of laboratory analyses, site assessments or studies, environmental audit reports and other consultants' studies and reports.

Grantor hereby (1) releases and waives any future claims against any Indemnified Person (as defined below) for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws; and (2) agrees to indemnify, defend, and hold harmless each Indemnified Person against any and all claims, losses, liabilities, damages, penalties, and expenses which any Indemnified Person may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of (a) any breach of this section of the Mortgage, (b) any use, generation, manufacture, storage, disposal, release or threatened release occurring during or prior to Grantor's

3

ownership or interest in the Property, whether or not the same was or should have been known to Grantor, (c) any investigatory or remedial action involving the Property, the operations conducted at the Property or any other operations of Grantor or any occupant at the Property that is required by any Environmental Laws and (d) the contamination of the Property by any Hazardous Substances, by any means whatsoever (including, without limitation, any migration of any Hazardous Substances onto the Property, present or future. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Subsequent Liens.** Grantor shall not allow any subsequent liens or mortgages on all or any portion of the Property without the prior written consent of Lender.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans with Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Florida law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes,

4

special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insured in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting

5

the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Unexpired Insurance at Sale.** Any unexpired insurance shall inure to the benefit of, and pass to, the purchaser of the Property covered by this Mortgage at any trustee's sale or other sale held under the provisions of this Mortgage, or at any foreclosure sale of such Property.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests, including but not limited to discharging costs for insuring, maintaining and preserving the Property. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default and shall be exercisable by Lender to the extent permitted by applicable law. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender, or have otherwise been previously disclosed to and accepted by Lender in writing in connection with this Mortgage, and  (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations and warranties, agreements, and statements Grantor has made in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as Borrower's

6

Indebtedness is paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**ASSIGNMENT OF RENTS AND LEASES.** The following provisions relating to this Mortgage as an assignment of Rents and Leases are a part of this Mortgage:

**License to Grantor.** Unless and until Lender exercises its right to collect the Rents as provided below, and so long as no Event of Default exists, Grantor shall have a license to (a) remain in possession and control of the Property, (b) operate and manage the Property and (c) collect the Rents; provided that the granting of such license shall not constitute Lender's consent to the use of cash collateral in any bankruptcy proceedings. The foregoing license shall automatically and immediately terminate, without notice to Grantor, upon the occurrence of any Event of Default. After the occurrence of any Event of Default, Lender may exercise any of the rights and remedies set forth below and/or elsewhere in this Mortgage. Any Rents that are collected by Grantor after the occurrence of any Event of Default shall be held in trust for the benefit of Lender.

**Grantor's Representations, Warranties and Covenants.** Grantor represents, warrants and covenants that: (a) Grantor has good title to the Leases and is entitled to receive the Rents, in each case, free and clear of all rights, loans, liens, encumbrances, and claims, except as disclosed to and accepted by Lender

7

in writing; (b) Grantor has the full right, power and authority to assign and convey the Leases and Rents to Lender; (c) Grantor has not previously assigned or conveyed the Leases and/or Rents to any other person or entity by an instrument now in force; (d) Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's right in the Leases and/or the Rents; (e) Grantor will fulfill and perform its obligations under all Leases and will give Lender prompt notice of any default in the performance of the terms of any of the Leases by either Grantor or any tenant, together with copies of all notices sent to or received by Grantor in connection with any Lease; (f) Grantor will enforce the tenants' obligations under the Leases; (g) Grantor will not, in any way enter into any new Lease, amend, assign, cancel, or terminate any Lease, accept a surrender of any Lease or any leased premises, accept any payment of Rent more than one month in advance or waive, release, discharge or compromise any Rent or any of the obligations of the tenants under any of the Leases, in each case, without the prior written consent of Lender; (h) Grantor will appear in and defend or prosecute any action growing out of any Lease, at Grantor's cost and expense; (i) there is no present default by any tenant under any Lease; (j) all existing Leases are in full force and effect and unmodified; (k) to the best of Grantor's knowledge, no person or entity other than authorized tenants is in possession of all or any part of the Property; (l) Grantor will provide copies of any and all Leases and Lease amendments, and all records relating thereto, to Lender upon Lender's request.

**Lender's Right to Receive and Collect Rents.** Subject to the license granted to Grantor above, Lender shall have the right, at any time from and after the occurrence of any Event of Default to collect and receive the Rents. For this purpose, Lender is hereby given and granted the following rights, powers, and authority:  (a) Lender may send notices to any and all tenants of the Property advising them of this assignment and directing all Rents to be paid directly to Lender or Lender's agent. (b) Lender may (i) enter upon and take possession of the Property, (ii) demand, collect and receive from the tenants (or from any other persons liable therefor) all of the Rents of the Property, (iii) institute and carry on all legal proceedings necessary for the protection of the Property, including such proceeds as may be necessary to recover possession of the Property and collect the Rents, (iv) remove any tenant or other persons from the Property, (v) enter upon the Property to maintain the Property and keep the same in repair, and pay the costs thereof and of all services of all employees, including their equipment, and all continuing costs and expenses of maintaining the Property in proper repair and condition and (vi) pay all taxes, assessments and water utilities and the premiums on fire and other insurance effected by Lender on the Property; (c) Lender may do any and all things necessary or advisable to executed and comply with all applicable laws, rules, orders, ordinances and requirements of all governmental agencies; (d) Lender may (i) rent or lease the whole or any part of the Property for such terms or terms and on such conditions as Lender may deem appropriate and (ii) modify, terminate or accept the surrender of any Leases and/or waive, release, discharge or compromise any Rent or any obligations of any of the tenants under the Leases; (e) Lender may make any payment including necessary costs, expenses and reasonable attorney fees, or perform any action required of Grantor under any Lease, without releasing Grantor from the obligation to do so and without notice to or demand on Grantor; (f) Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents; and (g) Lender may do all such other things and acts with respect to the Property, the Leases and the Rents as Lender may deem appropriate and may act exclusively and solely in the place and stead of grantor. Lender has all of the power of Grantor for the purposes stated above. Lender shall not be required to do any of the foregoing acts or things and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing. The foregoing rights and remedies of Lender are in addition to and not in limitation of the rights and remedies of Lender under the RIGHTS AND REMEDIES UPON DEFAULT section of this Mortgage including the rights and remedies set forth in the "Collect Rents" provision, all of which rights and remedies are incorporated into this ASSIGNMENT OF RENTS section.

**Application of Rents.** Any Rents received by Lender shall be applied against the indebtedness (including Lender's costs and expenses) in such order or manner as Lender shall elect in its sole discretion.

8

**Right to Rely.** Grantor hereby irrevocably authorizes and directs the tenants under the Leases to pay Rents to Lender upon written demand by Lender, without further consent of Grantor. The tenants may rely upon any written statement delivered by Lender to the tenants. Any such payment to Lender shall constitute payment of Grantor under the Leases. The provisions of this paragraph are intended solely for the benefit of the tenants and shall never inure to the benefit of Grantor or any person claiming through or under Grantor, other than a tenant who has not received such notice. The assignment of Rents and Leases set forth herein is not contingent upon any notice or demand by Lender to the tenants.

**Lender In Possession.** Lender's acceptance of this Mortgage shall not, prior to entry upon and taking possession of the Property by Lender, be deemed to constitute Lender a "mortgagee in possession," nor obligate Lender to: (a) appear in or defend any proceedings relating to any of the Leases, the Rents or to the Property; (b) taken any action hereunder; (c) expend any money, incur any expenses or perform any obligations or liability under the Leases; or (d) assume any obligation for any deposits delivered to Grantor by any tenant and not delivered to Lender. Lender shall not be liable for any injury or damage to any person or property in or about the Property. Grantor indemnifies Lender and holds it harmless from all liability or damages which Lender may incur under any Lease and from all claims and demands which may be asserted against Lender by reason of any alleged obligation on its part to perform any term of any Lease.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Grantor hereby authorizes Lender to file such financing statements with respect to the Property as Lender may deem appropriate and Grantor shall take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property and shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1)  Borrower's and Grantor's obligations under the Note, this Mortgage, and the Related Documents, and  (2)  the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters

9

referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Grantor pay all the Indebtedness when due, and Grantor otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following and each Event of Default (as defined in the Note) described in Section 8 of the Note, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Break Other Promises.** Borrower or Grantor breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Mortgage or in any agreement related to this Mortgage.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Mortgage, the Note or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor (regardless of whether election to continue is made), any member or partner withdraws from the limited liability company or limited partnership, or any other termination of Grantor's existence as a going business or the death of Borrower or Grantor, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure, replevin, repossession, attachment, levy, execution, or forfeiture proceedings, either by judicial proceeding, self-help, or any other method, by any creditor of Grantor, or by any governmental agency against the Collateral or any other assets of Grantor. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceedings, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of Borrower's or Grantor's property in which Lender has a lien. This includes taking of, garnishing of or levying on Borrower's or Grantor's accounts with Lender. However, if Borrower or Grantor disputes in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if

Borrower or Grantor gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any Indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Borrower would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender personally, or by Lender's agents or attorneys may enter into and upon all or any part of the Property, and may exclude Grantor, Grantor's agents and servants wholly from the Property. Lender may use, operate, manage and control the Property. Lender shall be entitled to collect and receive all earnings, revenues, rents, issues, profits and income of the Property and every part thereof, all of which shall for all purposes constitute property of Grantor. After deducting the expenses of conducting the business thereof, and of all maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements and amounts necessary to pay for taxes, assessments, insurance and prior or other property charges upon the Property or any part thereof, as well as just and reasonable compensation for the services of Lender. Lender shall apply such monies first to the payment of the principal of the Note, and the interest thereon, when and as the same shall become payable and second the payment of any other sums required to be paid by Grantor under this Mortgage.

**Appoint Receiver.** In the event of a suit being instituted to foreclose this Mortgage, Lender shall be entitled to apply at any time pending such foreclosure suit to the court having jurisdiction thereof for the appointment of a receiver of any or all of the Property, and of all rents, incomes, profits, issues and revenues thereof, from whatsoever source. The parties agree that the court shall forthwith appoint such receiver with the usual powers and duties of receivers in like cases. Such appointment shall be made by the court as a matter of strict right to Lender and without notice to Grantor, and without reference to the adequacy or inadequacy of the value of the Property, or to Grantor's solvency or any other party defendant to such suit. Grantor hereby specifically waives the right to object to the appointment of a receiver and agrees that such appointment shall be made as an admitted equity and as a matter of absolute right to Lender, and consents to the appointment of any officer or employee of Lender as receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

11

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Nonjudicial Sale.** If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property or the Real Property by non-judicial sale.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waive any and all right to have the Property marshaled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender will give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Insurance Policies.** Lender shall have the right upon an Event of Default, but not the obligation, to assign all of Grantor's right, title and interest in and to all policies of insurance on the Property and any unearned premiums paid on such insurance to any receiver or any purchaser of the Property at a foreclosure sale, and Grantor hereby appoints Lender as attorney in fact to assign and transfer such policies.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Mortgage, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent

12

permitted by applicable law.  Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.**  Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage.  All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage.  Any person may change his or her address for notices under this Mortgage by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address.  For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address.  Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.  It will be recipient Grantor's responsibility to tell the others of the notice from Lender.

**JURY WAIVER.**  THE UNDERSIGNED AND LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG THE UNDERSIGNED AND LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS DOCUMENT, THE RELATED DOCUMENTS, OR ANY RELATIONSHIP BETWEEN OR AMONG THE UNDERSIGNED AND LENDER WHETHER ANY SUCH RIGHT NOW OR HEREAFTER EXISTS.  THIS PROVISION IS A MATERAL INDUCEMENT TO LENDER TO PROVIDE THE FINANCING EVIDENCED BY THIS DOCUMENT AND THE RELATED DOCUMENTS.

**INFORMATION WAIVER.**  Lender may provide, without any limitation whatsoever, to any one or more purchasers, potential purchasers, or affiliates of Lender, any information or knowledge Lender may have about Grantor or about any matter relating to this Mortgage, and Grantor hereby waives any right to privacy Grantor may have with respect to such matters.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Mortgage:

**Amendments.**  What is written in this Mortgage and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Mortgage.  To be effective, any change or amendment to this Mortgage must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Annual Reports.**  If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require.  "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the cooperation of the property.

**Caption Headings.**  Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.  This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions.  This Mortgage has been accepted by Lender in the State of Florida.**

**Choice of Venue.**  If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of the State of Florida, in the county in which Borrower's following address is located: **Sarasota County, Florida.**

**Joint and Several Liability.**  All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to

13

Borrower shall mean each and every Borrower.  This means that each Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.**  Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender.  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage.  No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions.  Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Indemnity.**  Grantor hereby agrees to indemnify, defend and hold harmless Lender, and its officers, directors, employees, agents and representatives (each an "Indemnified Person"), from and against any and all liabilities, obligations, claims, losses, damages, penalties , actions, judgments, suits, costs, expenses or disbursements of any kind or natures (collectively, the "Claims") which may be imposed on, incurred by or asserted against any Indemnified Person (whether or not caused by an Indemnified Person's sole, concurrent or contributory negligence) arising in connection with the Related Documents, the Indebtedness or the Property (including, without limitation, the enforcement of the Related Documents and the defense of any Indemnified Person's action and/or inaction in connection with the Related Documents), except to the limited extent that the Claims against the Indemnified Person are proximately caused by such Indemnified Person's gross negligence or willful misconduct.  The indemnification provided for in this section shall survive the termination of this Mortgage and shall extend and continue to benefit each individual or entity who is, become or has any time been an Indemnified Person hereunder.

**Severability.**  If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance.  If feasible, the offending provision shall be considered modified as so that it becomes legal, valid and enforceable.  If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage.  Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.**  There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.**  Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns.  If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time Is of the Essence.**  Time is of the essence in the performance of this Mortgage.

**Waiver of Homestead Exemption.**  Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Florida as to all Indebtedness secured by this Mortgage.

**DEFINITIONS.**  The following words shall have the following meanings when used in this Mortgage:  Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.  Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code to the extent that this Mortgage encumbers Personal Property that is governed by the Florida

14

Uniform Commercial Code.

**Borrower.** The word "Borrower" means **Homes by De Ramo, Inc.** and includes all co-signers and co-makers signing this Mortgage and all their successors and assigns.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal, local and foreign statutes, judicial decisions, regulations, ordinances, rules, judgments, orders, decrees, plans, injunctions, permits, concessions, grants, franchises, licenses, agreements and other governmental restrictions relating to (i) the protection of human health or the environment, (ii) the effect of the environment on human health, (iii) emissions, discharges or releases of pollutants, contaminants, hazardous substances or wastes into surface water, ground water or land or (iv) the manufacture, processing, distribution, use, treatment, storage, disposal, transport or handling of pollutants, contaminants, hazardous substances or wastes or the clean-up or other remediation thereof, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means **Tracy E. DeRamo and Vincent W. DeRamo, Wife and Husband, (Premises A, B) and   Vincent W. DeRamo, Trustee under agreement dated 3/7/00 and Tracy E. Deramo, Trustee under agreement dated 3/7/00  (Premises C)**

**Guarantor.** The word "Guarantor" Vincent William De Ramo Jr., Vincent W. DeRamo and Tracy Deramo, as Trustees under agreement dated 3/7/00.

**Guaranty.** The word "Guaranty" means the Continuing Guaranty (Unlimited) from Guarantor to Lender, dated March 24, 2016.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, all explosive or radioactive substances or wastes and all hazardous or toxic substances, wastes or other pollutants, including petroleum or petroleum distillates, asbestos or asbestos containing materials, polychlorinated biphenyls, radon gas, infectious or medical wastes and all other substances or wastes of any nature regulated pursuant to any Environmental Law.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. In addition, and without limitation, the term "Indebtedness" includes all amounts identified in the Cross-Collateralization paragraph of this Mortgage.

**Lender.** The word "Lender" means **Bank of Lake Mills, its Successors and or Assigns.** The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

15

**Note.** The word "Note" means the Business Promissory Note and Security Agreement dated March 24, 2016, in the original principal amount of $91,215.00 from Borrower to Lender, together with all renewals, extensions, modifications, refinancings, consolidations, and substitutions thereof. The interest rate on the Note is 0.335945205479% per day commencing on 3/30/2016 with each daily payment equaling $626.20 followed by a final payment of $622.07 on 3/30/2017, when any remaining outstanding Principal, interest and other unpaid charges shall be due and payable in full. The maturity date of the Note is 3/30/2017.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, including the Guaranty, any and all other guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**[SIGNATURE PAGE TO FOLLOW; REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND
GRANTOR AGREES TO ITS TERMS.

GRANTOR:  Tracy E. DeRamo, a/k/a Tracy Elizabeth DeRamo, Trustee Under agreement dated
3/7/00

*Tracy E. DeRamo aka Tracy Elizabeth DeRamo*

INDIVIUAL ACKNOWLEDGMENT

STATE OF FLORIDA          :

                          :          :SS

COUNTY OF *Sarasota*      :

The foregoing instrument was acknowledged before me this *24th* day of *March*, 201*6*, by
*Tracy E. DeRamo*, who is personally known to me or
who has produced *Florida Drivers License* as identification and who did (did not) take an oath.

*Carol A. Moore*
(Signature of Person Taking Acknowledgment)

*Carol A. Moore*
(Name of Acknowledger Typed, Printed or Stamped)

*Notary Public*
(Title or Rank)

*FF015656*
(Serial Number, if any)

CAROL A. MOORE
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF015656
Expires 5/7/2017

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR: Vincent W. DeRamo, a/k/a Vincent William De Ramo Jr., Trustee under agreement dated 3/7/00

*[signature]*

### INDIVIUAL ACKNOWLEDGMENT

STATE OF FLORIDA          :
                          :          :SS
COUNTY OF _Sarasota_  :

The foregoing instrument was acknowledged before me this _24th_ day of _March_, 201_6_, by _Vincent W DeRamo Jr_, who is personally known to me or who has produced _Florida Drivers Lic_ as identification and who did (did not) take an oath.

_Carol A Moore_
(Signature of Person Taking Acknowledgment)

_Carol A. Moore_
(Name of Acknowledger Typed, Printed or Stamped)

_Notary Public_
(Title or Rank)

_FF015656_
(Serial Number, if any)

CAROL A. MOORE
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF015656
Expires 5/7/2017

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND
GRANTOR AGREES TO ITS TERMS.

GRANTOR: Tracy E. DeRamo, a/k/a Tracy Elizabeth DeRamo

*Tracy E DeRamo*

INDIVIUAL ACKNOWLEDGMENT

STATE OF FLORIDA          :
                         :          :SS
COUNTY OF *Sarasota*     :

The foregoing instrument was acknowledged before me this *24th* day of *March*_____, 201*6*, by
*Tracy E. DeRamo*_____, _____, who is personally known to me or
who has produced *FL drivers license* as-identification and who did (did not) take an oath.

*Carol A Moore*
(Signature of Person Taking Acknowledgment)

*Carol M. Moore*
(Name of Acknowledger Typed, Printed or Stamped)

*Notary Public*
(Title or Rank)

*FF015656*
(Serial Number, if any)

CAROL A. MOORE
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF015656
Expires 5/7/2017

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR: Vincent W. DeRamo, a/k/a Vincent William De Ramo Jr.

*Vincent W. DeRamo, A/K/A Vincent William DeRamo, Jr.*

### INDIVIUAL ACKNOWLEDGMENT

STATE OF FLORIDA :
: :SS
COUNTY OF _Sarasota_:

The foregoing instrument was acknowledged before me this _24th_ day of _March_, 201_6_ by _Vincent W. DeRamo Jr_____, who is personally known to me or who has produced _Florida Driver License_ as identification and who did (did not) take an oath.

_Carol A Moore_
(Signature of Person Taking Acknowledgment)

_Carol A. Moore_
(Name of Acknowledger Typed, Printed or Stamped)

_Notary Public_
(Title or Rank)

_FF015656_
(Serial Number, if any)

CAROL A. MOORE
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF015656
Expires 5/7/2017

**Exhibit A**

**Legal Description**

**PREMISES A:**

ALL THAT CERTAIN lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 75, Oaks, according to the plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

**PREMISES B:**

ALL THAT CERTAIN lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 77, Oaks, according to the Plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

**PREMISES C:**

ALL THAT CERTAIN lot or piece of ground situate in the City of Sarasota, County of Sarasota, State of Florida.

Lot 62, SOUTHPOINTE SHORES, Unit No. 2, as per plat thereof, recorded in Plat Book 10, Page 58, of the Public Records of Sarasota County, Florida.

Commonly Known as 74 Sugarmill Drive, Osprey, FL 34229, and 82 Sugarmill Drive, Osprey, FL 34229, and 7614 Peninsular Drive, Sarasota, FL 34231

Exhibit "A"

ADDENDUM TO MORTGAGE FROM
Tracy E. DeRamo, TO
Bank of Lake Mills, its successors and/or assigns, BENEFICIARY

This Mortgage is given in the form of hypothecated security in that it is given to secure the debt of
another, to wit:   the indebtedness evidenced by the Promissory Note dated 3/24/2016, in the
amount of $91,215.00 which is made and delivered by Homes By De Ramo Inc. (hereby referred
to as "Borrower") to and for the benefit of Beneficiary. Tracy E. DeRamo, ( hereinafter referred to
as "Owner") will derive a material and direct benefit from the loan evidenced by the Note, and in
accordance therewith, Owner agrees that such interest and benefit are sufficient consideration to
support the Mortgage.   In the event of a default by Borrower under the Note, Owner expressly
acknowledges, covenants, and agrees that Beneficiary shall have all rights and remedies hereunder
as set forth for default just as if Owner had executed the Note.   Further, in the event of default
under the Note, it shall likewise be deemed an event of default hereunder giving rise to all rights
and remedies as set forth herein for default.   Owner expressly agrees that, upon such default,
Beneficiary may elect to enforce any rights and remedies which it may have under this Mortgage.
The foregoing provisions are set forth and made by Owner as an inducement to Beneficiary to
enter into the loan transaction secured hereby.

GRANTOR: Tracy E. DeRamo aka Tracy Elizabeth DeRamo

STATE OF FLORIDA                              :
                                              :SS
COUNTY OF _Sarasota_                          :


The foregoing instrument was acknowledged before me this _24th_ day of _March_, 201_6_, by
_Tracy E. DeRamo_, who is personally known to me or
who has produced _Florida Drivers License_ as identification and who did (did not) take an oath.

_Carol A Moore_
(Signature of Person Taking Acknowledgment)

_Carol A. Moore_
(Name of Acknowledger Typed, Printed or Stamped)

_Notary Public_
(Title or Rank)

_FF015656_
(Serial Number, if any)

CAROL A. MOORE
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF015656
Expires 5/7/2017

Exhibit "A"

Legal Description

PREMISES A:

ALL THAT CERTAIN lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 76, Oaks, according to the plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

PREMISES B:

ALL THAT CERTAIN lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 77, Oaks, according to the Plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

Commonly Known as 74 Sugarmill Drive, Osprey, FL 34229, and 82 Sugarmill Drive, Osprey, FL 34229

Exhibit "A"

ADDENDUM TO MORTGAGE FROM

Tracy E. DeRamo, TO

Bank of Lake Mills, its successors and/or assigns, BENEFICIARY

This Mortgage is given in the form of hypothecated security in that it is given to secure the debt of
another, to wit:  the indebtedness evidenced by the Promissory Note dated 3/24/2016, in the
amount of $91,215.00 which is made and delivered by Homes By De Ramo Inc. (hereby referred
to as "Borrower") to and for the benefit of Beneficiary. Tracy E. DeRamo, as Trustee under
agreement dated 3/7/00, as to an undivided one-half interest,(hereinafter referred to as "Owner")
will derive a material and direct benefit from the loan evidenced by the Note, and in accordance
therewith, Owner agrees that such interest and benefit are sufficient consideration to support the
Mortgage.   In the event of a default by Borrower under the Note, Owner expressly acknowledges,
covenants, and agrees that Beneficiary shall have all rights and remedies hereunder as set forth for
default just as if Owner had executed the Note.   Further, in the event of default under the Note, it
shall likewise be deemed an event of default hereunder giving rise to all rights and remedies as set
forth herein for default.   Owner expressly agrees that, upon such default, Beneficiary may elect to
enforce any rights and remedies which it may have under this Mortgage.   The foregoing
provisions are set forth and made by Owner as an inducement to Beneficiary to enter into the loan
transaction secured hereby.

GRANTOR: Tracy E. DeRamo aka Tracy Elizabeth DeRamo, Trustee under agreement dated 3/7/00, as to an
undivided one-half interest

_Mary E DeRamo_

STATE OF FLORIDA            :
                            :SS
COUNTY OF _Sarasota_        :

The foregoing instrument was acknowledged before me this _24th_ day of _March_ , 20_16_, by
_Tracy E. DeRamo_ , who is personally known to me or
who has produced _Florida Drivers License_ as identification and who did (did not) take an oath.

_Carl A Moore_
(Signature of Person Taking Acknowledgment)

CAROL A. MOORE
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF015656
Expires 5/7/2017

_Carol A. Moore_
(Name of Acknowledger Typed, Printed or Stamped)

_Notary Public_
(Title or Rank)

_FF015656_
(Serial Number, if any)

Exhibit "A"

Legal Description

**ALL THAT CERTAIN** lot or piece of ground situate in the City of Sarasota, County of Sarasota, State of Florida.
Lot 62, SOUTHPOINTE SHORES, Unit No. 2, as per plat thereof, recorded in Plat Book 10, Page 58, of the Public Records of Sarasota County, Florida.

Commonly Known as **7614 Peninsular Drive, Sarasota, FL 34233**

**CROSS-DEFAULT RIDER TO MORTGAGE DATED** March 24, 2016
**IN THE AMOUNT OF $91,215.00**

**THIS CROSS-DEFAULT RIDER** ("Rider") made and entered into this 24th day of March 2016 by and between Bank of Lake Mills, its successor and/ or assigns ("Lender") and , Vincent William De Ramo, Jr., and Vincent William De Ramo as Trustee, on behalf of the Vincent W. DeRamo, and Tracey E. DeRamo, agreement dated 3/7/00 (collectively, "Guarantors")and made part of the Mortgage dated March 24, 2016 between Lender and Grantor (the, "Security Instrument").

WHEREAS, as a part of the consideration and as additional security for the Lender making a loan to Borrower, the Lender has required Grantor to agree to enter into this Rider as hereinafter set forth; and

WHEREAS, there is a Business Promissory Note and Security Agreement between the Lender and the Borrower dated March 16, 2016 in the amount of $457,625.00 (Loan 1") guaranteed by Grantor pursuant to the terms of a Continuing Guaranty agreement dated March 16, 2016 ("Guaranty 1"), which guaranty is secured by the Security Instrument covering the real property described in Schedule A attached hereto (the, "Collateral"); and

WHEREAS, there is a Business Promissory Note and Security Agreement between the Lender and the Borrower dated March 24, 2016 in the amount of $91,215.00 ("Loan 2", Loan 1 and Loan 2 are collectively, the "Loans") guaranteed by Grantors pursuant to the terms of a Continuing Guaranty agreement dated March 24, 2016 ("Guaranty 2"), which guarantees are also secured by the Security Instrument (Guaranty 1 and Guaranty 2 are collectively, the "Guarantees"); and Tracy Elizabeth DeRamo, as Trustee under agreement dated 3/7/00 , as grantor pursuant to the terms of the mortgage and hypothecation agreement whose guaranty is also secured by the Collateral on Loan 1 and Loan 2.

NOW, THEREFORE, IN CONSIDERATION of the Loans made by Lender to Borrower, Grantor does hereby agree that any Event of Default as defined in Loan 1 shall constitute an Event of Default with respect to Loan 2 and that any Event of Default with respect to Loan 2 shall constitute an Event of Default with respect to Loan 1. The occurrence of an Event of Default with respect to either Loan 1 or Loan 2 shall entitle Lender to exercise its rights and remedies with respect to the Loans including Lender's rights and remedies set forth in the Guarantees and Mortgage and Deeds of Trust securing the Guarantees and specifically the Security Instrument.

Guarantor: Vincent William De Ramo, Jr.

By: _Vincent William DeRamo, Jr._

Title: _Pres._

Guarantor: Vincent W. DeRamo, as Trustee under agreement dated 3/7/00

By: _Vincent W. DeRamo_

Title: _Pres._

Grantor: Tracy E. DeRamo, as Trustee under agreement dated 3/7/00

By: _Tracy E DeRamo_

Title: _Vice Pres._

**Individual Acknowledgement**

STATE/COMMONWEALTH OF <u>FL         </u>)
                                                  ) ss.
COUNTY OF <u>Sarasota      </u>        )

On the <u>24th</u> day of <u>March  </u>, in the year <u>2016</u>, before me, the undersigned, the notary public in and for said State/Commonwealth, personally appeared ___ **Vincent William De Ramo Jr.** ___, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Cross Default Rider - Guarantor and acknowledged to me that she/he executed the same in her/his capacity, and that by her/his signature on the Cross Default Rider - Guarantor, the individual, or the person upon behalf of which the individual acted, executed the Cross Default Rider - Guarantor.

<u>Carol A Moore          </u>
Notary Public
My Commission expires:  <u>5-7-17</u>

> CAROL A. MOORE
> NOTARY PUBLIC
> STATE OF FLORIDA
> Comm# FF015656
> Expires 5/7/2017

**Individual Acknowledgement**

STATE/COMMONWEALTH OF <u>FL         </u>)
                                                  ) ss.
COUNTY OF <u>Sarasota      </u>        )

On the <u>24th</u> day of <u>March  </u>, in the year <u>16</u>, before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared ___ **Vincent W. DeRamo, as Trustee under agreement dated 3/7/00** ___, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Cross Default Rider - Guarantor and acknowledged to me that she/he executed the same in her/his capacity, and that by her/his signature on the Cross Default Rider - Guarantor, the individual, or the person upon behalf of which the individual acted, executed the Cross Default Rider - Guarantor.

<u>Carol A Moore          </u>
Notary Public
My Commission expires:  <u>5-7-17</u>

> CAROL A. MOORE
> NOTARY PUBLIC
> STATE OF FLORIDA
> Comm# FF015656
> Expires 5/7/2017

**Individual Acknowledgement**

STATE/COMMONWEALTH OF FL._____)
)  ss.
COUNTY OF *Sarasota* )

On the *24th* day of *March*, in the year *16*, before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared __Tracy E. DeRamo, as Trustee under agreement dated 3/7/00__ personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Cross Default Rider - Guarantor and acknowledged to me that she/he executed the same in her/his capacity, and that by her/his signature on the Cross Default Rider - Guarantor, the individual, or the person upon behalf of which the individual acted, executed the Cross Default Rider - Guarantor.



Notary Public
My Commission expires: *5 - 7 - 17*

CAROL A. MOORE
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF015656
Expires 5/7/2017

SCHEDULE A- Loan 1

**ALL THAT CERTAIN** lot or piece of ground situate in the City of Sarasota, County of Sarasota, State of Florida.
Lot 62, SOUTHPOINTE SHORES, Unit No. 2, as per plat thereof, recorded in Plat Book 10, Page 58, of the Public Records of Sarasota County, Florida.

Commonly Known as **7614 Peninsular Drive, Sarasota, FL 34233**

SCHEDULE B- Loan 2

**PREMISES A:**

**ALL THAT CERTAIN** lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 75, Oaks, according to the plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

**PREMISES B:**

**ALL THAT CERTAIN** lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 77, Oaks, according to the Plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

Commonly Known as 74 Sugarmill Drive, Osprey, FL 34229, and 82 Sugarmill Drive, Osprey, FL 34229

## CROSS-DEFAULT RIDER – BORROWER(S)

**THIS CROSS-DEFAULT RIDER** ("Rider") made and entered into this 24th day of March, 2016 by and between Bank of Lake Mills, its successor and/ or assigns ("Lender") and Homes by De Ramo, Inc. ("Borrower")

WHEREAS, as a part of the consideration and as additional security for the Lender making a loan to Borrower, the Lender has required Borrowers to agree to enter into this Rider as hereinafter set forth; and

WHEREAS, there is a Business Promissory Note and Security Agreement between the Lender and the Borrowers dated March 16, 2016 in the amount of $457, 625.00( 'Agreement 1") guaranteed by Vincent William De Ramo, Jr., and Vincent William De Ramo as Trustee, on behalf of the Vincent W. DeRamo, and Tracey E. DeRamo, agreement dated 3/7/00, (collectively, "Guarantors") pursuant to the terms of a Continuing Guaranty agreement dated March 04, 2016 ( "Guaranty 1"), which guaranty is secured by two mortgages between Lender and Guarantors covering the real property described in Schedule A attached hereto (the, "Collateral"); and

WHEREAS, there is a Business Promissory Note and Security Agreement between the Lender and the Borrower dated March 24, 2016 in the amount of $91,215.00 ("Agreement 2") guaranteed Guarantors pursuant to the terms of a Continuing Guaranty agreement ("Guaranty 2", Guaranty 1 and Guaranty 2 are collectively, the "Guarantees") , which guaranty is also secured by the Collateral; and Tracy Elizabeth DeRamo, as Trustee under agreement dated 3/7/00 , as grantor pursuant to the terms of the mortgage and hypothecation agreement whose guaranty is also secured by the Collateral on Loan 1 and Loan 2.

NOW, THEREFORE, IN CONSIDERATION of the loans made by Lender to Borrower, the Borrower does hereby agree as follows:

As a material consideration to induce Lender to enter into each of Agreement 1 and Agreement 2 (collectively, the "Agreements"), Borrower agrees to comply with the terms and conditions of the Agreements. Borrower further agrees that any Event of Default as defined in Agreement 1 shall constitute an Event of Default with respect to Agreement 2 and that any Event of Default under Agreement 2 shall constitute an Event of Default with respect to Agreement 1. The occurrence of an Event of Default with respect to either Agreement 1 or Agreement 2 shall entitle Lender to exercise its rights and remedies with respect to the Agreements s including Lender's rights and remedies set forth in the Guarantees, Promissory Note and Security Agreement and Mortgages securing the Guarantees.

Homes by De Ramo, Inc.

By: _Vincent W. DeRamo Jr._

Title: _President_

## CORPORATE ACKNOWLEDGMENT

STATE/COMMONWEALTH OF FL     )

                                            )    ss.:

COUNTY OF *Sarasota*     )

On the *24th* day of *March*, in the year *16* before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared *Vincent W. De Ramo Sr.*, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Cross Default Rider and acknowledged to me that she/he executed the same in her/his capacity as *President* of ____ Homes by De Ramo, Inc._____, and that by her/his signature on the Cross Default Rider, the individual, or the person upon behalf of which the individual acted, executed the Cross Default Rider.

*Carol A. Moore*
_____
Notary Public
My Commission expires: *5-7-17*

CAROL A. MOORE
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF018656
Expires 5/7/2017

SCHEDULE A-Agreement 1

**ALL THAT CERTAIN** lot or piece of ground situate in the City of Sarasota, County of Sarasota, State of Florida.
Lot 62, SOUTHPOINTE SHORES, Unit No. 2, as per plat thereof, recorded in Plat Book 10, Page 58, of the Public Records of Sarasota County, Florida.

Commonly Known as **7614 Peninsular Drive, Sarasota, FL 34233**

SCHEDULE B- Loan 2

**PREMISES A:**

**ALL THAT CERTAIN** lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 75, Oaks, according to the plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

**PREMISES B:**

**ALL THAT CERTAIN** lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 77, Oaks, according to the Plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

Commonly Known as 74 Sugarmill Drive, Osprey, FL 34229, and 82 Sugarmill Drive, Osprey, FL 34229

**THIS CROSS-COLLATERALIZATION AND CROSS-DEFAULT RIDER** ("Rider") made and entered into this 24th day of March 2016, by and between Bank of Lake Mills, its successor and/ or assigns ("Lender") and Vincent William De Ramo, Jr., and Vincent William De Ramo as Trustee, on behalf of the Vincent W. DeRamo, and Tracy E. DeRamo, under agreement dated 3/7/00 (individually and collectively, "Guarantors")

WHEREAS, as a part of the consideration and as additional security for the Lender making a loan to Homes by De Ramo, Inc. ("Borrower"), the Lender has required Guarantors to agree to enter into this Rider as hereinafter set forth; and

WHEREAS, there is an existing Business Promissory Note and Security Agreement between the Lender and the Borrower dated March 16, 2016 ("Agreement 1" or "Previous Agreement") secured by a mortgage between Bank of Lake Mills, its successor and/ or assigns and Guarantor as Guarantors of the Previous Agreement covering the real property described in Exhibit A attached thereto; and

NOW, THEREFORE, IN CONSIDERATION of the loans made by Lender to Borrower, the Borrower does hereby agree as follows:

Reference is made to that certain Business Promissory Note and Security Agreement ("Agreement 1") in the amount of $457,625.00 which is secured by a mortgage covering real property more particularly, described in Exhibit A attached hereto. As a material consideration to induce Lender to accept the New Agreement, Borrower agrees to comply with the terms and conditions of Agreement 1. Borrower further agrees that any Event of Default as defined in the Agreement1 shall constitute an Event of Default under Agreement 2 and that any Event of Default under the Agreement 2 shall constitute an Event of Default under Agreement 1. The occurrence of an Event of Default under either Agreement 1 or Agreement 2 shall entitle Lender to exercise its rights and remedies under both agreements including the Lender's rights and remedies set forth in the mortgages securing Agreement 1 and Agreement 2 (collectively "The Agreements").

**BY SIGNING BELOW,** Guarantors accepts and agrees to the terms and covenants contained in the

Vincent William De Ramo, Jr.

X _Vincent W. DeRamo, Jr._

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Florida_ )

                                                                        )
                                                                        s
                                                                        s

_County_ OF _Sarasota_ )

On this _24th_ day of _March_ , 20 _16_ , before me
personally appeared _____, to me known to be the person described in and who
executed the foregoing Mortgage, and acknowledged that he or she executed the same as his or her free
act and deed. _Vincent William DeRamo Jr_

_Carol A. Moore_

[seal]   CAROL A. MOORE
         NOTARY PUBLIC              Notary        Public
         STATE OF FLORIDA
         Comm# FF015658      My Commission expires: _5-7-17_ )
         Expires 5/7/2017

**BY SIGNING BELOW,** Guarantors accepts and agrees to the terms and covenants contained in the

Vincent W. DeRamo, as Trustee under agreement dated 3/7/00

X _Vincent W. DeRamo_ _____

---

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Florida_ _____                                    )
                                                                       )
                                                                       S
                                                                       S
_County_ OF _Sarasota_ _____                                 )

On this _24th_ day of _March_ _____, 20 _16_, before me
personally appeared _____, to me known to be the person described in and who
executed the foregoing Mortgage, and acknowledged that he or she executed the same as his or her free
act and deed. _Vincent W. DeRamo_

_Carol A. Moore_
Notary        Public

[seal]
CAROL A. MOORE
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF016656
Expires 5/7/2017

My Commission expires: _5-7-17_                    )

BY SIGNING BELOW, Grantors accepts and agrees to the terms and covenants contained in the

Tracy E. DeRamo, as Trustee under agreement dated 3/7/00

X _Tracy E. DeRamo_

---

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Florida_ )

)

S
S

_County_ OF _Sarasota_ )

On this _24th._ day of _March_ , 20 _16_ , before me personally appeared _Tracy E. DeRamo_, to me known to be the person described in and who executed the foregoing Mortgage, and acknowledged that he or she executed the same as his or her free act and deed.

_Carol A. Moore_

Notary          Public

[seal]   CAROL A. MOORE
         NOTARY PUBLIC
         STATE OF FLORIDA
         Comm# FF015666
         Expires 5/7/2017

My Commission expires: _5-7-17_     )

EXHIBIT A -Agreement 1

**ALL THAT CERTAIN** lot or piece of ground situate in the City of Sarasota,
County of Sarasota, State of Florida.
Lot 62, SOUTHPOINTE SHORES, Unit No. 2, as per plat thereof, recorded
in Plat Book 10, Page 58, of the Public Records of Sarasota County,
Florida.

Commonly Known as **7614 Peninsular Drive, Sarasota, FL 34233**

EXHIBIT B -Agreement 2

**PREMISES A:**

ALL THAT CERTAIN lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 75, Oaks, according to the plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

**PREMISES B:**

ALL THAT CERTAIN lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 77, Oaks, according to the Plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

Commonly Known as 74 Sugarmill Drive, Osprey, FL 34229, and 82 Sugarmill Drive, Osprey, FL 34229

**CROSS-DEFAULT RIDER - Guarantor**

**THIS CROSS-DEFAULT RIDER** ("Rider") made and entered into this 24th day of March 2016, by and between Bank of Lake Mills, its successor and/ or assigns ("Lender") and Homes by De Ramo, Inc. ("Borrower").

WHEREAS, as a part of the consideration and as additional security for the Lender making a loan to Borrower, the Lender has required the Borrower to agree to enter into this Rider as hereinafter set forth; and

WHEREAS, there is a Business Promissory Note and Security Agreement between the Lender and the Borrower dated March 16, 2016 in the amount of $457,625.00 ("Loan 1") guaranteed by, Vincent William De Ramo, Jr., and Vincent William De Ramo as Trustee, on behalf of the Vincent W. DeRamo, and Tracey E. DeRamo, under agreement dated 3/7/00 (individually and collectively, "Guarantors") pursuant to the terms of Continuing Guaranty agreements (the, "Guarantees"), which Guarantees are collectively secured by a mortgage between Lender and Guarantors covering the real property described in Schedule A attached thereto (the, "Collateral"); and

WHEREAS, there is a Business Promissory Note and Security Agreement between the Lender and the Borrower dated March 24, 2016 in the amount of $91,215.00 ("Loan 2") guaranteed by Vincent William De Ramo, Jr., and Vincent W. DeRamo, as Trustee under agreement dated 3/7/00 ("Guarantors") pursuant to the terms of Continuing Guaranty agreements (the, "Guarantees"), which guarantees are also secured by the Collateral; and Tracy Elizabeth DeRamo, as Trustee under agreement dated 3/7/00 , as grantor pursuant to the terms of the mortgage and hypothecation agreement whose guaranty is also secured by the Collateral on Loan 1 and Loan 2.

NOW, THEREFORE, IN CONSIDERATION of the loans made by Lender to Borrower, the Borrower does hereby agree as follows:

As a material consideration to induce Lender to enter into each of Loan 1 and Loan 2 (collectively, the "Loans"), Borrower agrees to comply with the terms and conditions of the Loans. Borrower further agrees that any Event of Default as defined in Loan 1 shall constitute an Event of Default with respect to Loan 2 and that any Event of Default under the Loan 2 shall constitute an Event of Default with respect to Loan 1. The occurrence of an Event of Default with respect to either Loan 1 or Loan 2 shall entitle Lender to exercise its rights and remedies under each of the respective loan agreements including Lender's rights and remedies set forth in the Guarantees and Mortgages and securing the Guarantees.

Borrower: Homes by De Ramo, Inc.

By: _____

Title: _____

Guarantor: Vincent William De Ramo, Jr.

By: _____

Title: _____

Guarantor: Vincent W. DeRamo, as Trustee under agreement dated 3/7/00

By: _____

Title: _____

Grantor: Tracy E. DeRamo, as Trustee under
agreement dated 3/7/00

By: *Tracy E DeRamo*

Title: *Vice. Pres.*

## CORPORATE ACKNOWLEDGMENT

STATE/COMMONWEALTH OF FL    )

                                            )        ss.:

COUNTY OF *Sarasota*         )

On the *24th* day of *March*, in the year *2016* before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared *Tracy E. DeRamo*, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Cross Default Rider - Guarantor and acknowledged to me that she/he executed the same in her/his capacity as *Vice President* of __ Homes by De Ramo, Inc.__, and that by her/his signature on the Cross Default Rider - Guarantor, the individual, or the person upon behalf of which the individual acted, executed the Cross Default Rider - Guarantor.

*Carol A. Moore*
Notary Public
My Commission expires: *5-7-17*

                                        CAROL A. MOORE
                                        NOTARY PUBLIC
                                        STATE OF FLORIDA
                                        Comm# FF015956
                                        Expires 5/7/2017

                 **Individual Acknowledgement**

STATE/COMMONWEALTH OF FL_____)

                                            ) ss.

COUNTY OF *Sarasota*         )

On the *24th* day of *March*, in the year *2016*, before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared __**Vincent William De Ramo Jr.**__, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Cross Default Rider - Guarantor and acknowledged to me that she/he executed the same in her/his capacity, and that by her/his signature on the Cross Default Rider - Guarantor, the individual, or the person upon behalf of which the individual acted, executed the Cross Default Rider - Guarantor.

*Carol A. Moore*
Notary Public
My Commission expires: *5-7-17*

                                        CAROL A. MOORE
                                        NOTARY PUBLIC
                                        STATE OF FLORIDA
                                        Comm# FF015956
                                        Expires 5/7/2017

**Individual Acknowledgement**

STATE/COMMONWEALTH OF FL_____ )
                                  ) ss.
COUNTY OF _Sarasota_              )

On the _24th_ day of _March_, in the year _2014_, before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared ___Vincent W. DeRamo, as Trustee under agreement dated 3/7/00___, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Cross Default Rider - Guarantor and acknowledged to me that she/he executed the same in her/his capacity, and that by her/his signature on the Cross Default Rider - Guarantor, the individual, or the person upon behalf of which the individual acted, executed the Cross Default Rider - Guarantor.

_Carl A Moore_
Notary Public
My Commission expires: _5-7-17_


**Individual Acknowledgement**

STATE/COMMONWEALTH OF ~~NY~~ _Florida_ )
                                        ) ss.
COUNTY OF _Sarasota_                    )

On the _24th_ day of _March_, in the year _2014_, before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared ___Tracy E. DeRamo, as Trustee under agreement dated 3/7/00___ personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Cross Default Rider - Guarantor and acknowledged to me that she/he executed the same in her/his capacity, and that by her/his signature on the Cross Default Rider - Guarantor, the individual, or the person upon behalf of which the individual acted, executed the Cross Default Rider - Guarantor.

_Carl A Moore_
Notary Public
My Commission expires: _5-7-17_

## SCHEDULE A- Loan 1

**ALL THAT CERTAIN** lot or piece of ground situate in the City of Sarasota, County of Sarasota, State of Florida.
Lot 62, SOUTHPOINTE SHORES, Unit No. 2, as per plat thereof, recorded in Plat Book 10, Page 58, of the Public Records of Sarasota County, Florida.

Commonly Known as **7614 Peninsular Drive, Sarasota, FL 34233**

SCHEDULE B- Loan 2

**PREMISES A:**

**ALL THAT CERTAIN** lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 75, Oaks, according to the plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

**PREMISES B:**

**ALL THAT CERTAIN** lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 77, Oaks, according to the Plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

Commonly Known as 74 Sugarmill Drive, Osprey, FL 34229, and 82 Sugarmill Drive, Osprey, FL 34229

**THIS CROSS-COLLATERALIZATION AND CROSS-DEFAULT AMENDMENT** ("Amendment") made and entered into this 24th day of March 2016, by and between Bank of Lake Mills, its successor and/ or assigns ("Lender") and Homes by De Ramo, Inc.  ("Borrower").

WHEREAS, as a part of the consideration and as additional security for the Lender making an additional loan to Borrower, the Lender has required the Borrower to agree to enter into this Amendment as hereinafter set forth; and

WHEREAS, this Amendment amends the Business Promissory Note and Security Agreement between the Lender and the Borrower dated March 16, 2016 ("Agreement 1" or "Previous Agreement") secured by a  mortgages between Bank of Lake Mills, its successor and/ or assigns and Vincent William De Ramo as Trustee, on behalf of the Vincent W. DeRamo, and Tracey E. DeRamo, agreement dated 3/7/00 (individually and collectively,  as Guarantors of Agreement 1 covering the real property described in Exhibit A attached hereto; and

WHEREAS, Borrower and Lender have agreed to enter into a new and additional Business Promissory Note and Security Agreement dated March 24, 2016 ("Agreement 2" or "New Agreement") in the original amount of $ 91,215.00 and secured by a mortgage between Bank of Lake Mills, its successors and/or assigns and Vincent William De Ramo as Trustee, on behalf of the Vincent W. DeRamo, and Tracey E. DeRamo, agreement dated 3/7/00  as Guarantors of Agreement 2 covering real property described in Exhibit A attached thereto; and

NOW, THEREFORE, IN CONSIDERATION of the loans made by Lender to Borrower, the Borrower does hereby agree as follows:

Reference is made to Agreement 1, which is secured by two mortgages covering real property more particularly described in Exhibit A attached hereto and to Agreement 1. As a material consideration to induce Lender to accept the New Agreement, Borrower agrees to comply with the terms and conditions set forth in the New Agreement. Borrower further agrees that any Event of Default as defined in Agreement 1 shall constitute an Event of Default under Agreement 2 and that any Event of Default under Agreement 2 shall constitute an Event of Default under Agreement 1. The occurrence of an Event of Default under either the New Agreement or the Previous Agreement shall entitle Lender to exercise its rights and remedies under both agreements including the Lender's rights and remedies set forth in the mortgages securing the New Agreement and the Previous Agreement.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in the

Borrower: Vincent William De Ramo Jr., on behalf of Homes by De Ramo Inc.

X _____

## CORPORATE ACKNOWLEDGMENT

STATE OF _Florida_ )

)
s
s

_County_ OF _Sarasota_ )

On this _24th_ day of _March_, 20 _16_, before me
personally appeared _____, to me known to be the person described in and who
executed the foregoing Mortgage, and acknowledged that he or she executed the same as his or her free
act and deed. _Vincent William De Ramo Sr_

_____
Notary         Public

[seal]      CAROL A. MOORE
            NOTARY PUBLIC
            STATE OF FLORIDA        My Commission expires: _5-7-17_
            Comm# FF015656
            Expires 5/7/2017

**EXHIBIT A-Agreement 1**

**ALL THAT CERTAIN** lot or piece of ground situate in the City of Sarasota, County of Sarasota, State of Florida.
Lot 62, SOUTHPOINTE SHORES, Unit No. 2, as per plat thereof, recorded in Plat Book 10, Page 58, of the Public Records of Sarasota County, Florida.

Commonly Known as 7614 Peninsular Drive, Sarasota, FL 34233

EXHIBIT B-Agreement 2

**PREMISES A:**

ALL THAT CERTAIN lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 75, Oaks, according to the plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

**PREMISES B:**

ALL THAT CERTAIN lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 77, Oaks, according to the Plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

Commonly Known as 74 Sugarmill Drive, Osprey, FL 34229, and 82 Sugarmill Drive, Osprey, FL 34229

THIS CROSS-COLLATERALIZATION AND CROSS-DEFAULT AMENDMENT ("Amendment") made and entered into this 24th day of March 2016, by and between Bank of Lake Mills, it successors and/or assigns ("Lender") and Vincent William De Ramo, Jr., and Vincent William De Ramo as Trustee, on behalf of the Vincent W. DeRamo, and Tracy E. DeRamo, agreement dated 3/7/00 ("Guarantors").

WHEREAS, as a part of the consideration and as additional security for the Lender making an additional loan to Homes by De Ramo, Inc. ("Borrower") the Lender has required the Guarantors to agree to enter into this Amendment as hereinafter set forth; and

WHEREAS, this Amendment amends the mortgage covering the real property described in Exhibit A attached hereto between Bank of Lake Mills, it successors and/or assigns and Vincent William De Ramo, Jr., and Vincent William De Ramo as Trustee, on behalf of the Vincent W. DeRamo, and Tracy E. DeRamo, agreement dated 3/7/00 as Guarantors of the Business Promissory Note and Security Agreement dated March 16, 2016 Agreement in the amount of $ 457,625.00 (the, "Agreement 1"or "Previous Agreement"); and

WHEREAS, Borrower and Lender have agreed to enter into a new and additional Business Promissory Note and Security Agreement dated March 24, 2016 ("Agreement 2" or "New Agreement") in the original amount of $91,215.00 and secured by two mortgages between Bank of Lake Mills Vincent William De Ramo, Jr., and Vincent William De Ramo as Trustee, on behalf of the Vincent W. DeRamo, and Tracey E. DeRamo, agreement dated 3/7/00 as Guarantors of the New Agreement covering real property described in Exhibit A attached thereto; and  and Tracy Elizabeth DeRamo, as Trustee under agreement dated 3/7/00 , as grantor pursuant to the terms of the mortgage and hypothecation agreement whose guaranty is also secured by the Collateral on Loan  1 and Loan 2.

NOW, THEREFORE, IN CONSIDERATION of the loans made by Lender to Borrower, the Borrower does hereby agree as follows:

Reference is made to the March 16 Agreement which is secured by a mortgage  covering real property more particularly described in Exhibit A attached hereto and to the March 24 Agreement. As a material consideration to induce Lender to accept the New Agreement, Borrower agrees to comply with the terms and conditions set forth in the New Agreement. Borrower further agrees that any Event of Default as defined in the March 16 Agreement shall constitute an Event of Default under the New Agreement and that any Event of Default under the New Agreement shall constitute an Event of Default under the March 16 Agreement. The occurrence of an Event of Default under either the New Agreement or the March 24 Agreement shall entitle Lender to exercise its rights and remedies under both agreements including the Lender's rights and remedies set forth in the mortgages securing the New Agreement and the March 16 Agreement.

**BY SIGNING BELOW**, Guarantors accepts and agrees to the terms and covenants contained in the

Vincent William De Ramo, Jr.

X _Vinc't William DeRamo, Jr._

---

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Florida_ )

)
S
S

_County_ OF _Sarasota_ )

On this _24th_ day of _March_, 20 _16_, before me personally appeared _____, to me known to be the person described in and who executed the foregoing Mortgage, and acknowledged that he or she executed the same as his or her free act and deed. _Vincent William De Ramo Jr_

_Carol A Moore_

Notary          Public

[seal]
CAROL A. MOORE
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF016856
Expires 5/7/2017

My Commission expires: _5-7-17_ )

BY SIGNING BELOW, Guarantors accepts and agrees to the terms and covenants contained in the

Vincent W. DeRamo, as Trustee under agreement dated 3/7/00

X _Vincent W. DeRamo_____

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Florida_____                     )
                                                                                         )
                                                                                         S
                                                                                         S
_County_ OF _Sarasota_____                 )

On this _24th_ day of _March_____, 20 _16_, before me
personally appeared _____, to me known to be the person described in and who
executed the foregoing Mortgage, and acknowledged that he or she executed the same as his or her free
act and deed. _Vincent W. DeRamo_

_Carol A. Moore_
Notary          Public

[seal] CAROL A. MOORE
NOTARY PUBLIC
STATE OF FLORIDA          My Commission expires: _5-7-17_
Comm# FF015656
Expires 5/7/2017

**BY SIGNING BELOW**, Grantors accepts and agrees to the terms and covenants contained in the

Tracy E. DeRamo, as Trustee under agreement dated 3/7/00

X _Tracy S DeRamo_____

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Florida_____                )

                                                   )
                                                  S
                                                  S
_County_____ OF _Sarasota_____                     )

On this _24th_ day of _March_____, 20 _16_, before me
personally appeared _Tracy E. DeRamo_ to me known to be the person described in and who
executed the foregoing Mortgage, and acknowledged that he or she executed the same as his or her free
act and deed.

                                    _CarolA Moore_

                                    Notary        Public

[seal]    CAROL A. MOORE
          NOTARY PUBLIC
          STATE OF FLORIDA    My Commission expires: _5-7-17_  )
          Comm# FF015656
          Expires 5/7/2017

**EXHIBIT A -Agreement 1**

**ALL THAT CERTAIN** lot or piece of ground situate in the City of Sarasota, County of Sarasota, State of Florida.
Lot 62, SOUTHPOINTE SHORES, Unit No. 2, as per plat thereof, recorded in Plat Book 10, Page 58, of the Public Records of Sarasota County, Florida.

Commonly Known as 7614 Peninsular Drive, Sarasota, FL 34233

**EXHIBIT B -Agreement 2**

<u>**PREMISES A:**</u>

**ALL THAT CERTAIN** lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 75, Oaks, according to the plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

<u>**PREMISES B:**</u>

**ALL THAT CERTAIN** lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 77, Oaks, according to the Plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

Commonly Known as 74 Sugarmill Drive, Osprey, FL 34229, and 82 Sugarmill Drive, Osprey, FL 34229

**Rider to Business Promissory Note and Security Agreement**
**dated March 24, 2016  the amount of $91,215.00**

**THIS RIDER** ("Rider") made and entered into this 24th day of March 2016 by and between Bank of Lake Mills, its successor and/ or assigns ("Lender") and Homes by De Ramo, Inc. ("Borrower").

WHEREAS, as a part of the consideration and as additional security for the Lender making a loan to Borrower, the Lender has required Borrowers to agree to enter into this Rider as hereinafter set forth; and

WHEREAS, there is a Business Promissory Note and Security Agreement between the Lender and the Borrowers dated March 16, 2016 in the amount of $457,625.00 ("Loan 1") guaranteed by Vincent William De Ramo as Trustee, on behalf of the Vincent W. DeRamo, and Tracy E. DeRamo, agreement dated 3/7/00 (individually and collectively, "Guarantors") pursuant to the terms of a Continuing Guaranty agreement dated March 16, 2016 ( "Guaranty 1"), which guaranty is  secured by a Mortgage between Lender and Guarantors covering the related real property (the, "Collateral"); and

WHEREAS, there is a Business Promissory Note and Security Agreement between the Lender and the Borrowers dated March 24, 2016 in the amount of $91,215.00 ("Loan 2", Loan 1 and Loan 2 are collectively, the "Loans") guaranteed Guarantors) pursuant to the terms of a Continuing Guaranty agreement ("Guaranty 2", Guaranty 1 and Guaranty 2 are collectively, the "Guarantees"), which guaranty is also secured by the Collateral; and Tracy Elizabeth DeRamo, as Trustee under agreement dated 3/7/00 , as grantor pursuant to the terms of the mortgage and hypothecation agreement whose guaranty is also secured by the Collateral on Loan 1 and Loan 2.

NOW, THEREFORE, IN CONSIDERATION of the loans made by Lender to Borrower, the Borrower does hereby agree as follows:

As a material consideration to induce Lender to enter into each of Loan 1 and Loan 2 (collectively, the "Loans"), Borrower agrees to comply with the terms and conditions of the Loans. Borrower further agrees that any Event of Default as defined in Loan 1 shall constitute an Event of Default with respect to Loan 2 and that any Event of Default under the Loan 2 shall constitute an Event of Default with respect to Loan 1. The occurrence of an Event of Default with respect to either Loan 1 or Loan 2 shall entitle Lender to exercise its rights and remedies under each of the respective loan agreements including Lender's rights and remedies set forth in the Guarantees and Mortgage and Deeds of Trust securing the Guarantees.

Homes by De Ramo, Inc.

By: _Vincent W. DeRamo Jr., Pres._

Title: _PRESIDENT_

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in the

Borrower: Vincent William De Ramo Jr., on behalf of Homes by De Ramo Inc.

X _Vincent W. DeRamo Jr._

## CORPORATE ACKNOWLEDGMENT

STATE OF _Florida_ )
                                                                        )
                                                                        s
                                                                        s
_County_ OF _Sarasota_ )

On this _24th_ day of _March_, 20 _2016_, before me
personally appeared _____, to me known to be the person described in and who
executed the foregoing Mortgage, and acknowledged that he or she executed the same as his or her free
act and deed. _Vincent William DeRamo Jr._

_Carol A Moore_
                                                            Notary          Public

[seal]     CAROL A. MOORE
            NOTARY PUBLIC
            STATE OF FLORIDA
            Comm# FF016656        My Commission expires: _5-7-17_ l
            Expires 5/7/2017

**Exhibit 1A**

BUSINESS LOAN SUMMARY*

| Borrower: Homes By De Ramo, Inc.<br>4610 Ashton Rd., Sarasota, Florida, 34233 | Lender: Bank of Lake Mills<br>136 E. Madison St., Lake Mills, WI 53551 |
|---|---|

| |
|---|
| **Disbursement to Borrower:**<br>$106,596.84<br>This amount is to be disbursed on 3/17/2016 |
| **Fees:**<br>$7,625.00<br>See Itemization on attached Page 2 |
| **Adjustments:**<br>$343,403.16<br>See Itemization on attached Page 2 |
| **Loan Amount:**<br>$457,625.00<br>See Itemization on attached Page 2 |
| **Interest Charge:**<br>$334,086.13<br>See Itemization on attached Page 2 |
| **Total Repayment Amount:**<br>$791,711.13<br>See Itemization on attached Page 2 |

Payment Schedule: 251 payments of $3,141.73 due each "Business Day" commencing on 3/18/2016 until 3/17/2017, followed by a final payment of $3,136.90 on 3/20/2017 when any remaining outstanding Principal, interest and other unpaid charges shall be due and payable in full. "Business Day" means any Monday through Friday, except Federal Reserve holidays. The period commencing on 3/18/2016 and ending on 3/20/2017 is referred to as the "Repayment Period."

Prepayment: Borrower may make a full prepayment of unpaid Principal at any time accompanied by a prepayment premium. The prepayment premium will be equal to the greater of (a) fifteen percent (15%) of the amount of the unpaid Principal or (b) the aggregate amount required to be repaid by Borrower to Lender during the Repayment Period reduced by the sum of (i) the aggregate amount of any payments made by Borrower to Lender prior to the date of such prepayment and (ii) the amount of the unpaid Principal.

Charges: Returned (NSF/ACH) Payment Charge: $35.00.

*If there is any conflict between the terms of this Business Loan Summary and the related Business Promissory Note and Security Agreement entered into by Borrower, the terms of the Business Promissory Note and Security Agreement shall govern.

Borrower hereby acknowledge(s) reading and understanding all of the information disclosed above, and receiving a completed copy of this Business Loan Summary on the date indicated below.

Borrower: Homes By De Ramo, Inc.

By: _Vincent William De Ramo Jr._

Printed Name: _Vincent William De Ramo Jr._

Title: _president_

Read, acknowledged and accepted This Day __16__ of Month __03__ of Year __2016__.

**Exhibit 1B**

BUSINESS PROMISSORY NOTE AND SECURITY AGREEMENT

BORROWER: Homes By De Ramo, Inc.

PRINCIPAL (including processing fees): $457,625.00

DATE: 3/16/2016

1. PROMISE TO PAY: Homes By De Ramo, Inc. ("Borrower"), with its principal place of business located at 4610 Ashton Rd., Sarasota, Florida, 34233, does hereby promise to pay to the order of BANK OF LAKE MILLS, its successors and/or assigns ("Lender") at its offices located at 136 E. Madison St., Lake Mills, WI 53551, or at such other location or in such other manner as designated by Lender, the sum of FOUR HUNDRED FIFTY-SEVEN THOUSAND SIX HUNDRED TWENTY-FIVE DOLLARS AND ZERO CENTS ($457,625.00) plus interest at the daily interest rate set forth below in Section 2 in accordance with the payment schedule set forth below in Section 3. This Business Promissory Note and Security Agreement ("Loan Agreement") is accepted by Lender in Wisconsin.

2. INTEREST RATE: The unpaid Principal shall bear interest at the rate of 0.335% per day until paid in full.

3. PAYMENT SCHEDULE/APPLICATION OF PAYMENTS: Borrower shall repay the Principal and interest commencing on 3/18/2016 and on each Business Day thereafter until 3/17/2017 with each daily payment equaling $3,141.73, followed by a final payment of $3,136.90 on 3/10/2017, when any remaining outstanding Principal, interest and other unpaid charges shall be due and payable in full. "Business Day" means any Monday through Friday, except Federal Reserve holidays. The period commencing on 3/18/2016 and ending on 3/20/2017 is referred to as the "Repayment Period."

All payments shall be made by automatic ACH debit from the "Designated Checking Account" set forth in the Business Loan Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) given by Borrower to Lender or pursuant to an alternative payment method prescribed by Lender, and Borrower shall maintain balances in the Designated Checking Account sufficient to make each daily payment due under this Loan Agreement.

Payments shall be applied on the date received first to late charges and other charges due under this Loan Agreement, then to unpaid accrued interest, and then to Principal.

4. VOLUNTARY PREPAYMENT AND PREPAYMENT PREMIUM: Borrower has the right to prepay the unpaid Principal in full at any time, but may not make partial prepayments (except as permitted by applicable law). Any such prepayment of the unpaid Principal shall be accompanied by a prepayment premium equal to the greater of (a) fifteen percent (15%) of the amount of the unpaid Principal as of the date of such prepayment or (b) the aggregate amount required to be repaid by Borrower to Lender during the Repayment Period reduced by the sum of (i) the aggregate amount of any payments made by Borrower to Lender pursuant to Section 3 above prior to the date of such prepayment and (ii) the amount of the unpaid Principal as of the date of such prepayment. This prepayment premium is in addition to any and all interest calculated and accrued on the unpaid Principal as of the date of such prepayment in accordance with Section 2 above together with all other amounts then due and payable under this Loan Agreement. No prepayment is permitted unless all outstanding charges are paid in full as of the date of prepayment. If Borrower desires to prepay, Borrower shall forward a written request to WBLPayoff@wbl.com. In addition, Borrower may contact Lender's Servicing Agent at 120 W. 45th St. 29th Floor, New York, NY 10036 or at 212-293-8200 and Lender's Servicing Agent shall provide Borrower with the amount of the unpaid Principal, prepayment premium, and any other amounts due under the terms of this Loan Agreement as of a date designated by Borrower. For the avoidance of doubt, as permitted under applicable law, if the Obligations (as defined below) have been accelerated on the happening of an Event of Default (as defined below), payment of Principal and interest shall be deemed a prepayment for purposes of this Section 4 and shall be accompanied by a prepayment premium.

5. RETURNED PAYMENT CHARGE: Borrower will pay a charge of thirty-five dollars ($35.00) ("NSF Charge") in connection with any payment by check or electronic transfer that is returned unpaid because of an insufficient balance in the Designated Checking Account or otherwise.

6. SECURITY INTEREST: Borrower grants to Lender a security interest in and to any and all property as described below in this Section 6 to secure payment of all debts, obligations and liabilities of Borrower to Lender evidenced by this Loan Agreement or any other loan agreement with Lender ("Obligations"). This is a continuing security interest and will continue in effect even though all or any part of the Obligations is paid in full and even though for a period of time Borrower may not be indebted to Lender. The collateral includes the property purchased with the proceeds of this Loan Agreement described on Schedule A attached to and made a part of this Loan Agreement ("Purchase Money Collateral"), the vehicles and other personal property described on Schedule B attached to and made a part of this Loan Agreement ("Specific Collateral") and all other

personal property now owned or hereafter acquired by Borrower (which, along with Purchase Money Collateral and Specific Collateral, is collectively referred to as "Collateral"), including, but not limited to, all goods (except consumer goods), firm products, inventory, equipment, furniture, money, instruments, accounts, accounts receivable, contract rights, documents, chattel paper, general intangibles, including, but not limited to, all products and proceeds of Collateral and all additions and accessions to, replacements of, and documents covering Collateral, all property received wholly or partly in trade or exchange for Collateral, all leases of Collateral and all rents, revenues, issues, profits and proceeds arising from the sale, lease encumbrance, collection, or any other temporary or permanent disposition, of the Collateral or any interest therein. Borrower agrees that Lender may file any financing statement, lien entry form or other document Lender requires in order to perfect, amend or continue Lender's security interest in the Collateral and Borrower agrees to cooperate with Lender as may be necessary to accomplish said filing and to do whatever Lender deems necessary to protect Lender's security interest in the Collateral. Borrower shall ensure that Lender is named as the only lien holder on the titles to the motor vehicles listed on Schedule B to this Loan Agreement as of the date of this Loan Agreement (or the nearest subsequent date as permitted under applicable law).

Borrower shall maintain the Collateral in good condition and repair and not permit its value to be impaired; keep the Collateral free from all liens, encumbrances and security interests (other than those created or expressly permitted by this Loan Agreement); defend the Collateral against all claims and legal proceedings by persons other than Lender; pay and discharge when due all taxes, license fees, levies and other charges upon the Collateral; not sell, lease or otherwise dispose of the Collateral or permit it to become a fixture or an accession to other goods, except as specifically authorized by Lender in writing; and not permit the Collateral to be used in violation of any applicable law, regulation or policy of insurance.

Borrower shall pay all expenses and, upon request, take any action reasonably deemed advisable by Lender to preserve the Collateral or to establish, determine priority of, perfect, continue perfected, terminate and/or enforce Lender's interest in the Collateral or rights under this Loan Agreement and, further, Borrower authorizes Lender, with full power of substitution, to execute in Borrower's name any documents necessary to perfect, amend or to continue Lender's interest in the Collateral or rights under this Loan Agreement or to demand termination of filings of other secured parties. Lender has no duty to protect, insure or realize upon the Collateral. Loss of or damage to the Collateral shall not release Borrower from any of the Obligations.

7. FOR BORROWERS OR COLLATERAL IN LOUISIANA ONLY:

(a)    Foreclosure. In the event that Borrower is domiciled in, or Collateral is located in, Louisiana, on the happening of an Event of Default, Lender shall have the right to commence appropriate foreclosure proceedings against the Collateral and against Borrower.

(b)    Seizure and Sale of Collateral. In the event that Lender elects to commence appropriate Louisiana foreclosure proceedings under the Loan Agreement, Lender may cause the Collateral, or any part or parts thereof, to be immediately seized and sold, whether in term of court or in vacation, under ordinary or executory process, in accordance with applicable Louisiana law, to the highest bidder for cash, with or without appraisement, and without the necessity of making additional demand upon or notifying Borrower or placing Borrower in default, all of which are expressly waived.

(c)    Executory Process. For purposes of foreclosure under Louisiana executory process procedures, Borrower confesses judgment and acknowledges to be indebted to Lender, up to the full amount of the Obligations, in Principal, interest, prepayment charges, NSF Charges, and any other unpaid costs and charges authorized by the Loan Agreement, reasonable attorneys' fees and all costs of collection. Borrower further confesses judgment and acknowledges to be indebted unto and in favor of Lender in the amount of any additional advances that Lender may make on Borrower's behalf pursuant to the Loan Agreement, together with interest thereon. To the extent permitted under applicable Louisiana law, Borrower additionally waives the following: (1) the benefit of appraisal as provided in Articles 2332, 2336, 2723, and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale; (2) the demand and three (3) days' delay as provided under Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; (3) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (4) the three (3) days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (5) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above.

(d)    Keeper. Should any or all of the Collateral be seized as an incident to an action for the recognition or enforcement of this Loan Agreement, by executory process, sequestration, attachment, writ of *fieri facias* or otherwise, Borrower hereby agrees that the court issuing any such order shall, if requested by Lender, appoint Lender, or any agent designated by Lender or any person or entity named by Lender at the time such seizure is requested, or any time thereafter, as "Keeper" of the Collateral as provided under La. R.S. 9:5136, *et seq.* Such a Keeper shall be entitled to reasonable
Rev. Sep 2014                                                                                          P a g e |6

compensation. Borrower agrees to pay the reasonable fees of such Keeper, which compensation to the Keeper shall also be secured by this Loan Agreement.

8. **REPRESENTATIONS, WARRANTIES, AND COVENANTS:** Borrower makes the following representations, warranties and covenants:

(a) Borrower is the owner of or is acquiring the Purchase Money Collateral free of all liens, encumbrances and security interests (except Lender's security interest), and is the owner of all other Collateral free of all liens, encumbrances and security interests, except Lender's security interest and any security interests listed on Schedule C attached and made a part of this Loan Agreement;

(b) the proceeds of this Loan Agreement will be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods. Borrower understands Lender is relying on the accuracy of this representation in disbursing the loan proceeds and that Borrower's agreement not to use the proceeds of this Loan Agreement for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods means that certain important duties imposed upon entities making loans for consumer/personal purposes, and certain important rights conferred upon consumers, pursuant to federal or state law will not apply to this Loan Agreement, or any other document or instrument given to Lender in connection with or related to this Loan Agreement. Borrower also understands that Lender will be unable to confirm whether the proceeds of this Loan Agreement will be used for business purposes only. Borrower acknowledges and agrees that a breach by Borrower of the provisions of this subsection 8(b) will not affect Lender's right to (I) enforce Borrower's promise to pay for all amounts owed under this Loan Agreement, regardless of the purpose for which the proceeds of this Loan Agreement are in fact obtained or (II) use any remedy legally available to Lender, even if that remedy would not have been available had the proceeds of this Loan Agreement been used for consumer purposes;

(c) the Collateral will be kept at Borrower's address set forth above in Section 1; on Schedule D attached to and made a part of this Loan Agreement;

(d) Borrower's name in Section 1 above is its exact name on its organizing and/or registered documents, if any, and is Borrower's principal place of business. Borrower shall immediately advise Lender of any change in Borrower's name or address as set forth above in Section 1;

(e) Borrower is duly organized, validly existing and in good standing under the law of the jurisdiction in which it is organized, and has all licenses and authorizations necessary to carry on its business as now being conducted;

(f) Borrower has the full power and authority to execute, deliver and perform all transactions contemplated by this Loan Agreement and the performance of and compliance with the terms of this Loan Agreement will not violate the Borrower's organizational documents or constitute a default of any contract, agreement or other instrument to which Borrower is a party;

(g) Borrower has duly authorized the execution, delivery and performance of this Loan Agreement and has duly executed and delivered this Loan Agreement, and this Loan Agreement constitutes a legal, valid and binding obligation of the Borrower, enforceable against it in accordance with its terms;

(h) there is no action, suit, proceeding or investigation pending or, to Borrower's knowledge, threatened against or affecting it or any of its assets before or by any court or other governmental authority which, if determined adversely to it, would have a material adverse effect on its financial condition, business or prospects, or the value of the Collateral; and

(i) Borrower will provide any financial information on request or permit an examination of its books and records to permit Lender to confirm Borrower's ability to pay its Obligations and all other financial obligations.

(j) Borrower has not been notified by any of its lenders that it is in default under the terms of any of its credit agreements, nor has Borrower done, caused to be done, or failed to do any act or omission that would result in a default under any credit agreement.

(k) No third party source of financing for Borrower's customers has discontinued, or threatened to discontinue providing financing to Borrower's customers.

9. **DEFAULT:** On the happening of any of the following events (each an "Event of Default"):

(a) failure by Borrower to pay any daily or other payment required by this Loan Agreement when due;

(b) failure by Borrower to observe, perform, keep or abide by any term, covenant or condition contained in this Loan Agreement or any other document or instrument given to Lender in connection with or related to this Loan Agreement, including any real estate mortgage, security agreement or other agreement or document now or hereafter evidencing or creating any security for the payment of this Loan Agreement;

(c) the filing of a bankruptcy proceeding, assignment for the benefit of creditors, issuance of a judgment execution, garnishment or levy against, or the appointment of a representative of any kind for the commencement of any proceeding for relief from indebtedness by or against Borrower;

(d) the happening of any event, which, in the reasonable judgment of Lender, adversely affects Borrower's ability or the ability of any guarantor of Borrower's Obligations under this Loan Agreement ("Guarantor") to repay Borrower's Obligations, or materially affects the value of the Collateral;

(e) any written representation, statement or warranty made to Lender by Borrower or any Guarantor is untrue or is breached;

(f) the occurrence of (I) a default under any guaranty of Borrower's Obligations ("Guaranty"), or any other document or instrument given to Lender in connection with or related to this Loan Agreement, or (II) an event of default under any other loan agreement that Borrower may have with any other lender;

(g) any Guaranty is revoked or becomes unenforceable for any reason;

(h) Lender, upon examination of Borrower's financial information during the term of this Loan Agreement, becomes insecure in Borrower's ability to pay the Obligations,

Lender, at its option, without notice or demand (except as required by applicable law), may (A) declare the entire unpaid balance of all Obligations under this Loan Agreement or other agreements immediately due and payable, and shall have the right to proceed to collect such Obligations under applicable law and enforce its rights under any Guaranty; and (B) proceed against the Collateral and any other collateral securing any obligation to Lender as if said collateral secured the Obligations, as permitted under the applicable Uniform Commercial Code or any other applicable law. As permitted under the Uniform Commercial Code, Lender may take possession of Collateral without notice or hearing, which Borrower waives, and upon demand, Borrower shall assemble the Collateral and make it available to Lender at any convenient place designated by Lender. Lender's receipt of any payment after the occurrence of an Event of Default, whether or not the Obligations have been accelerated, shall not constitute a waiver of the default or of Lender's rights or remedies upon such default, including Lender's right to accelerate the unpaid balance of the Obligations and pursue collection thereof. Election by Lender to pursue or waive any remedy shall not exclude pursuit of any other remedy.

10. **INSPECTION OF COLLATERAL AND PLACE OF BUSINESS:** Lender and Lender's representatives and agents shall have the right at any reasonable time or times to inspect the Collateral wherever located and the interior and exterior of any Borrower place of business, and Borrower shall assist Lender and its representatives and agents in making any such inspection. During an inspection of any Borrower place of business, Lender or Lender's representatives and agents may examine, among other things, whether Borrower (i) has a place of business that is separate from any personal residence, (ii) is open for business, (iii) has sufficient inventory and/or staff to conduct Borrower's business and (iv) has one or more credit card terminals or point of sale systems if Borrower processes credit card transactions. When performing an inspection, Lender or Lender's representatives and agents may photograph the interior and exterior of any Borrower place of business, including any signage. Any photograph will become and remain the sole property of Lender and will be shared with Lender's employees, representatives and agents. Borrower grants Lender the irrevocable and permanent right to display and share any photograph in all forms, including composite and modified representations, for all purposes, with Lender's employees, representatives and agents. Borrower agrees to reimburse Lender for the cost of the inspections described in this Section 10.

**11. EVALUATION OF CREDIT:** Borrower authorizes Lender to obtain business and personal credit bureau reports in Borrower's name, at any time and from time to time for purposes of deciding whether to approve the requested business loan or for any update, renewal, extension of credit or other lawful purpose. Upon Borrower's request, Lender will advise Borrower if Lender obtained a credit report and Lender will give Borrower the credit bureau's name and address. Borrower agrees to submit current financial information, a new credit application, or both, in Borrower's name at any time promptly upon Lender's request.

**12. ATTORNEYS' FEES, COLLECTION COSTS AND POST-JUDGMENT RATE OF INTEREST:** In the event Lender retains counsel with respect to enforcement of its rights under this Loan Agreement or any other document or instrument given to Lender, Borrower agrees to pay all expenses of Lender in enforcing its rights to collect the Obligations or in taking possession, holding, preparing for disposition, and disposing of the Collateral, including Lender's reasonable attorneys' fees (whether or not an action is commenced and whether or not in the court of original jurisdiction, appellate court, bankruptcy court or otherwise) and all costs of collection of any judgment and any costs of appeal. In the event this Loan Agreement is brought to a judgment, interest shall accrue at the interest rate set forth in Section 2 above until the judgment is satisfied, except as prohibited by applicable law.

**13. SALE OF LOAN AGREEMENT:** This Loan Agreement, or an interest in this Loan Agreement, together with the rights to the Collateral, may be sold, assigned, transferred or conveyed by Lender one or more times.

**14. INDEMNIFICATION:** Except for Lender's willful misconduct, Borrower will indemnify and save Lender harmless from all loss, costs, damage, liability or expenses (including, without limitation, court costs and reasonable attorneys' fees) that Lender may sustain or incur by reason of defending or protecting Lender's security interest or the priority thereof or enforcing its rights to collect the Obligations, or in the prosecution or defense of any action or proceeding concerning any matter growing out of or in connection with this Loan Agreement and/or any other documents or instruments now or hereafter executed in connection with this Loan Agreement and/or the Obligations and/or the Collateral. This indemnity shall survive the repayment of the Obligations and the termination of this Loan Agreement.

**15. MISCELLANEOUS:**

(a) Delay or failure of Lender to exercise any of its rights under this Loan Agreement shall not be deemed a waiver thereof. No waiver of any condition or requirement shall operate as a waiver of any other or subsequent condition or requirement.

(b) This Loan Agreement may not be modified orally, and may be modified only upon written agreement signed by Lender.

(c) Lender is an FDIC insured, Wisconsin state chartered bank and this Loan Agreement is accepted by Lender in Wisconsin. CONSEQUENTLY, THIS AGREEMENT WILL BE GOVERNED BY FEDERAL LAW APPLICABLE TO AN FDIC INSURED INSTITUTION AND TO THE EXTENT NOT PREEMPTED BY FEDERAL LAW, THE LAWS OF THE STATE OF WISCONSIN WITHOUT REGARD TO CONFLICT OF LAW RULES. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and reserved under this Loan Agreement will be governed by such laws.

(d) Borrower and Lender agree that any action or proceeding to enforce any rights or obligations arising out of this Loan Agreement shall be commenced either in Wisconsin, New York or the state (or commonwealth, as the case may be) of Borrower's address set forth in Section 1 above ("Borrower's State") and Borrower waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to Borrower at the address specified by Borrower above in Section 1, or as otherwise provided by the laws of the State of Wisconsin, the State of New York, the Borrower's State, or the United States of America. Borrower and Lender agree that venue is proper in such courts.

(e) Without affecting the liability of Borrower or any Guarantor, Lender may accept partial payments marked "in full" or otherwise, release or impair any Collateral or agree not to sue any party liable on this Loan Agreement without waiving any of its rights hereunder.

(f) Presentment, protest, demand and notice of dishonor are waived.

(g) Without affecting the liability of any Guarantor, Lender may from time to time, without notice, renew or extend the time for payment.

(h) Borrower expressly agrees that the interest rate set forth above in Section 2 is appropriate under the circumstances and shall be the applicable rate at which unpaid Principal (and Costs, as defined below) shall bear interest under this Loan Agreement, notwithstanding any rate of interest prescribed by statute from time to time; provided, however, if fulfillment of any provisions of this Loan Agreement or any other instrument securing the Obligations is subject to a law that sets maximum interest rates or other charges, and that law is finally interpreted so that the interest or other fees collected or to be collected in connection with this Loan Agreement exceed the permitted limits, then (I) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit and (II) any sums already collected from Borrower that exceed the permitted limits will be refunded or credited to Borrower and the obligations created by this Loan Agreement shall be fulfilled to the limit of such validity as is permitted by law.

(i) Borrower shall keep the Collateral and Lender's interest in it insured under policies with such provisions, for such amounts and by such insurers as shall be satisfactory to Lender from time to time, and shall furnish evidence of such insurance satisfactory to Lender upon request. Borrower assigns (and directs any insurer to pay) to Lender the proceeds of all such insurance and any premium refund and authorizes Lender to endorse in the name of Borrower any instrument for such proceeds or refunds and, at the option of Lender, to apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to restoration of the Collateral, returning any excess to Borrower. Lender is authorized, in the name of Borrower or otherwise, to make, adjust and/or settle claims under any insurance on the Collateral, or cancel the same after the occurrence of an Event of Default.

(j) If Borrower fails to perform any of Borrower's duties set forth in this Loan Agreement or in any evidence of or document relating to the Obligations, Lender is authorized, in Borrower's name or otherwise, to take any such action, including, without limitation, signing Borrower's name or paying any amount so required, and the cost ("Cost") shall be one of the Obligations secured by this Loan Agreement and shall be payable by Borrower upon Lender's demand with interest at the interest rate set forth above in Section 2 from the date of payment by Lender.

(k) Borrower releases Lender from any liability for any act or omission relating to the Obligations, the Collateral or this Loan Agreement, except Lender's willful misconduct.

(l) Invalidity or unenforceability of any provision of this Loan Agreement shall not affect the validity or enforceability of any other provision.

(m) The terms of this Loan Agreement shall be binding upon Borrower and its permitted successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

(n) Borrower acknowledges that a broker may have received compensation in connection with this Loan Agreement.

(o) Any of the Borrower, Lender or a Guarantor may choose to arbitrate any or all disputes and claims arising out of or relating to this Loan Agreement, the Guaranty or any other related document. A claim includes each claim arising as an initial claim, counter-claim, cross-claim, third-party claim, or otherwise. If the Borrower, Lender or a Guarantor chooses to litigate any dispute or claim arising out of or relating to this Loan Agreement, the Guaranty or any related document through a judicial action, the decision to litigate shall not be deemed a waiver of arbitration, and if such judicial action is contested, any party may thereafter invoke its arbitration rights at any time before any discovery is taken in the judicial action. If the Borrower, Lender or a Guarantor seeks to have a dispute resolved by arbitration, that party must first send to the other party(ies) by certified mail, a written Notice of Intent to Arbitrate. If Borrower, Lender or a Guarantor do not reach an agreement to resolve the claim within 10 days after the Notice is received, any party may commence an arbitration proceeding with the American Arbitration Association ("AAA"). Lender will promptly reimburse Borrower or the Guarantor any arbitration filing fee, however, in the event that both the Borrower and the Guarantor must pay arbitration filing fees, Lender will only reimburse the Borrower's arbitration filing fee and, except as provided in the next sentence, the Lender will pay all arbitration administration and arbitrator fees. If the arbitrator finds that either the substance of any claim raised by Borrower or a Guarantor or the relief sought by Borrower or a Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rule of Procedure 11(b), then Lender will pay the administration or arbitrator fees only if required by the AAA Rules. If the arbitrator grants relief to the Borrower or a Guarantor that is equal to or greater than the value of the relief requested by the Borrower or a Guarantor in the arbitration, Lender shall reimburse Borrower or the Guarantor, as applicable, for

that party's reasonable attorneys' fees and expenses incurred for the arbitration.  BORROWER AND LENDER AGREE THAT BY ENTERING INTO THIS LOAN AGREEMENT, EACH IS WAIVING THE RIGHT TO TRIAL BY JURY.  BORROWER AND LENDER MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF REPRESENTATIVE OR CLASS MEMBER IN ANY PURPORTED REPRESENTATIVE OR CLASS PROCEEDING.  Further, Borrower and Lender agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void.  Any award by the individual arbitrator shall be final and binding, except for any appeal right under the Federal Arbitration Act ("FAA"), and may be entered and enforceable as a judgment in any court of competent jurisdiction, including as a judgment that permits Lender to initiate or complete the exercise of its remedies against, or its realization or foreclosure upon, any collateral or security provided for the benefit of Lender.  This arbitration provision is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1.

(p) In order to ensure a high quality of service for Lender's customers, Lender may monitor and/or record telephone calls between Borrower and Lender's employees. Borrower acknowledges that Lender may do so and agrees in advance to any such monitoring or recording of telephone calls.

(q) Borrower authorizes Lender and Lender's affiliates, agents and independent contractors to contact Borrower at any telephone number Borrower provides to Lender or from which Borrower places a call to Lender, or any telephone number where Lender believes it may reach Borrower, using any means of communication, including, but not limited to, calls or text messages to mobile, cellular, wireless or similar devices or calls or text messages using an automated telephone dialing system and/or artificial voices or prerecorded messages, even if Borrower incurs charges for receiving such communications. Lender and Lender's affiliates, agents and independent contractors, may use any other medium not prohibited by law, including, but not limited to, mail, e-mail and facsimile, to contact Borrower. Borrower expressly consents to conduct business by electronic means.

(r) TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW, BORROWER AND LENDER WAIVE THEIR RIGHT TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON, ARISING OUT OF OR RELATED TO THIS LOAN AGREEMENT AND ALL OTHER DOCUMENTATION EVIDENCING THE OBLIGATIONS, IN ANY LEGAL ACTION OR PROCEEDING.

(s) This Loan Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument. For purposes of the execution of this Loan Agreement, electronic or fax signatures shall be treated in all respects as original signatures.

PRIOR TO SIGNING THIS LOAN AGREEMENT, BORROWER READ AND UNDERSTOOD ALL OF THE PROVISIONS OF THIS LOAN AGREEMENT. AFTER DUE CONSIDERATION, AND THE OPPORTUNITY TO CONSULT WITH OTHER LENDERS AND AN ATTORNEY, ACCOUNTANT OR OTHER COMPETENT PROFESSIONAL OF ITS CHOICE, BORROWER KNOWINGLY, WILLFULLY AND VOLUNTARILY AGREES TO THE TERMS OF THIS LOAN AGREEMENT.

BORROWER ACKNOWLEDGES RECEIPT OF A FULLY COMPLETED AND EXECUTED VERSION OF THIS LOAN AGREEMENT.

BORROWER: Homes By De Ramo, Inc.

By *Vincent William De Ramo Jr.*

Printed Name: Vincent William De Ramo Jr.

Title: president

accounts receivable, contract rights, documents, chattel paper, general intangibles, including, but not limited to, all products and proceeds of Collateral and all additions and accessions to, replacements of, insurance proceeds of, and documents covering Collateral, all property received wholly or partly in trade or exchange for Collateral, all leases of Collateral and all rents, revenues, issues, profits and proceeds arising from the sale, lease encumbrance, collection, or any other temporary or permanent disposition, of the Collateral or any interest therein. Borrower agrees that Lender may file any financing statement, lien entry form or other document Lender requires in order to perfect, amend or continue Lender's security interest in the Collateral and Borrower agrees to cooperate with Lender as may be necessary to accomplish said filing and to do whatever Lender deems necessary to protect Lender's security interest in the Collateral. Borrower shall ensure that Lender is named as the only lien holder on the titles to the motor vehicles listed on Schedule B to this Loan Agreement as of the date of this Loan Agreement (or the nearest subsequent date as permitted under applicable law).

Borrower shall maintain the Collateral in good condition and repair and not permit its value to be impaired; keep the Collateral free from all liens, encumbrances and security interests (other than those created or expressly permitted by this Loan Agreement); defend the Collateral against all claims and legal proceedings by persons other than Lender; pay and discharge when due all taxes, license fees, levies and other charges upon the Collateral; not sell, lease or otherwise dispose of the Collateral or permit it to become a fixture or an accession to other goods, except as specifically authorized by Lender in writing; and not permit the Collateral to be used in violation of any applicable law, regulation or policy of insurance.

Borrower shall pay all expenses and, upon request, take any action reasonably deemed advisable by Lender to preserve the Collateral or to establish, determine priority of, perfect, continue perfected, terminate and/or enforce Lender's interest in the Collateral or rights under this Loan Agreement and, further, Borrower authorizes Lender, with full power of substitution, to execute in Borrower's name any documents necessary to perfect, amend or to continue Lender's interest in the Collateral or rights under this Loan Agreement or to demand termination of filings of other secured parties. Lender has no duty to protect, insure or realize upon the Collateral. Loss of or damage to the Collateral shall not release Borrower from any of the Obligations.

## 7. FOR BORROWERS OR COLLATERAL IN LOUISIANA ONLY:

(a)     Foreclosure. In the event that Borrower is domiciled in, or Collateral is located in, Louisiana, on the happening of an Event of Default, Lender shall have the right to commence appropriate foreclosure proceedings against the Collateral and against Borrower.

(b)     Seizure and Sale of Collateral. In the event that Lender elects to commence appropriate Louisiana foreclosure proceedings under the Loan Agreement, Lender may cause the Collateral, or any part or parts thereof, to be immediately seized and sold, whether in term of court or in vacation, under ordinary or executory process, in accordance with applicable Louisiana law, to the highest bidder for cash, with or without appraisement, and without the necessity of making additional demand upon or notifying Borrower or placing Borrower in default, all of which are expressly waived.

(c)     Executory Process. For purposes of foreclosure under Louisiana executory process procedures, Borrower confesses judgment and acknowledges to be indebted to Lender, up to the full amount of the Obligations, in Principal, interest, prepayment charges, NSF Charges, and any other unpaid costs and charges authorized by the Loan Agreement, reasonable attorneys' fees and all costs of collection. Borrower further confesses judgment and acknowledges to be indebted unto and in favor of Lender in the amount of any additional advances that Lender may make on Borrower's behalf pursuant to the Loan Agreement, together with interest thereon. To the extent permitted under applicable Louisiana law, Borrower additionally waives the following: (1) the benefit of appraisal as provided in Articles 2332, 2336, 2723, and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale; (2) the demand and three (3) days' delay as provided under Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; (3) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (4) the three (3) days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (5) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above.

(d)     Keeper. Should any or all of the Collateral be seized as an incident to an action for the recognition or enforcement of this Loan Agreement, by executory process, sequestration, attachment, writ of fieri facias or otherwise, Borrower hereby agrees that the court issuing any such order shall, if requested by Lender, appoint Lender, or any agent designated by Lender or any person or entity named by Lender at the time such seizure is requested, or any time thereafter, as "Keeper" of the Collateral as provided under La. R.S. 9:5136, et seq. Such a Keeper shall be entitled to reasonable compensation. Borrower agrees to pay the reasonable fees of such Keeper, which compensation to the Keeper shall also be secured by this Loan Agreement.

## 8. REPRESENTATIONS, WARRANTIES, AND COVENANTS: Borrower makes the following representations, warranties and covenants:

(a) Borrower is the owner of or is acquiring the Purchase Money Collateral free of all liens, encumbrances and security interests (except Lender's security interest), and is the owner of all other Collateral free of all liens, encumbrances and

security interests, except Lender's security interest and any security interests listed on Schedule C attached and made a part of this Loan Agreement;

(b) the proceeds of this Loan Agreement will be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods. Borrower understands that Lender is relying on the accuracy of this representation in disbursing the loan proceeds and that Borrower's agreement not to use the proceeds of this Loan Agreement for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods means that certain important duties imposed upon entities making loans for consumer/personal purposes, and certain important rights conferred upon consumers, pursuant to federal or state law will not apply to this Loan Agreement, or any other document or instrument given to Lender in connection with or related to this Loan Agreement. Borrower also understands that Lender will be unable to confirm whether the proceeds of this Loan Agreement will be used for business purposes only. Borrower acknowledges and agrees that a breach by Borrower of the provisions of this subsection 8(b) will not affect Lender's right to (I) enforce Borrower's promise to pay for all amounts owed under this Loan Agreement, regardless of the purpose for which the proceeds of this Loan Agreement are in fact obtained or (II) use any remedy legally available to Lender, even if that remedy would not have been available had the proceeds of this Loan Agreement been used for consumer purposes;

(c) the Collateral will be kept at Borrower's address set forth above in Section 1, on Schedule D attached to and made a part of this Loan Agreement;

(d) Borrower's name in Section 1 above is its exact name on its organizing and/or registered documents, if any, and is Borrower's principal place of business. Borrower shall immediately advise Lender of any change in Borrower's name or address as set forth above in Section 1;

(e) Borrower is duly organized, validly existing and in good standing under the law of the jurisdiction in which it is organized, and has all licenses and authorizations necessary to carry on its business as now being conducted;

(f) Borrower has the full power and authority to execute, deliver and perform all transactions contemplated by this Loan Agreement and the performance of and compliance with the terms of this Loan Agreement will not violate the Borrower's organizational documents or constitute a default of any contract, agreement or other instrument to which Borrower is a party;

(g) Borrower has duly authorized the execution, delivery and performance of this Loan Agreement and has duly executed and delivered this Loan Agreement, and this Loan Agreement constitutes a legal, valid and binding obligation of the Borrower, enforceable against it in accordance with its terms;

(h) there is no action, suit, proceeding or investigation pending or, to Borrower's knowledge, threatened against or affecting it or any of its assets before or by any court or other governmental authority which, if determined adversely to it, would have a material adverse effect on its financial condition, business or prospects, or the value of the Collateral; and

(i) Borrower will provide any financial information on request or permit an examination of its books and records to permit Lender to confirm Borrower's ability to pay its Obligations and all other financial obligations.

9. **DEFAULT:** On the happening of any of the following events (each an "Event of Default"):

(a) failure by Borrower to pay any weekly or other payment required by this Loan Agreement when due;

(b) failure by Borrower to observe, perform, keep or abide by any term, covenant or condition contained in this Loan Agreement or any other document or instrument given to Lender in connection with or related to this Loan Agreement, including any real estate mortgage, security agreement or other agreement or document now or hereafter evidencing or creating any security for the payment of this Loan Agreement;

(c) the filing of a bankruptcy proceeding, assignment for the benefit of creditors, issuance of a judgment execution, garnishment or levy against, or the appointment of a representative of any kind for the commencement of any proceeding for relief from indebtedness by or against Borrower;

(d) the happening of any event, which, in the reasonable judgment of Lender, adversely affects Borrower's ability or the ability of any guarantor of Borrower's Obligations under this Loan Agreement ("Guarantor") to repay Borrower's Obligations, or materially affects the value of the Collateral;

(e) any written representation, statement or warranty made to Lender by Borrower or any Guarantor is untrue or is breached;

(f) the occurrence of (I) a default under any guaranty of Borrower's Obligations ("Guaranty"), or any other document or instrument given to Lender in connection with or related to this Loan Agreement, or (II) an event of default under any other loan agreement that Borrower may have with any other lender;

(g) any Guaranty is revoked or becomes unenforceable for any reason;

(h) Lender, upon examination of Borrower's financial information during the term of this Loan Agreement, becomes insecure in Borrower's ability to pay the Obligations,

Lender, at its option, without notice or demand (except as required by applicable law), may (A) declare the entire unpaid balance of all Obligations under this Loan Agreement or other agreements immediately due and payable, and shall have the right to proceed to collect such Obligations under applicable law and enforce its rights under any Guaranty; and (B) proceed against the Collateral and any other collateral securing any obligation to Lender as if said collateral secured the Obligations, as permitted under the applicable Uniform Commercial Code or any other applicable law. As permitted under the Uniform Commercial Code, Lender may take possession of Collateral without notice or hearing, which Borrower waives, and upon demand, Borrower shall assemble the Collateral and make it available to Lender at any convenient place designated by Lender. Lender's receipt of any payment after the occurrence of an Event of Default, whether or not the Obligations have been accelerated, shall not constitute a waiver of the default or of Lender's rights or remedies upon such default, including Lender's right to accelerate the unpaid balance of the Obligations and pursue collection thereof. Election by Lender to pursue or waive any remedy shall not exclude pursuit of any other remedy.

10. INSPECTION OF COLLATERAL AND PLACE OF BUSINESS: Lender and Lender's representatives and agents shall have the right at any reasonable time or times to inspect the Collateral wherever located and the interior and exterior of any Borrower place of business, and Borrower shall assist Lender and its representatives and agents in making any such inspection. During an inspection of any Borrower place of business, Lender or Lender's representatives and agents may examine, among other things, whether Borrower (i) has a place of business that is separate from any personal residence, (ii) is open for business, (iii) has sufficient inventory and/or staff to conduct Borrower's business and (iv) has one or more credit card terminals or point of sale systems if Borrower processes credit card transactions. When performing an inspection, Lender or Lender's representatives and agents may photograph the interior and exterior of any Borrower place of business, including any signage. Any photograph will become and remain the sole property of Lender and will be shared with Lender's employees, representatives and agents. Borrower grants Lender the irrevocable and permanent right to display and share any photograph in all forms, including composite and modified representations, for all purposes, with Lender's employees, representatives and agents. Borrower agrees to reimburse Lender for the cost of the inspections described in this Section 10.

11. EVALUATION OF CREDIT: Borrower authorizes Lender to obtain business and personal credit bureau reports in Borrower's name, at any time and from time to time for purposes of deciding whether to approve the requested business loan or for any update, renewal, extension of credit or other lawful purpose. Upon Borrower's request, Lender will advise Borrower if Lender obtained a credit report and Lender will give Borrower the credit bureau's name and address. Borrower agrees to submit current financial information, a new credit application, or both, in Borrower's name at any time promptly upon Lender's request.

12. ATTORNEYS' FEES, COLLECTION COSTS AND POST-JUDGMENT RATE OF INTEREST: In the event Lender retains counsel with respect to enforcement of its rights under this Loan Agreement or any other document or instrument given to Lender, Borrower agrees to pay all expenses of Lender in enforcing its rights to collect the Obligations or in taking possession, holding, preparing for disposition, and disposing of the Collateral, including Lender's reasonable attorneys' fees (whether or not an action is commenced and whether or not in the court of original jurisdiction, appellate court, bankruptcy court or otherwise) and all costs of collection of any judgment and any costs of appeal. In the event this Loan Agreement is brought to a judgment, interest shall accrue at the interest rate set forth in Section 2 above until the judgment is satisfied, except as prohibited by applicable law.

13. SALE OF LOAN AGREEMENT: This Loan Agreement, or an interest in this Loan Agreement, together with the rights to the Collateral, may be sold, assigned, transferred or conveyed by Lender one or more times.

14. INDEMNIFICATION: Except for Lender's willful misconduct, Borrower will indemnify and save Lender harmless from all loss, costs, damage, liability or expenses (including, without limitation, court costs and reasonable attorneys' fees) that Lender may sustain or incur by reason of defending or protecting Lender's security interest or the priority thereof or enforcing its rights to collect the Obligations, or in the prosecution or defense of any action or proceeding concerning any matter growing out of or in connection with this Loan Agreement and/or any other documents or instruments now or hereafter executed in connection with this Loan Agreement and/or the Obligations and/or the Collateral. This indemnity shall survive the repayment of the Obligations and the termination of this Loan Agreement.

15. MISCELLANEOUS:

(a) Delay or failure of Lender to exercise any of its rights under this Loan Agreement shall not be deemed a waiver   thereof.

No waiver of any condition or requirement shall operate as a waiver of any other or subsequent condition or requirement.

(b) This Loan Agreement may not be modified orally, and may be modified only upon written agreement signed by Lender.

(c) Lender is an FDIC insured, Wisconsin state chartered bank and this Loan Agreement is accepted by Lender in Wisconsin. CONSEQUENTLY, THIS AGREEMENT WILL BE GOVERNED BY FEDERAL LAW APPLICABLE TO AN FDIC INSURED INSTITUTION AND TO THE EXTENT NOT PREEMPTED BY FEDERAL LAW, THE LAWS OF THE STATE OF WISCONSIN WITHOUT REGARD TO CONFLICT OF LAW RULES. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and reserved under this Loan Agreement will be governed by such laws.

(d) Borrower and Lender agree that any action or proceeding to enforce any rights or obligations arising out of this Loan Agreement shall be commenced either in Wisconsin, New York or the state (or commonwealth, as the case may be) of Borrower's address set forth in Section 1 above ("Borrower's State") and Borrower waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to Borrower at the address specified by Borrower above in Section 1, or as otherwise provided by the laws of the State of Wisconsin, the State of New York, the Borrower's State, or the United States of America. Borrower and Lender agree that venue is proper in such courts.

(e) Without affecting the liability of Borrower or any Guarantor, Lender may accept partial payments marked "in full" or otherwise, release or impair any Collateral or agree not to sue any party liable on this Loan Agreement without waiving any of its rights hereunder.

(f) Presentment, protest, demand and notice of dishonor are waived.

(g) Without affecting the liability of any Guarantor, Lender may from time to time, without notice, renew or extend the time for payment.

(h) Borrower expressly agrees that the interest rate set forth above in Section 2 is appropriate under the circumstances and shall be the applicable rate at which unpaid Principal (and Costs, as defined below) shall bear interest under this Loan Agreement, notwithstanding any rate of interest prescribed by statute from time to time; provided, however, if fulfillment of any provisions of this Loan Agreement or any other instrument securing the Obligations is subject to a law that sets maximum interest rates or other charges, and that law is finally interpreted so that the interest or other fees collected or to be collected in connection with this Loan Agreement exceed the permitted limits, then (I) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit and (II) any sums already collected from Borrower that exceed the permitted limits will be refunded or credited to Borrower and the obligations created by this Loan Agreement shall be fulfilled to the limit of such validity as is permitted by law.

(i) Borrower shall keep the Collateral and Lender's interest in it insured under policies with such provisions, for such amounts and by such insurers as shall be satisfactory to Lender from time to time, and shall furnish evidence of such insurance satisfactory to Lender upon request. Borrower assigns (and directs any insurer to pay) to Lender the proceeds of all such insurance and any premium refund and authorizes Lender to endorse in the name of Borrower any instrument for such proceeds or refunds and, at the option of Lender, to apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to restoration of the Collateral, returning any excess to Borrower. Lender is authorized, in the name of Borrower or otherwise, to make, adjust and/or settle claims under any insurance on the Collateral, or cancel the same after the occurrence of an Event of Default.

(j) If Borrower fails to perform any of Borrower's duties set forth in this Loan Agreement or in any evidence of or document relating to the Obligations, Lender is authorized, in Borrower's name or otherwise, to take any such action, including, without limitation, signing Borrower's name or paying any amount so required, and the cost ("Cost") shall be one of the Obligations secured by this Loan Agreement and shall be payable by Borrower upon Lender's demand with interest at the interest rate set forth above in Section 2 from the date of payment by Lender.

(k) Borrower releases Lender from any liability for any act or omission relating to the Obligations, the Collateral or this Loan Agreement, except Lender's willful misconduct.

(l) Invalidity or unenforceability of any provision of this Loan Agreement shall not affect the validity or enforceability of any other provision.

(m) The terms of this Loan Agreement shall be binding upon Borrower and its permitted successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

(n) Borrower acknowledges that a broker may have received compensation in connection with this Loan Agreement.

(o) Any of the Borrower, Lender or a Guarantor may choose to arbitrate any or all disputes and claims arising out of or relating to this Loan Agreement, the Guaranty or any other related document. A claim includes matters arising as an initial claim, counter-claim, cross-claim, third-party claim, or otherwise. If the Borrower, Lender or a Guarantor chooses to litigate any dispute or claim arising out of or relating to this Loan Agreement, the Guaranty or any related document through a judicial action, the decision to litigate shall not be deemed a waiver of arbitration, and if such judicial action is contested, any party may thereafter invoke its arbitration rights at any time before any discovery is taken in the judicial action. If the Borrower, Lender or a Guarantor seeks to have a dispute resolved by arbitration, that party must first send to the other party(ies) by certified mail, a written Notice of Intent to Arbitrate. If Borrower, Lender or a Guarantor do not reach an agreement to resolve the claim within 10 days after the Notice is received, any party may commence an arbitration proceeding with the American Arbitration Association ("AAA"). Lender will promptly reimburse Borrower or the Guarantor any arbitration filing fee, however, in the event that both the Borrower and the Guarantor must pay arbitration filing fees, Lender will only reimburse the Borrower's arbitration filing fee and, except as provided in the next sentence, the Lender will pay all arbitration administration and arbitrator fees. If the arbitrator finds that either the substance of any claim raised by Borrower or a Guarantor or the relief sought by Borrower or a Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rule of Procedure 11(b), then Lender will pay the administration or arbitrator fees only if required by the AAA Rules. If the arbitrator grants relief to the Borrower or a Guarantor that is equal to or greater than the value of the relief requested by the Borrower or a Guarantor in the arbitration, Lender shall reimburse Borrower or the Guarantor, as applicable, for that party's reasonable attorneys' fees and expenses incurred for the arbitration. BORROWER AND LENDER AGREE THAT BY ENTERING INTO THIS LOAN AGREEMENT, EACH IS WAIVING THE RIGHT TO TRIAL BY JURY. BORROWER AND LENDER MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF REPRESENTATIVE OR CLASS MEMBER IN ANY PURPORTED REPRESENTATIVE OR CLASS PROCEEDING. Further, Borrower and Lender agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void. Any award by the individual arbitrator shall be final and binding, except for any appeal right under the Federal Arbitration Act ("FAA"), and may be entered and enforceable as a judgment in any court of competent jurisdiction, including as a judgment that permits Lender to initiate or complete the exercise of its remedies against, or its realization on any collateral or security provided for the benefit of Lender. This arbitration provision is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1.

(p) In order to ensure a high quality of service for Lender's customers, Lender may monitor and/or record telephone calls between Borrower and Lender's employees. Borrower acknowledges that Lender may do so and agrees in advance to any such monitoring or recording of telephone calls.

(q) Borrower authorizes Lender and Lender's affiliates, agents and independent contractors to contact Borrower at any telephone number Borrower provides to Lender or from which Borrower places a call to Lender, or any telephone number where Lender believes it may reach Borrower, using any means of communication, including, but not limited to, calls or text messages to mobile, cellular, wireless or similar devices or calls or text messages using an automated telephone dialing system and/or artificial voices or prerecorded messages, even if Borrower incurs charges for receiving such communications. Lender and Lender's affiliates, agents and independent contractors, may use any other medium not prohibited by law, including, but not limited to, mail, e-mail and facsimile, to contact Borrower. Borrower expressly consents to conduct business by electronic means.

(r) TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW, BORROWER AND LENDER WAIVE THEIR RIGHT TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON, ARISING OUT OF OR RELATED TO THIS LOAN AGREEMENT AND ALL OTHER DOCUMENTATION EVIDENCING THE OBLIGATIONS, IN ANY LEGAL ACTION OR PROCEEDING.

(s) This Loan Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument. For purposes of the execution of this Loan Agreement, electronic or fax signatures shall be treated in all respects as original signatures.

PRIOR TO SIGNING THIS LOAN AGREEMENT, BORROWER READ AND UNDERSTOOD ALL OF THE PROVISIONS OF THIS LOAN AGREEMENT. AFTER DUE CONSIDERATION, AND THE OPPORTUNITY TO CONSULT WITH OTHER LENDERS AND AN ATTORNEY, ACCOUNTANT OR OTHER COMPETENT PROFESSIONAL OF ITS CHOICE, BORROWER KNOWINGLY, WILLFULLY AND VOLUNTARILY AGREES TO THE TERMS OF THIS LOAN AGREEMENT.

BORROWER ACKNOWLEDGES RECEIPT OF A FULLY COMPLETED AND EXECUTED VERSION OF THIS LOAN AGREEMENT.

BORROWER: First Nationle Solution, LLC

By:_____

Printed Name:_____

Title:_____


BORROWER: Advice and Life Group LLC

By:_____

Printed Name:_____

Title:_____

Exhibit 2 A

**ALL THAT CERTAIN** lot or piece of ground situate in the City of Sarasota,
County of Sarasota, State of Florida.
Lot 62, SOUTHPOINTE SHORES, Unit No. 2, as per plat thereof, recorded
in Plat Book 10, Page 56, of the Public Records of Sarasota County,
Florida.

Commonly Known as **7614 Peninsular Drive, Sarasota, FL 34233**

Exhibit 2 B

**PREMISES A:**

**ALL THAT CERTAIN** lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 75, Oaks, according to the plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

**PREMISES B:**

**ALL THAT CERTAIN** lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 77, Oaks, according to the Plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

Commonly Known as 74 Sugarmill Drive, Osprey, FL 34229, and 82 Sugarmill Drive, Osprey, FL 34229

Filing # 56527218 E-Filed 05/16/2017 07:09:01 PM

INSTRUMENT # 2016038714   1   PG(S)

4/1/2016 8:41 AM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY, FLORIDA
SIMPLIFILE                Receipt # 1968400

Prepared by: World Business Lenders, LLC.
Address: 120 West 45th St 29th Floor
New York, NY 10036

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that **Bank of Lake Mills**, for value received does hereby sell, assign, transfer, set over and convey unto **World Business Lenders, LLC** at 120 W. 45th St 29th Floor, New York, NY 10036, all of its right, title and interest of in and to that certain Mortgage dated the <u>16th</u> day of <u>March, 2016</u>, executed by <u>Vincent W. DeRamo and Tracy E. DeRamo</u>, and covering the following described property:

**Exhibit A**
**Legal Description**

ALL THAT CERTAIN lot or piece of ground situate in the City of Sarasota, County of Sarasota, State of Florida.

Lot 62, SOUTHPOINTE SHORES, Unit No. 2, as per plat thereof, recorded in Plat Book 10, Page 58, of the Public Records of Sarasota County, Florida.

filed for record on the <u>23rd</u> day of <u>March, 2016</u>, as Instrument No. <u>2016034543</u> recorded in the Official Records of <u>Sarasota</u> County, <u>Florida</u>, together with note debts and claims secured by said mortgage and the covenants contained therein.

IN WITNESS WHEREOF, ___Bank of Lake Mills___ has caused this instrument to be signed by its ___Attorney-in-Fact___ hereto this _24th_ day of ___March___, _2016_.

Bank of Lake Mills

By: Alex Nadler
Title: Vice President, World Business Lenders,
LLC as Attorney-in-Fact for Bank of Lake Mills
By POA recorded 12/24/15 in BK
19031 Pg 342 in official records
of Pinellas County Florida.

State of ___New York___

County of ___New York___

BE IT REMEMBERED, That on this _23rd_ day of ___March___ _2016_ before me, the undersigned a Notary Public in and for said County and State came ___Alex Nadler___ the Vice President ___(title) who is personally known to me to be the same person who executed the within instrument of writing, and duly acknowledged the execution of the same.
IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal the day and year last above written.

_____
Notary Public

Victoria Bretton.

My Commission Expires _8-22-16_

VICTORIA BRETTON
NOTARY PUBLIC, State of New York
No. 01MA6032136
Qualified in New York County
Commission Expires Aug. 22, 20 16


EXHIBIT
5

RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 2016038714   1   PG(S)

4/1/2016 8:41 AM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY, FLORIDA
SIMPLIFILE          Receipt # 1968400

Prepared by: World Business Lenders, LLC.
Address: 120 West 45th. St 29th Floor
New York, NY 10036

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that **Bank of Lake Mills**, for value received does hereby sell, assign, transfer, set over and convey unto **World Business Lenders, LLC at 120 W. 45th Floor, New York, NY 10036**, all of its right, title and interest of in and to that certain Mortgage dated the **16th** day of **March, 2016**, executed by **Vincent W. DeRamo and Tracy E. DeRamo**, and covering the following described property:

### Exhibit A
### Legal Description

ALL THAT CERTAIN lot or piece of ground situate in the City of Sarasota, County of Sarasota, State of Florida.

Lot 62, SOUTHPOINTE SHORES, Unit No. 2, as per plat thereof, recorded in Plat Book 10, Page 58, of the Public Records of Sarasota County, Florida.

filed for record on the **23rd** day of **March, 2016**, as Instrument No. **2016034543** recorded in the Official Records of **Sarasota** County, **Florida**, together with note debts and claims secured by said mortgage and the covenants contained therein.

IN WITNESS WHEREOF, *Bank of Lake Mills* has caused this instrument to be signed by its *Attorney-in-Fact* hereto this *24th* day of *March 2016*.

*Bank of Lake Mills*

By: Alex Nadler
Title: Vice President, World Business Lenders, LLC as Attorney-in-Fact for Bank of Lake Mills
By POA recorded 12/24/15 in BK 19031 pg 342 in official records of Pinellas County Florida.

State of *New York*

County of *New York*

BE IT REMEMBERED, That on this *23rd* day of *March 2016* before me, the undersigned a Notary Public in and for said County and State came *Alex Nadler* the *Vice President* (title) who is personally known to me to be the same person who executed the within instrument of writing, and duly acknowledged the execution of the same.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal the day and year last above written.

Notary Public                My Commission Expires *8-22-16*

*Victoria Bretton*

VICTORIA BRETTON
NOTARY PUBLIC, State of New York
No. 01MA5032136
Qualified in New York County
Commission Expires Aug. 22, 20 16

Filing # 56527218 E-Filed 05/16/2017 07:09:01 PM

| 4610 Ashton Rd., Sarasota, Florida, 34233 | 136 E. Madison St., Lake Mills, WI 53551 |
|---|---|

**Disbursement to Borrowers:**

**$87,000.00**

This amount is to be disbursed on 3/25/2016

**Fees:**

**$4,215.00**

See Itemization on attached Page 2

**Adjustments:**

**$0.00**

See Itemization on attached Page 2

**Loan Amount:**

**$91,215.00**

See Itemization on attached Page 2

**Interest Charge:**

**$67,170.81**

See Itemization on attached Page 2

**Total Repayment Amount:**

**$158,385.81**

See Itemization on attached Page 2

**Payment Schedule: 251** payments of **$628.52** due each "Business Day" commencing on **3/28/2016** until **3/27/2017**, followed by a final payment of **$627.29** on **3/28/2017** when any remaining outstanding Principal, interest and other unpaid charges shall be due and payable in full. "Business Day" means any Monday through Friday, except Federal Reserve holidays. The period commencing on **3/28/2016** and ending on **3/28/2017** is referred to as the "Repayment Period."

**Prepayment:** Borrower may make a full prepayment of unpaid Principal at any time accompanied by a prepayment premium. The prepayment premium will be equal to the greater of (a) fifteen percent (15%) of the amount of the unpaid Principal or (b) the aggregate amount required to be repaid by Borrower to Lender during the Repayment Period reduced by the sum of (i) the aggregate amount of any payments made by Borrower to Lender prior to the date of such prepayment and (ii) the amount of the unpaid Principal.

**Charges:** Returned (NSF/ACH) Payment Charge: $35.00.

*If there is any conflict between the terms of this Business Loan Summary and the related Business Promissory Note and Security Agreement entered into by Borrower, the terms of the Business Promissory Note and Security Agreement shall govern.

Borrower hereby acknowledge(s) reading and understanding all of the information disclosed above, and receiving a completed copy of this Business Loan Summary on the date indicated below.

Borrower: Homes By DeRamo, Inc.

By: _Vincent William De Ramo Jr._

Printed Name: Vincent William De Ramo Jr.

Title: president

Read, acknowledged and accepted This Day __24__ of Month __03__ of Year __2016__.

*Rev. Sep 2014*

Page |1

**EXHIBIT**

_6_

| FEES | Description | Net Out | Capitalize |
|---|---|---|---|
| Processing Fee | Fee for loan processing | $0.00 | $795.00 |
| Notary Fee | Fee for notary to witness mortgage signing | $0.00 | $0.00 |
| Courier & Wire | Fee to deliver documents and wire fund | $0.00 | $0.00 |
| Settlement Fee | Fee for settlement or closing fee | $0.00 | $0.00 |
| Title Exam Fee | Fee for title examination | $0.00 | $0.00 |
| Business Inspection | Fee for inspection of business | $0.00 | $0.00 |
| Estimated Title Fee | Estimate of Title Fees | $0.00 | $4,000.00 |
| Residential Title Insurance | Fee for residential property insurance | $0.00 | $0.00 |
| Commercial Title Search | Fee for commercial property lien search report(s) | $0.00 | $0.00 |
| Commercial Title Insurance | Fee for commercial property insurance | $0.00 | $0.00 |
| Closing Protection Letter | Fee for Closing Protection Letter | $0.00 | $0.00 |
| Recording Fee | Fee for title agency to record mortgage(s) | $0.00 | $0.00 |
| Endorsement | Fee for change(s) in title insurance coverage | $0.00 | $0.00 |
| Mortgage State Tax Stamps | Fee for state tax stamps | $0.00 | $0.00 |
| Tax Certification | Fee for confirming if property tax is current | $0.00 | $0.00 |
| Certificate of Good Standing | Fee for Certificate of Good Standing | $0.00 | $0.00 |
| Broker Price Opinion Fee | Fee for evaluating the property | $0.00 | $600.00 |
| Prepaid Fees | Borrower prepaid fee credit | ($0.00) | ($1,180.00) |
| | | | |
| | | | |
| | | | |
| | | $0.00 | |
| | **TOTAL FEES** | **$4,215.00** | |
| **ADJUSTMENTS** | | | |
| Principal Balance (Refi Only) | Unpaid principal balance on previous loan | $0.00 | |
| Remaining Interest (Refi Only) | Unpaid interest due on previous loan | $0.00 | |
| Interest Due | Current daily interest charge | $0.00 | |
| Funds Held in Escrow | Amount in escrow to be released upon satisfaction of escrow condition(s) | $0.00 | |
| Third Party 1 Payoff | | $0.00 | |
| Third Party 2 Payoff | | $0.00 | |
| Third Party 3 Payoff | | $0.00 | |
| Third Party 4 Payoff | | $0.00 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | **TOTAL ADJUSTMENTS** | **$0.00** | |
| **BEGINNING PRINCIPAL** | | | |
| Loan Amount Before Fees & Costs | | $87,000.00 | |
| Total Fees (only if capitalized) | Sum of above itemized fees | $4,215.00 | |
| | **TOTAL BEGINNING PRINCIPAL** | **$91,215.00** | |
| **DISBURSEMENT AMOUNT** | | | |
| Loan Amount Before Fees & Costs | | $87,000.00 | |
| Total Fees (Only if net out) | Sum of above itemized fees | $0.00 | |
| Total Adjustments | Sum of above itemized adjustments | $0.00 | |
| | **TOTAL DISBURSEMENT** | **$87,000.00** | |
| **INTEREST CHARGES** | | | |
| Interest Charges | Total interest to be paid over the term of the loan | $67,170.81 | |
| | **TOTAL INTEREST CHARGES** | **$67,170.81** | |
| **TOTAL REPAYMENT** | | | |
| Loan Amount Before Fees & Costs | | $87,000.00 | |
| Total Fees (only if capitalized) | Sum of above itemized fees | $4,215.00 | |
| Interest Charges | Total interest to be paid over the term of the loan | $67,170.81 | |
| | **TOTAL REPAYMENT** | **$158,385.81** | |

**BUSINESS LOAN AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)**

**Date: 03-24-2016**

**DISBURSEMENT OF BUSINESS LOAN PROCEEDS.** By signing below, Borrower authorizes Lender to disburse the business loan proceeds, as evidenced by the Business Promissory Note and Security Agreement executed by Borrower of even date herewith, less the amount of any applicable fees, (a) by issuing (i) a check to Borrower or (ii) a check or bank wire to Borrower's checking account indicated below (or a substitute checking account Borrower later identifies and is acceptable to Lender) (hereinafter referred to as the Designated Checking Account ) or (b) by initiating an ACH credit entry to the Designated Checking Account. This authorization is to remain in full force and effect until Lender has received written notification from Borrower of its termination in such time and in such manner as to afford Lender and Borrower's depository bank a reasonable opportunity to act on it.

**AUTOMATIC PAYMENT PLAN.** Enrollment in Lender's Automatic Payment Plan is required for approval of the business loan.By signing below, Borrower agrees to enroll in the Automatic Payment Plan and authorizes Lender to collect payments required under the terms of the Business Promissory Note and Security Agreement by initiating ACH debit entries to the Designated Checking Account in the amounts and on the dates provided in the Payment Schedule set forth in the Business Promissory Note and Security Agreement. Borrower authorizes Lender to increase the amount of any scheduled ACH debit entry or assess multiple ACH debits for the amount of any previously scheduled payment(s) that was not paid as provided in the Payment Schedule and any unpaid charges.This authorization is to remain in full force and effect until the loan is paid in full or until Lender has received written notification from Borrower of its termination in such time and in such manner as to afford Lender and Borrower's depository bank a reasonable opportunity to act on it. Lender may suspend or terminate Borrower's enrollment in the Automatic Payment Plan immediately if Borrower fails to keep Borrower's Designated Checking Account in good standing or if there are insufficient funds in Borrower'sDesignated Checking Account to process any payment. If Borrower terminates this authorization or Lender suspends or terminates Borrower's enrollment in the Automatic Payment Plan, Borrower still will be responsible for making timely payments pursuant to the alternative payment method prescribed by Lender.

**BUSINESS PURPOSE ACCOUNT.** By signing below, Borrower attests that the Designated Checking Account was established by Borrower, and the loan proceeds will be used for business purposes only and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods.

**ACCOUNT CHANGES.** Borrower agrees to notify Lender promptly if there are any changes to the Designated Checking Account, including routing numbers.

**MISCELLANEOUS.** Lender is not responsible for any fees charged by Borrower's depository bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH transactions to Borrower's Designated Checking Account must comply with the provisions of U.S. law.

**Depository Bank Name:** SunTrust Bank
**Branch:** Nashville, TN
**Branch Address:** PO Box 305183 Nashville, TN 37230
**Account Name:** Homes by Deramo, Inc.
**Account #:** 0574000060097
**Routing #:** 061000104
**Customer Federal Tax ID (EIN):** 59-2508852

BORROWER: Homes By DeRamo, Inc.

Signature: _Vincent William De Ramo Jr._   Name/Title: Vincent William De Ramo  President

Date: 3/24/2016

BUSINESS LOAN PURPOSE AFFIDAVIT

**Date: 3/24/2016**

AFFIDAVIT

STATE/COMMONWEALTH OF _____ )

                                     )      ss.:

COUNTY OF _____                   )

In connection with the business loan to Borrower evidenced by the Business Promissory Note and Security Agreement of even date herewith ("Loan Agreement"), Borrower being first duly sworn on oath deposes and states:

That the proceeds of the Loan Agreement of NINETY-ONE THOUSAND TWO HUNDRED FIFTEEN DOLLARS AND ZERO CENTS ($91,215.00), being furnished to Borrower will be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods.

Subscribed and sworn to by Borrower, under penalty of perjury, this _____ day of _____, in the year ____.

BORROWER: Homes By DeRamo, Inc.

By: *Vincent William De Ramo Jr.*

        ─2BAA883CFE9F439...

Printed Name: Vincent William De Ramo Jr.

Title: president

Subscribed and sworn to me this _____ day of _____, in the year ____.

_____
Notary Public
My Commission expires:

BUSINESS PROMISSORY NOTE AND SECURITY AGREEMENT

**BORROWER: Homes By DeRamo, Inc.**

**PRINCIPAL (including processing fees): $91,215.00**

**DATE: 3/24/2016**

**1. PROMISE TO PAY:** Homes By DeRamo, Inc. ("Borrower"), with its principal place of business located at 4610 Ashton Rd., Sarasota, Florida, 34233, does hereby promise to pay to the order of BANK OF LAKE MILLS, its successors and/or assigns ("Lender") at its offices located at 136 E. Madison St., Lake Mills, WI 53551, or at such other location or in such other manner as designated by Lender, the sum of NINETY-ONE THOUSAND TWO HUNDRED FIFTEEN DOLLARS AND ZERO CENTS ($91,215.00) plus interest at the daily interest rate set forth below in Section 2 in accordance with the payment schedule set forth below in Section 3. This Business Promissory Note and Security Agreement ("Loan Agreement") is accepted by Lender in Wisconsin.

**2. INTEREST RATE:** The unpaid Principal shall bear interest at the rate of 0.335945205479% per day until paid in full.

**3. PAYMENT SCHEDULE/APPLICATION OF PAYMENTS:** Borrower shall repay the Principal and interest commencing on 3/28/2016 and on each Business Day thereafter until 3/27/2017 with each daily payment equaling $628.52, followed by a final payment of $627.29 on 3/28/2017, when any remaining outstanding Principal, interest and other unpaid charges shall be due and payable in full. "Business Day" means any Monday through Friday, except Federal Reserve holidays. The period commencing on 3/28/2016 and ending on 3/28/2017 is referred to as the "Repayment Period."

All payments shall be made by automatic ACH debit from the "Designated Checking Account" set forth in the Business Loan Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) given by Borrower to Lender or pursuant to an alternative payment method prescribed by Lender, and Borrower shall maintain balances in the Designated Checking Account sufficient to make each daily payment due under this Loan Agreement.

Payments shall be applied on the date received first to late charges and other charges due under this Loan Agreement, then to unpaid accrued interest, and then to Principal.

**4. VOLUNTARY PREPAYMENT AND PREPAYMENT PREMIUM:** Borrower has the right to prepay the unpaid Principal in full at any time, but may not make partial prepayments (except as permitted by applicable law). Any such prepayment of the unpaid Principal shall be accompanied by a prepayment premium equal to the greater of (a) fifteen percent (15%) of the amount of the unpaid Principal as of the date of such prepayment or (b) the aggregate amount required to be repaid by Borrower to Lender during the Repayment Period reduced by the sum of (i) the aggregate amount of any payments made by Borrower to Lender pursuant to Section 3 above prior to the date of such prepayment and (ii) the amount of the unpaid Principal as of the date of such prepayment. This prepayment premium is in addition to any and all interest calculated and accrued on the unpaid Principal as of the date of such prepayment in accordance with Section 2 above together with all other amounts then due and payable under this Loan Agreement. No prepayment is permitted unless all outstanding charges are paid in full as of the date of prepayment. If Borrower desires to prepay, Borrower shall forward a written request to WBLPayoff@wbl.com. In addition, Borrower may contact Lender s Servicing Agent at 120 W. 45th St. 29th Floor, New York, NY 10036 or at 212-293-8200 and Lender s Servicing Agent shall provide Borrower with the amount of the unpaid Principal, prepayment premium, and any other amounts due under the terms of the Loan Agreement as of a date designated by Borrower. For the avoidance of doubt, as permitted under applicable law, if the Obligations (as defined below) have been accelerated on the happening of an Event of Default (as defined below), payment of Principal and interest shall be deemed a prepayment for purposes of this Section 4 and shall be accompanied by a prepayment premium.

**5. RETURNED PAYMENT CHARGE:** Borrower will pay a charge of thirty-five dollars ($35.00) ("NSF Charge") in connection with any payment by check or electronic transfer that is returned unpaid because of an insufficient balance in the Designated Checking Account or otherwise.

**6. SECURITY INTEREST:** Borrower grants to Lender a security interest in and to any and all property as described below in this Section 6 to secure payment of all debts, obligations and liabilities of Borrower to Lender evidenced by this Loan Agreement or any other loan agreement with Lender ("Obligations"). This is a continuing security interest and will continue in effect even though all or any part of the Obligations is paid in full and even though for a period of time Borrower may not be indebted to Lender. The collateral includes the property purchased with the proceeds of this Loan Agreement described on Schedule A attached to and made a part of this Loan Agreement ("Purchase Money Collateral"), the vehicles and other personal property described on Schedule B attached to and made a part of this Loan Agreement ("Specific Collateral") and all other

*Rev. Sep 2014*                                                        P a g e  |5

Collateral, is collectively referred to as "Collateral"), including, but not limited to, all goods (except consumer goods), farm products, inventory, equipment, furniture, money, instruments, accounts, accounts receivable, contract rights, documents, chattel paper, general intangibles, including, but not limited to, all products and proceeds of Collateral and all additions and accessions to, replacements of, insurance proceeds of, and documents covering Collateral, all property received wholly or partly in trade or exchange for Collateral, all leases of Collateral and all rents, revenues, issues, profits and proceeds arising from the sale, lease encumbrance, collection, or any other temporary or permanent disposition, of the Collateral or any interest therein. Borrower agrees that Lender may file any financing statement, lien entry form or other document Lender requires in order to perfect, amend or continue Lender's security interest in the Collateral and Borrower agrees to cooperate with Lender as may be necessary to accomplish said filing and to do whatever Lender deems necessary to protect Lender's security interest in the Collateral. Borrower shall ensure that Lender is named as the only lien holder on the titles to the motor vehicles listed on <u>Schedule B</u> to this Loan Agreement as of the date of this Loan Agreement (or the nearest subsequent date as permitted under applicable law).

Borrower shall maintain the Collateral in good condition and repair and not permit its value to be impaired; keep the Collateral free from all liens, encumbrances and security interests (other than those created or expressly permitted by this Loan Agreement); defend the Collateral against all claims and legal proceedings by persons other than Lender; pay and discharge when due all taxes, license fees, levies and other charges upon the Collateral; not sell, lease or otherwise dispose of the Collateral or permit it to become a fixture or an accession to other goods, except as specifically authorized by Lender in writing; and not permit the Collateral to be used in violation of any applicable law, regulation or policy of insurance.

Borrower shall pay all expenses and, upon request, take any action reasonably deemed advisable by Lender to preserve the Collateral or to establish, determine priority of, perfect, continue perfected, terminate and/or enforce Lender's interest in the Collateral or rights under this Loan Agreement and, further, Borrower authorizes Lender, with full power of substitution, to execute in Borrower's name any documents necessary to perfect, amend or to continue Lender's interest in the Collateral or rights under this Loan Agreement or to demand termination of filings of other secured parties. Lender has no duty to protect, insure or realize upon the Collateral. Loss of or damage to the Collateral shall not release Borrower from any of the Obligations.

## 7. FOR BORROWERS OR COLLATERAL IN LOUISIANA ONLY:

(a)     Foreclosure. In the event that Borrower is domiciled in, or Collateral is located in, Louisiana, on the happening of an Event of Default, Lender shall have the right to commence appropriate foreclosure proceedings against the Collateral and against Borrower.

(b)     Seizure and Sale of Collateral. In the event that Lender elects to commence appropriate Louisiana foreclosure proceedings under the Loan Agreement, Lender may cause the Collateral, or any part or parts thereof, to be immediately seized and sold, whether in term of court or in vacation, under ordinary or executory process, in accordance with applicable Louisiana law, to the highest bidder for cash, with or without appraisement, and without the necessity of making additional demand upon or notifying Borrower or placing Borrower in default, all of which are expressly waived.

(c)     Executory Process. For purposes of foreclosure under Louisiana executory process procedures, Borrower confesses judgment and acknowledges to be indebted to Lender, up to the full amount of the Obligations, in Principal, interest, prepayment charges, NSF Charges, and any other unpaid costs and charges authorized by the Loan Agreement, reasonable attorneys' fees and all costs of collection. Borrower further confesses judgment and acknowledges to be indebted unto and in favor of Lender in the amount of any additional advances that Lender may make on Borrower's behalf pursuant to the Loan Agreement, together with interest thereon. To the extent permitted under applicable Louisiana law, Borrower additionally waives the following: (1) the benefit of appraisal as provided in Articles 2332, 2336, 2723, and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale; (2) the demand and three (3) days' delay as provided under Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; (3) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (4) the three (3) days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (5) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above.

(d)     Keeper. Should any or all of the Collateral be seized as an incident to an action for the recognition or enforcement of this Loan Agreement, by executory process, sequestration, attachment, writ of *fieri facias* or otherwise, Borrower hereby agrees that the court issuing any such order shall, if requested by Lender, appoint Lender, or any agent designated by Lender or any person or entity named by Lender at the time such seizure is requested, or any time thereafter, as "Keeper" of the Collateral as provided under La. R.S. 9:5136, *et seq.* Such a Keeper shall be entitled to reasonable

~~compensation borrower agrees to pay the reasonable fees of such Keeper, which compensation to the Keeper shall also be~~ secured by this Loan Agreement.

**8. REPRESENTATIONS, WARRANTIES, AND COVENANTS:** Borrower makes the following representations, warranties and covenants:

    (a) Borrower is the owner of or is acquiring the Purchase Money Collateral free of all liens, encumbrances and security interests (except Lender's security interest), and is the owner of all other Collateral free of all liens, encumbrances and security interests, except Lender's security interest and any security interests listed on Schedule C attached and made a part of this Loan Agreement;

    (b) **the proceeds of this Loan Agreement will be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods. Borrower understands Lender is relying on the accuracy of this representation in disbursing the loan proceeds and that Borrower's agreement not to use the proceeds of this Loan Agreement for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods means that certain important duties imposed upon entities making loans for consumer/personal purposes, and certain important rights conferred upon consumers, pursuant to federal or state law will not apply to this Loan Agreement, or any other document or instrument given to Lender in connection with or related to this Loan Agreement. Borrower also understands that Lender will be unable to confirm whether the proceeds of this Loan Agreement will be used for business purposes only. Borrower acknowledges and agrees that a breach by Borrower of the provisions of this subsection 8(b) will not affect Lender's right to (I) enforce Borrower's promise to pay for all amounts owed under this Loan Agreement, regardless of the purpose for which the proceeds of this Loan Agreement are in fact obtained or (II) use any remedy legally available to Lender, even if that remedy would not have been available had the proceeds of this Loan Agreement been used for consumer purposes;**

    (c) the Collateral will be kept at Borrower's address set forth above in Section 1, on Schedule D attached to and made a part of this Loan Agreement;

    (d) Borrower's name in Section 1 above is its exact name on its organizing and/or registered documents, if any, and is Borrower's principal place of business. Borrower shall immediately advise Lender of any change in Borrower's name or address as set forth above in Section 1;

    (e) Borrower is duly organized, validly existing and in good standing under the law of the jurisdiction in which it is organized, and has all licenses and authorizations necessary to carry on its business as now being conducted;

    (f) Borrower has the full power and authority to execute, deliver and perform all transactions contemplated by this Loan Agreement and the performance of and compliance with the terms of this Loan Agreement will not violate the Borrower's organizational documents or constitute a default of any contract, agreement or other instrument to which Borrower is a party;

    (g) Borrower has duly authorized the execution, delivery and performance of this Loan Agreement and has duly executed and delivered this Loan Agreement, and this Loan Agreement constitutes a legal, valid and binding obligation of the Borrower, enforceable against it in accordance with its terms;

    (h) there is no action, suit, proceeding or investigation pending or, to Borrower's knowledge, threatened against or affecting it or any of its assets before or by any court or other governmental authority which, if determined adversely to it, would have a material adverse effect on its financial condition, business or prospects, or the value of the Collateral; and

    (i) Borrower will provide any financial information on request or permit an examination of its books and records to permit Lender to confirm Borrower's ability to pay its Obligations and all other financial obligations.

    (j) Borrower has not been notified by any of its lenders that it is in default under the terms of any of its credit agreements, nor has Borrower done, caused to be done, or failed to do any act or omission that would result in a default under any credit agreement.

~~(a) a third party source of financing for Borrower's customers has discontinued, or threatens to discontinue~~
providing financing to Borrower's customers.

9. **DEFAULT:** On the happening of any of the following events (each an "Event of Default"):

    (a) failure by Borrower to pay any daily or other payment required by this Loan Agreement when due;

    (b) failure by Borrower to observe, perform, keep or abide by any term, covenant or condition contained in this Loan Agreement or any other document or instrument given to Lender in connection with or related to this Loan Agreement, including any real estate mortgage, security agreement or other agreement or document now or hereafter evidencing or creating any security for the payment of this Loan Agreement;

    (c) the filing of a bankruptcy proceeding, assignment for the benefit of creditors, issuance of a judgment execution, garnishment or levy against, or the appointment of a representative of any kind for the commencement of any proceeding for relief from indebtedness by or against Borrower;

    (d) the happening of any event, which, in the reasonable judgment of Lender, adversely affects Borrower's ability or the ability of any guarantor of Borrower's Obligations under this Loan Agreement ("Guarantor") to repay Borrower's Obligations, or materially affects the value of the Collateral;

    (e) any written representation, statement or warranty made to Lender by Borrower or any Guarantor is untrue or is breached;

    (f) the occurrence of (I) a default under any guaranty of Borrower's Obligations ("Guaranty"), or any other document or instrument given to Lender in connection with or related to this Loan Agreement, or (II) an event of default under any other loan agreement that Borrower may have with any other lender;

    (g) any Guaranty is revoked or becomes unenforceable for any reason;

    (h) Lender, upon examination of Borrower's financial information during the term of this Loan Agreement, becomes insecure in Borrower's ability to pay the Obligations,

Lender, at its option, without notice or demand (except as required by applicable law), may (A) declare the entire unpaid balance of all Obligations under this Loan Agreement or other agreements immediately due and payable, and shall have the right to proceed to collect such Obligations under applicable law and enforce its rights under any Guaranty; and (B) proceed against the Collateral and any other collateral securing any obligation to Lender as if said collateral secured the Obligations, as permitted under the applicable Uniform Commercial Code or any other applicable law. As permitted under the Uniform Commercial Code, Lender may take possession of Collateral without notice or hearing, which Borrower waives, and upon demand, Borrower shall assemble the Collateral and make it available to Lender at any convenient place designated by Lender. Lender's receipt of any payment after the occurrence of an Event of Default, whether or not the Obligations have been accelerated, shall not constitute a waiver of the default or of Lender's rights or remedies upon such default, including Lender's right to accelerate the unpaid balance of the Obligations and pursue collection thereof. Election by Lender to pursue or waive any remedy shall not exclude pursuit of any other remedy.

10. **INSPECTION OF COLLATERAL AND PLACE OF BUSINESS:** Lender and Lender's representatives and agents shall have the right at any reasonable time or times to inspect the Collateral wherever located and the interior and exterior of any Borrower place of business, and Borrower shall assist Lender and its representatives and agents in making any such inspection. During an inspection of any Borrower place of business, Lender or Lender's representatives and agents may examine, among other things, whether Borrower (i) has a place of business that is separate from any personal residence, (ii) is open for business, (iii) has sufficient inventory and/or staff to conduct Borrower's business and (iv) has one or more credit card terminals or point of sale systems if Borrower processes credit card transactions. When performing an inspection, Lender or Lender's representatives and agents may photograph the interior and exterior of any Borrower place of business, including any signage. Any photograph will become and remain the sole property of Lender and will be shared with Lender's employees, representatives and agents. Borrower grants Lender the irrevocable and permanent right to display and share any photograph in all forms, including composite and modified representations, for all purposes, with Lender's employees, representatives and agents. Borrower agrees to reimburse Lender for the cost of the inspections described in this Section 10.

Borrower's name, at any time and from time to time for purposes of deciding whether to approve the requested business loan or for any update, renewal, extension of credit or other lawful purpose. Upon Borrower's request, Lender will advise Borrower if Lender obtained a credit report and Lender will give Borrower the credit bureau's name and address. Borrower agrees to submit current financial information, a new credit application, or both, in Borrower's name at any time promptly upon Lender's request.

**12. ATTORNEYS' FEES, COLLECTION COSTS AND POST-JUDGMENT RATE OF INTEREST:** In the event Lender retains counsel with respect to enforcement of its rights under this Loan Agreement or any other document or instrument given to Lender, Borrower agrees to pay all expenses of Lender in enforcing its rights to collect the Obligations or in taking possession, holding, preparing for disposition, and disposing of the Collateral, including Lender's reasonable attorneys' fees (whether or not an action is commenced and whether or not in the court of original jurisdiction, appellate court, bankruptcy court or otherwise) and all costs of collection of any judgment and any costs of appeal. In the event this Loan Agreement is brought to a judgment, interest shall accrue at the interest rate set forth in Section 2 above until the judgment is satisfied, except as prohibited by applicable law.

**13. SALE OF LOAN AGREEMENT:** This Loan Agreement, or an interest in this Loan Agreement, together with the rights to the Collateral, may be sold, assigned, transferred or conveyed by Lender one or more times.

**14. INDEMNIFICATION:** Except for Lender's willful misconduct, Borrower will indemnify and save Lender harmless from all loss, costs, damage, liability or expenses (including, without limitation, court costs and reasonable attorneys' fees) that Lender may sustain or incur by reason of defending or protecting Lender's security interest or the priority thereof or enforcing its rights to collect the Obligations, or in the prosecution or defense of any action or proceeding concerning any matter growing out of or in connection with this Loan Agreement and/or any other documents or instruments now or hereafter executed in connection with this Loan Agreement and/or the Obligations and/or the Collateral. This indemnity shall survive the repayment of the Obligations and the termination of this Loan Agreement.

**15. MISCELLANEOUS:**

    (a) Delay or failure of Lender to exercise any of its rights under this Loan Agreement shall not be deemed a waiver thereof. No waiver of any condition or requirement shall operate as a waiver of any other or subsequent condition or requirement.

    (b) This Loan Agreement may not be modified orally, and may be modified only upon written agreement signed by Lender.

    (c) Lender is an FDIC insured, Wisconsin state chartered bank and this Loan Agreement is accepted by Lender in Wisconsin. CONSEQUENTLY, THIS AGREEMENT WILL BE GOVERNED BY FEDERAL LAW APPLICABLE TO AN FDIC INSURED INSTITUTION AND TO THE EXTENT NOT PREEMPTED BY FEDERAL LAW, THE LAWS OF THE STATE OF WISCONSIN WITHOUT REGARD TO CONFLICT OF LAW RULES. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and reserved under this Loan Agreement will be governed by such laws.

    (d) Borrower and Lender agree that any action or proceeding to enforce any rights or obligations arising out of this Loan Agreement shall be commenced either in Wisconsin, New York or the state (or commonwealth, as the case may be) of Borrower's address set forth in Section 1 above ("Borrower's State") and Borrower waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to Borrower at the address specified by Borrower above in Section 1, or as otherwise provided by the laws of the State of Wisconsin, the State of New York, the Borrower's State, or the United States of America. Borrower and Lender agree that venue is proper in such courts.

    (e) Without affecting the liability of Borrower or any Guarantor, Lender may accept partial payments marked "in full" or otherwise, release or impair any Collateral or agree not to sue any party liable on this Loan Agreement without waiving any of its rights hereunder.

    (f) Presentment, protest, demand and notice of dishonor are waived.

(g) ..............................the inability of any Guarantor, Lender may from time to time, without notice, renew or extend the time for payment.

(h) Borrower expressly agrees that the interest rate set forth above in Section 2 is appropriate under the circumstances and shall be the applicable rate at which unpaid Principal (and Costs, as defined below) shall bear interest under this Loan Agreement, notwithstanding any rate of interest prescribed by statute from time to time; provided, however, if fulfillment of any provisions of this Loan Agreement or any other instrument securing the Obligations is subject to a law that sets maximum interest rates or other charges, and that law is finally interpreted so that the interest or other fees collected or to be collected in connection with this Loan Agreement exceed the permitted limits, then (I) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit and (II) any sums already collected from Borrower that exceed the permitted limits will be refunded or credited to Borrower and the obligations created by this Loan Agreement shall be fulfilled to the limit of such validity as is permitted by law.

(i) Borrower shall keep the Collateral and Lender's interest in it insured under policies with such provisions, for such amounts and by such insurers as shall be satisfactory to Lender from time to time, and shall furnish evidence of such insurance satisfactory to Lender upon request. Borrower assigns (and directs any insurer to pay) to Lender the proceeds of all such insurance and any premium refund and authorizes Lender to endorse in the name of Borrower any instrument for such proceeds or refunds and, at the option of Lender, to apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to restoration of the Collateral, returning any excess to Borrower. Lender is authorized, in the name of Borrower or otherwise, to make, adjust and/or settle claims under any insurance on the Collateral, or cancel the same after the occurrence of an Event of Default.

(j) If Borrower fails to perform any of Borrower's duties set forth in this Loan Agreement or in any evidence of or document relating to the Obligations, Lender is authorized, in Borrower's name or otherwise, to take any such action, including, without limitation, signing Borrower's name or paying any amount so required, and the cost ("Cost") shall be one of the Obligations secured by this Loan Agreement and shall be payable by Borrower upon Lender's demand with interest at the interest rate set forth above in Section 2 from the date of payment by Lender.

(k) Borrower releases Lender from any liability for any act or omission relating to the Obligations, the Collateral or this Loan Agreement, except Lender's willful misconduct.

(l) Invalidity or unenforceability of any provision of this Loan Agreement shall not affect the validity or enforceability of any other provision.

(m) The terms of this Loan Agreement shall be binding upon Borrower and its permitted successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

(n) Borrower acknowledges that a broker may have received compensation in connection with this Loan Agreement.

(o) Any of the Borrower, Lender or a Guarantor may choose to arbitrate any or all disputes and claims arising out of or relating to this Loan Agreement, the Guaranty or any other related document. A claim includes matters arising as an initial claim, counter-claim, cross-claim, third-party claim, or otherwise. If the Borrower, Lender or a Guarantor chooses to litigate any dispute or claim arising out of or relating to this Loan Agreement, the Guaranty or any related document through a judicial action, the decision to litigate shall not be deemed a waiver of arbitration, and if such judicial action is contested, any party may thereafter invoke its arbitration rights at any time before any discovery is taken in the judicial action. If the Borrower, Lender or a Guarantor seeks to have a dispute resolved by arbitration, that party must first send to the other party(ies) by certified mail, a written Notice of Intent to Arbitrate. If Borrower, Lender or a Guarantor do not reach an agreement to resolve the claim within 10 days after the Notice is received, any party may commence an arbitration proceeding with the American Arbitration Association ("AAA"). Lender will promptly reimburse Borrower or the Guarantor any arbitration filing fee, however, in the event that both the Borrower and the Guarantor must pay arbitration filing fees, Lender will only reimburse the Borrower's arbitration filing fee and, except as provided in the next sentence, the Lender will pay all arbitration administration and arbitrator fees. If the arbitrator finds that either the substance of any claim raised by Borrower or a Guarantor or the relief sought by Borrower or a Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rule of Procedure 11(b), then Lender will pay the administration or arbitrator fees only if required by the AAA Rules. If the arbitrator grants relief to the Borrower or a Guarantor that is equal to or greater than the value of the relief requested by the Borrower or a Guarantor in the arbitration, Lender shall reimburse Borrower or the Guarantor, as applicable, for

that party's reasonable attorneys' fees and expenses incurred for the arbitration. BORROWER AND LENDER AGREE THAT BY ENTERING INTO THIS LOAN AGREEMENT, EACH IS WAIVING THE RIGHT TO TRIAL BY JURY. BORROWER AND LENDER MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF REPRESENTATIVE OR CLASS MEMBER IN ANY PURPORTED REPRESENTATIVE OR CLASS PROCEEDING. Further, Borrower and Lender agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void. Any award by the individual arbitrator shall be final and binding, except for any appeal right under the Federal Arbitration Act ("FAA"), and may be entered and enforceable as a judgment in any court of competent jurisdiction, including as a judgment that permits Lender to initiate or complete the exercise of its remedies against, or its realization or foreclosure upon, any collateral or security provided for the benefit of Lender. This arbitration provision is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1.

(p) In order to ensure a high quality of service for Lender's customers, Lender may monitor and/or record telephone calls between Borrower and Lender's employees. Borrower acknowledges that Lender may do so and agrees in advance to any such monitoring or recording of telephone calls.

(q) Borrower authorizes Lender and Lender's affiliates, agents and independent contractors to contact Borrower at any telephone number Borrower provides to Lender or from which Borrower places a call to Lender, or any telephone number where Lender believes it may reach Borrower, using any means of communication, including, but not limited to, calls or text messages to mobile, cellular, wireless or similar devices or calls or text messages using an automated telephone dialing system and/or artificial voices or prerecorded messages, even if Borrower incurs charges for receiving such communications. Lender and Lender's affiliates, agents and independent contractors, may use any other medium not prohibited by law, including, but not limited to, mail, e-mail and facsimile, to contact Borrower. Borrower expressly consents to conduct business by electronic means.

(r) TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW, BORROWER AND LENDER WAIVE THEIR RIGHT TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON, ARISING OUT OF OR RELATED TO THIS LOAN AGREEMENT AND ALL OTHER DOCUMENTATION EVIDENCING THE OBLIGATIONS, IN ANY LEGAL ACTION OR PROCEEDING.

(s) This Loan Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument. For purposes of the execution of this Loan Agreement, electronic or fax signatures shall be treated in all respects as original signatures.

PRIOR TO SIGNING THIS LOAN AGREEMENT, BORROWER READ AND UNDERSTOOD ALL OF THE PROVISIONS OF THIS LOAN AGREEMENT. AFTER DUE CONSIDERATION, AND THE OPPORTUNITY TO CONSULT WITH OTHER LENDERS AND AN ATTORNEY, ACCOUNTANT OR OTHER COMPETENT PROFESSIONAL OF ITS CHOICE, BORROWER KNOWINGLY, WILLFULLY AND VOLUNTARILY AGREES TO THE TERMS OF THIS LOAN AGREEMENT.

BORROWER ACKNOWLEDGES RECEIPT OF A FULLY COMPLETED AND EXECUTED VERSION OF THIS LOAN AGREEMENT.

BORROWER: Homes By DeRamo, Inc.

By: *Vincent William De Ramo Jr.*
DocuSigned by:
2BAA883CFE9F498...

Printed Name: Vincent William De Ramo Jr.

Title: president

**ACKNOWLEDGMENT**

STATE/COMMONWEALTH OF _____ ___ )

                                   )     ss.:

COUNTY OF _____                  )

On the___ ___ day of _____, in the year ____ before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared <u>Vincent William De Ramo, Jr.</u>, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Business Promissory Note and Security Agreement and acknowledged to me that she/he executed the same in her/his capacity as___ __ _ _____ of_____, and that by her/his signature on the Business Promissory Note and Security Agreement, the individual, or the person upon behalf of which the individual acted, executed the Business Promissory Note and Security Agreement.


_____ _____
Notary Public
My Commission expires:

## SCHEDULE A - PURCHASE MONEY COLLATERAL

NONE

## SCHEDULE B

NONE

## SCHEDULE C

NONE

# SCHEDULE D

### ADDRESS OTHER THAN BORROWER'S ADDRESS AT WHICH COLLATERAL IS KEPT

| Property Address |
| --- |
| 74 Sugar Mill Dr, Osprey FL 34229 |
| 82 Sugar Mill Dr, Osprey FL 34229 |

**CONTINUING GUARANTY, PERSONAL (Unlimited)**          Dated: 3/24/2016

**GUARANTY.** For value received, and to induce BANK OF LAKE MILLS, its successors and/or assigns ("Lender"), with offices at 136 E. Madison St., Lake Mills, WI 53551, to extend credit or grant or continue other credit accommodations to Homes By DeRamo, Inc. ("Borrower"), the undersigned ("Guarantor," whether one or more) jointly and severally guarantees payment of the Obligations defined below when due or at the time any Borrower becomes the subject of bankruptcy or other insolvency proceedings. Except as provided below, "Obligations" mean all debts, obligations and liabilities of Borrower to Lender arising out of credit previously granted, credit contemporaneously granted or credit granted in the future by Lender to Borrower. Obligations include interest and charges and the amount of payments made to Lender or another by or on behalf of Borrower which are recovered from Lender by a trustee, receiver, creditor or other party pursuant to applicable federal or state law, and all costs, expenses and attorneys' fees at any time paid or incurred before and after judgment in endeavoring to collect all or part of any of the above, or to realize upon this Guaranty, or any collateral securing any of the above, including those incurred in successful defense or settlement of any counterclaim brought by Borrower or Guarantor or incident to any action or proceeding involving Borrower or Guarantor brought pursuant to the United States Bankruptcy Code. Obligations do not include personal, consumer, family or household transactions. Guarantor grants to Lender a security interest and lien in any credit balance and other money now owing or hereafter owed Guarantor by Lender. Lender may, at any time after the occurrence of an event of default with respect to any Obligation, without prior notice or demand, set off against any such credit balance or other money any amount owing upon the Obligations. This Guaranty also is secured by all existing and future security agreements between Lender and Guarantor, and the titles to the motor vehicles listed on Exhibit 1 to this Guaranty, with respect to which, Guarantor shall ensure that Lender is named as the only lien holder on each such motor vehicle title as of the date of this Guaranty (or the nearest subsequent date as permitted under applicable law). This Guaranty is valid and enforceable against Guarantor even though any Obligation is invalid or unenforceable against the Borrower.

**WAIVER.** Guarantor expressly waives (a) notice of the acceptance of this Guaranty, the creation of any present or future Obligation, default under any Obligation, proceedings to collect from the Borrower or anyone else, (b) all diligence of collection and presentment, demand, notice and protest, (c) any right to disclosures from Lender regarding the financial condition of the Borrower or the enforceability of the Obligations, and (d) all other legal and equitable defenses of suretyship and impairment of collateral. No claim, including a claim for reimbursement, subrogation, contribution or indemnification which Guarantor may, as a guarantor of the Obligations, have against a co-guarantor of any of the Obligations or against the Borrower shall be enforced or any payment accepted until the Obligations are paid in full and no payments to or collections by Lender are subject to any right of recovery.

**CONSENT.** With respect to any of the Obligations, Lender may from time to time before or after revocation of this Guaranty without notice to Guarantor and without affecting the liability of Guarantor (a) surrender, release, impair, sell or otherwise dispose of any security or collateral for the Obligations, (b) release or agree not to sue any guarantor or surety, (c) fail to perfect its security interest in or realize upon any security or collateral, (d) fail to realize upon any of the Obligations or to proceed against any Borrower or any guarantor or surety, (e) renew or extend the time of payment, (f) increase or decrease the rate of interest or the amount of the Obligations, (g) accept additional security or collateral, (h) determine the allocation and application of payments and credits and accept partial payments, (i) apply the proceeds of disposition of any collateral for the Obligations to any obligation of Borrower secured by such collateral in such order and amounts as it elects, (j) determine what, if anything, may at any time be done with reference to any security or collateral, and (k) settle or compromise the amount due or owing or claimed to be due or owing from the Borrower, which settlement or compromise shall not affect Guarantor's liability for the full amount of the unpaid Obligations. Guarantor expressly consents to and waives notice of all of the above. Guarantor consents to and authorizes Lender to obtain business and personal credit bureau reports in Guarantor's name, at any time and from time to time for purposes of deciding whether to approve the business loan requested by borrower or for any update, renewal, extension of credit to Borrower or other lawful purpose. Guarantor expressly authorizes Lender, agents or designees to report the payment history and loan performance to any national credit bureau for the purpose of inclusion of the related data in Guarantor's consumer credit report. Nothing contained in this Guaranty shall require Lender to first seek or exhaust any remedy against Borrower or to first proceed against any collateral or security for any of the Obligations or this Guaranty.

**PERSONS BOUND.** This Guaranty benefits and is enforceable by Lender, and its successors and assigns (collectively called "successors" and each a "successor"), and binds Guarantor, and Guarantor's heirs, personal representatives, successors and assigns. This Guaranty shall continue in full force and effect notwithstanding any change in structure or status of Borrower or Lender, whether by merger, consolidation, reorganization or otherwise, or assignment of this Guaranty to a successor Lender. This Guaranty includes additional provisions below.

---

**NOTICE TO GUARANTOR**

You are being asked to guarantee the past, present and future Obligations of Borrower. If Borrower does not pay, you will have to. You may also have to pay collection costs. Lender can collect the Obligations from you without first trying to collect from Borrower or another guarantor or proceeding against any collateral or other security for the Obligations.

---

(Guarantor Name) Vincent William De Ramo, Jr.

(Guarantor Signature) *Vincent William De Ramo Jr.*

(Guarantor Address) 7614peninsulardrivesarasotafl34231

(Guarantor Name) Vincent W. DeRamo and Tracy E. DeRamo Trustees under Agreement dated 5/7/00

(Guarantor Signature) *Vincent William De Ramo Jr.*

(Guarantor Address) 7614peninsulardrivesarasotafl34231

---

**For Married Residents Only:** Each Guarantor who signs below represents that this obligation is incurred in the interest of his or her marriage or family.

X *Vincent William De Ramo Jr.*              X _____

---

## ADDITIONAL PROVISIONS

**ENTIRE AGREEMENT.** This Guaranty is intended by Guarantor and Lender as a final expression of this Guaranty and as a complete and exclusive statement of its terms, there being no conditions to the full effectiveness of this Guaranty. This Guaranty may not be supplemented or modified, except in writing by Lender.

**REPRESENTATIONS.** Guarantor acknowledges and agrees that Lender (a) has not made any representations or warranties with respect to, (b) does not assume any responsibility to Guarantor for, and (c) has no duty to provide information to Guarantor regarding, the enforceability of any of the Obligations or the financial condition of the Borrower. Guarantor has independently determined the creditworthiness of Borrower and the enforceability of the Obligations and until the Obligations are paid in full will independently and without reliance on Lender continue to make such determinations.

**REVOCATION.** This is a continuing guaranty and shall remain in full force and effect until Lender receives written notice of its revocation signed by Guarantor or actual notice of the death of Guarantor. Upon revocation by written notice or actual notice of death, this Guaranty shall continue in full force and effect as to all Obligations contracted for or incurred before revocation and, as to them, Lender shall have the rights provided by this Guaranty as if no revocation had occurred. Any renewal, extension or increase in the interest rate of any such Obligation, whether made before or after revocation, shall constitute an Obligation contracted for or incurred before revocation. Obligations contracted for or incurred before revocation shall also include credit extended after revocation pursuant to commitments made before revocation. Revocation by one Guarantor shall not affect any of the liabilities or obligations of any other Guarantor and this Guaranty shall continue in full force and effect with respect to them.

**ARBITRATION.** Any of the Borrower, Lender or a Guarantor may choose to arbitrate any or all disputes and claims arising out of or relating to this Guaranty or any other related document. A claim includes matters arising as an initial claim, counter-claim, cross-claim, third-party claim, or otherwise. If the Borrower, Lender or a Guarantor chooses to

*Rev. Sep 2014*                                                                 P a g e |18

litigate any dispute or claim arising out of or relating to this Guaranty or any related document through a judicial action, the decision to litigate shall not be deemed a waiver of arbitration, and if such judicial action is contested, any party may thereafter invoke its arbitration rights at any time before any discovery is taken in the judicial action.   If the Borrower, Lender or a Guarantor seeks to have a dispute resolved by arbitration, that party must first send to the other party(ies) by certified mail, a written Notice of Intent to Arbitrate.  If Borrower, Lender or a Guarantor do not reach an agreement to resolve the claim within 10 days after the Notice is received, any party may commence an arbitration proceeding with the American Arbitration Association ("AAA").  Lender will promptly reimburse Borrower or the Guarantor any arbitration filing fee, however, in the event that both the Borrower and the Guarantor must pay arbitration filing fees, Lender will only reimburse the Borrower's arbitration filing fee and, except as provided in the next sentence, the Lender will pay all arbitration administration and arbitrator fees.  If the arbitrator finds that either the substance of any claim raised by Borrower or a Guarantor or the relief sought by Borrower or a Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rule of Procedure 11(b), then Lender will pay the administration and arbitrator fees only if required by the AAA Rules.  If the arbitrator grants relief to the Borrower or a Guarantor that is equal to or greater than the value of the relief requested by the Borrower or a Guarantor in the arbitration, Lender shall reimburse Borrower or the Guarantor, as applicable, for that party's reasonable attorneys' fees and expenses incurred for the arbitration. GUARANTOR AND LENDER AGREE THAT BY ENTERING INTO THIS GUARANTY, EACH IS WAIVING THE RIGHT TO TRIAL BY JURY.  GUARANTOR AND LENDER MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF REPRESENTATIVE OR CLASS MEMBER IN ANY PURPORTED REPRESENTATIVE OR CLASS PROCEEDING.  Further, Guarantor and Lender agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void.  Any award by the individual arbitrator shall be final and binding, except for any appeal right under the Federal Arbitration Act ("FAA"), and may be entered and enforceable as a judgment in any court of competent jurisdiction, including as a judgment that permits Lender to initiate or complete the exercise of its remedies against, or its realization or foreclosure upon, any collateral or security provided for the benefit of Lender.  This arbitration provision is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1.

**INTERPRETATION.** Lender is an FDIC insured, Wisconsin state chartered bank. CONSEQUENTLY, THIS GUARANTY WILL BE GOVERNED BY FEDERAL LAW APPLICABLE TO AN FDIC INSURED INSTITUTION AND TO THE EXTENT NOT PREEMPTED BY FEDERAL LAW, THE LAWS OF THE STATE OF WISCONSIN WITHOUT REGARD TO CONFLICT OF LAW RULES. The legality, enforceability and interpretation of this Guaranty and the amounts guaranteed will be governed by such laws.

**JURISDICTION.** Guarantor irrevocably consents with respect to any suit, action or proceeding relating to this Guaranty or any of the other loan documents relating to the Obligations, that venue shall be either in Wisconsin, New York or the state (or commonwealth, as the case may be) of Borrower's principal place of business ("Borrower's State") and Guarantor waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to Guarantor at the address specified by Guarantor above, or as otherwise provided by the laws of the State of Wisconsin, the State of New York, the Borrower's State, or the United States of America. Guarantor agrees that venue is proper in such courts.

<u>**JURY WAIVER**</u>

**GUARANTOR KNOWINGLY AND VOLUNTARILY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BASED UPON, ARISING OUT OF OR IN ANY WAY RELATING TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED BY THIS GUARANTY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, AND AGREES AND CONSENTS THAT ANY SUCH ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM SHALL BE DECIDED BY TRIAL TO THE COURT WITHOUT A JURY. GUARANTOR ACKNOWLEDGES AND UNDERSTANDS THAT THIS WAIVER AND CONSENT CONSTITUTES A MATERIAL INDUCEMENT TO LENDER TO ENTER INTO THE TRANSACTION WITH THE BORROWER.**

Guarantor <u>Vincent William De Ramo, Jr.</u>

DocuSigned by:

*Vincent William De Ramo Jr.*

2BAA883CFE9F438...

Guarantor <u>Vincent W. DeRamo and Tracy E. DeRamo</u>
<u>Trustees under Agreement dated 3/7/00</u>

DocuSigned by:

*Vincent William De Ramo Jr.*

2BAA883CFE9F438...

Acknowledgement to signature(s) on following pages.

**ACKNOWLEDGEMENT**

STATE/COMMONWEALTH OF _____ )
                                                                                      ) ss.
COUNTY OF _____ _____              )

On the _____ day of _____, in the year ____, before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared <u>Vincent William De Ramo, Jr.</u>, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Continuing Guaranty (Unlimited) and acknowledged to me that she/he executed the same in her/his capacity, and that by her/his signature on the Continuing Guaranty (Unlimited), the individual, or the person upon behalf of which the individual acted, executed the Continuing Guaranty (Unlimited).

_____
Notary Public
My Commission expires:

**ACKNOWLEDGEMENT**

STATE/COMMONWEALTH OF _____ )
                                                                                      ) ss.
COUNTY OF _____                                )

On the _____ day of _____, in the year ____, before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared <u>Vincent W. DeRamo and Tracy E. DeRamo Trustees under Agreement dated 3/7/00</u>, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Continuing Guaranty (Unlimited) and acknowledged to me that she/he executed the same in her/his capacity, and that by her/his signature on the Continuing Guaranty (Unlimited), the individual, or the person upon behalf of which the individual acted, executed the Continuing Guaranty (Unlimited).

_____
Notary Public
My Commission expires:

# EXHIBIT 1

NONE

**COOPERATION AGREEMENT**

DATE: 3/24/2016

In connection with the business loan to Borrower evidenced by the Business Promissory Note and Security Agreement of even date herewith, Borrower hereby agrees:

In the event any further documentation is required by Lender in connection with the loan, Borrower hereby agrees to execute such documentation, including, but not limited to, any amendments, corrections, deletions or additions to the loan documents being executed on even date herewith.

In the event Borrower is required to furnish such necessary documentation and fails to do so within ten (10) days from receipt of written demand, then such failure shall be an event of default under the terms of the loan and Lender or its successors and assigns shall have the right to demand payment in full under the loan documents and enforce all other rights against Borrower.

The terms "Borrower" and "Lender" have the same meanings as set forth in the Business Promissory Note and Security Agreement.

BORROWER: Homes By DeRamo, Inc.

By: _Vincent William De Ramo Jr._
—28AA893CFE8F438...
Printed Name: ___Vincent William De Ramo Jr.___

Title: ___president___

STATE/COMMONWEALTH OF _____ )

) ss.:

COUNTY OF _____ )

On the_____ day of _____, in the year ____ before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared _Vincent William De Ramo, Jr._, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Cooperation Agreement and acknowledged to me that she/he executed the same in her/his capacity as _____ of _____, and that by her/his signature on the Cooperation Agreement, the individual, or the person upon behalf of which the individual acted, executed the Cooperation Agreement.

_____
Notary Public
My Commission expires

*Rev. Sep 2014*                                            P a g e |23

In connection with the loan and all related agreements dated 3/24/2016 (the "Agreement") between Bank of Lake Mills, its Successors and/or Assigns ("Lender") and Homes By DeRamo, Inc. ("Borrower"), Borrower has requested the disbursement of the loan proceeds, notwithstanding that one or more title invoices needed to accurately establish the loan balance, net proceeds and/or required loan payments have not been received. Borrower has requested that Lender estimate the amount of the title invoice and establish the loan balance and/or net proceeds (as the case may be) and required loan payments based upon the estimated invoice.

Upon receipt of the actual invoice, Lender will notify the Borrower of the amount of the actual invoice(s) and the difference between the actual invoice and the estimated amount used at closing. If the estimate is lower than the actual cost of the related title services and premium, Borrower will be obligated to reimburse Lender for the shortfall and Borrower expressly authorizes Lender to ACH the shortfall from Borrower's business account along with the daily or weekly payment. In the event the actual invoice is less than the estimated invoice, Borrower will receive a refund for the excess amount.

Where the invoice received is less than the estimated invoice, Borrower has the option in lieu of a refund to request an amendment to the Agreement that reduces the loan amount and required daily or weekly payments accordingly. Requests must be sent to closing@wbl.com from the email address provided in the loan application. In the event that no amendment request is received within 5 business days of the disbursement of the loan proceeds to Borrower, Lender will automatically process a refund of the excess amount and Borrower agrees that the loan balance and daily payments will remain unchanged.

Homes By DeRamo, Inc.
By: _Vincent William De Ramo Jr._
Date: _3/24/2016_
Name: _Vincent William De Ramo Jr._

Bank of Lake Mills, Its Successors and/or Assigns
By: _____
Date: _____

## SECTION I

| 1. LENDER NAME AND ADDRESS | 2. COLLATERAL(Building/Mobile Home/Personal property ) PROPERTY ADDRESS (Legal description may be attached) |
|---|---|
| WORLD BUSINESS LENDERS, LLC<br>120 W 45TH STREET - 29TH FLOOR<br>NEW YORK, NY 10036 | DERAMO, TRACEY & DERAMO, VINCENT<br>74 SUGAR MILL DR<br>OSPREY, FL 34229-9077 |

| 3. LENDER ID. NO. | 4. LOAN IDENTIFIER | 5. AMOUNT OF FLOOD INSURANCE REQUIRED |
|---|---|---|
| | 19547 | $ |

## SECTION II

### A. NATIONAL FLOOD INSURANCE PROGRAM (NFIP) COMMUNITY JURISDICTION

| 1. NFIP community name | 2. County(ies) | 3. State | 4. NFIP community number |
|---|---|---|---|
| SARASOTA COUNTY * | Unincorporated Areas | FL | 125144 |

### B. NATIONAL FLOOD INSURANCE PROGRAM (NFIP) DATA AFFECTING BUILDING / MOBILE HOME

| 1.NFIP map number or community - panel number (community name, if not the same as in "A"). | 2. NFIP map panel effective/ revised date | 3. LOMA/LOMR | 4. Flood zone/BFE | 5. No NFIP map |
|---|---|---|---|---|
| 1251440228E | 09/03/1992 | ☐ Yes    Date | X | |

### C. FEDERAL FLOOD INSURANCE AVAILABILITY (check all that apply)

1. [X] Flood insurance is available (community participates in NFIP).    [X] Regular Program    ☐ Emergency Program of NFIP

2. ☐ Federal Flood Insurance is not available because community is not participating in the NFIP.

3. ☐ Building/Mobile home is in a Coastal Barrier Resources Area (CBRA) or Otherwise Protected Area ( OPA ), Federal Flood Insurance may not be available.

CBRA/OPA designation date: _____

### D. DETERMINATION

IS BUILDING / MOBILE HOME IN SPECIAL FLOOD HAZARD AREA ( ZONES CONTAINING THE LETTERS "A" OR "V")?    ☐ Yes    [X] No

If yes, flood insurance is required by the Flood Disaster Protection Act of 1973.
If no, flood insurance is not required by the Flood Disaster Protection Act of 1973. Please note, the risk of flooding in this area is only reduced, not removed.

### E. COMMENTS (optional):

Request Date: 03/22/2016       Service Type: Life Of Loan
                              Requested By: JO57213A

Input address: 74 SUGARMILL DRIVE, OSPREY, FL 34229
HMDA Information: MSA/MD: 42260 NECTA: State: 12 County: 115 Census Tract: 0021.00

This flood determination is provided solely for the use and benefit of the entity named in Section 1, Box 1 in order to comply with the 1994 Reform Act and may not be used for or relied upon by any other entity or individual for any purpose, including, but not limited to deciding whether to purchase a property or determining the value of a property.

This determination is based on examining the NFIP map,any Federal Emergency Management Agency revisions to it, and any other information needed to locate the building/mobile home on the NFIP map.

### F.PREPARER'S INFORMATION

Certificate:    57102652-0

| Name, address, telephone number (if other than lender) | DATE OF DETERMINATION |
|---|---|
| Great Lakes Flood Certification, LLC<br>P.O.Box 663<br>Wautoma, WI 54982<br>(920) 787 - 7664 | 03/22/2016 |

FEMA FORM 086-0-32, (4/12)              PREVIOUSLY FEMA FORM 81-93

SPECIAL FLOOD HAZARD AREA

| | | | |
|---|---|---|---|
| Prepared by: | Great Lakes Flood Certification, LLC | Loan #: | 19547 |
| Customer: | WORLD BUSINESS LENDERS, LLC | Certificate #: | 57102652-0 |
| Client #: | 224057 | Date: | 03/22/2016 |

Borrower: DERAMO, TRACEY & DERAMO, VINCENT
Property: 74 SUGAR MILL DR
OSPREY, FL 34229-9077

Attached is the completed Standard Flood Hazard Determination Form that indicates that the building or mobile home securing your loan is not located in an area designated by the Federal Emergency Management Agency ("FEMA") as a Special Flood Hazard Area ("SFHA"). As a result of this determination, you will not be required to obtain mandatory flood insurance in connection with the making of your loan.

However, there is still a risk of flooding, even in non-SFHA's. As such you, or your lender, may want to consider the advisability of obtaining flood insurance at reduced rates. You should check with your insurance agent or company as to the coverage types and amounts available to you and make your own determination as to whether you desire any such coverage.

If, however, at any time during the term of your loan the improved real estate or mobile home securing your loan is, due to re-mapping by FEMA or otherwise, located in an area that has been identified by FEMA as an area having special flood hazards and in which flood insurance is available under the National Flood Insurance Program, you will be so notified and advised that you must obtain an appropriate amount of flood insurance coverage. If, within 45 days after we send you such notification, you fail to purchase flood insurance in an amount not less than the amount we advise you is necessary, we shall purchase such flood insurance on your behalf at your expense, as we are authorized to do in accordance with the provisions of Flood Disaster Protection Act of 1973, as amended.

I/We, the undersigned borrower(s)/applicants(s), hereby understand and agree to all the above.

DocuSigned by:
Vincent William De Ramo Jr    3/24/2016
Borrower/Applicant    Date

_____    _____
Borrower/Applicant    Date

_____    _____
Borrower/Applicant    Date

_____    _____
Borrower/Applicant    Date

_____    _____
Borrower/Applicant    Date

_____    _____
Borrower/Applicant    Date

| SECTION I | |
|---|---|
| 1. LENDER NAME AND ADDRESS<br><br>WORLD BUSINESS LENDERS, LLC<br>120 W 45TH STREET - 29TH FLOOR<br>NEW YORK, NY 10036 | 2. COLLATERAL (Building/Mobile Home/Personal property ) PROPERTY ADDRESS<br>(Legal description may be attached)<br><br>DERAMO, TRACEY & DERAMO, VINCENT<br>82 SUGAR MILL DR<br>OSPREY, FL 34229-9077 |

| 3. LENDER ID. NO. | 4. LOAN IDENTIFIER<br><br>19547 | 5. AMOUNT OF FLOOD INSURANCE REQUIRED<br><br>$ |
|---|---|---|

**SECTION II**

**A. NATIONAL FLOOD INSURANCE PROGRAM (NFIP) COMMUNITY JURISDICTION**

| 1. NFIP community name<br><br>SARASOTA COUNTY * | 2. County(ies)<br><br>Unincorporated Areas | 3. State<br><br>FL | 4. NFIP community number<br><br>125144 |
|---|---|---|---|

**B. NATIONAL FLOOD INSURANCE PROGRAM (NFIP) DATA AFFECTING BUILDING / MOBILE HOME**

| 1. NFIP map number or community - panel number (community name, if not the same as in "A").<br><br>1251440228E | 2. NFIP map panel effective/ revised date<br><br>09/03/1992 | 3. LOMA/LOMR<br><br>☐<br>Yes   Date | 4. Flood zone/BFE<br><br>X | 5. No NFIP map |
|---|---|---|---|---|

**C. FEDERAL FLOOD INSURANCE AVAILABILITY (check all that apply)**

1. [X] Flood insurance is available (community participates in NFIP).    [X] Regular Program    ☐ Emergency Program of NFIP

2. ☐ Federal Flood Insurance is not available because community is not participating in the NFIP.

3. ☐ Building/Mobile home is in a Coastal Barrier Resources Area (CBRA) or Otherwise Protected Area ( OPA ), Federal Flood Insurance may not be available.

CBRA/OPA designation date: _____

**D. DETERMINATION**

IS BUILDING / MOBILE HOME IN SPECIAL FLOOD HAZARD AREA    ☐ Yes    [X] No
( ZONES CONTAINING THE LETTERS "A" OR "V")?
If yes, flood insurance is required by the Flood Disaster Protection Act of 1973.
If no, flood insurance is not required by the Flood Disaster Protection Act of 1973. Please note, the risk of flooding in this area is only reduced, not removed.

**E. COMMENTS (optional):**

Request Date: 03/22/2016    Service Type: Life Of Loan
                           Requested By: JO57213A

Input address: 82 SUGARMILL DRIVE, OSPREY, FL 34229
HMDA Information: MSA/MD: 42260 NECTA: State: 12 County: 115 Census Tract: 0021.00

This flood determination is provided solely for the use and benefit of the entity named in Section 1, Box 1 in order to comply with the 1994 Reform Act and may not be used for or relied upon by any other entity or individual for any purpose, including, but not limited to deciding whether to purchase a property or determining the value of a property.

This determination is based on examining the NFIP map, any Federal Emergency Management Agency revisions to it, and any other information needed to locate the building/mobile home on the NFIP map.

| F. PREPARER'S INFORMATION | Certificate:    57102641-0 |
|---|---|
| Name, address, telephone number (if other than lender)<br><br>Great Lakes Flood Certification, LLC<br>P.O. Box 663<br>Wautoma, WI 54982<br>(920) 787 - 7664 | DATE OF DETERMINATION<br><br>03/22/2016 |

FEMA FORM 086-0-32, (4/12)          PREVIOUSLY FEMA FORM 81-93

OF SPECIAL FLOOD HAZARD AREA

| | | | |
|---|---|---|---|
| Prepared by: | Great Lakes Flood Certification, LLC | Loan #: | 19547 |
| Customer: | WORLD BUSINESS LENDERS, LLC | Certificate #: | 57102641-0 |
| Client #: | 224057 | Date: | 03/22/2016 |

Borrower: DERAMO, TRACEY & DERAMO, VINCENT
Property: 82 SUGAR MILL DR
OSPREY, FL 34229-9077

Attached is the completed Standard Flood Hazard Determination Form that indicates that the building or mobile home securing your loan is <u>not</u> located in an area designated by the Federal Emergency Management Agency ("FEMA") as a Special Flood Hazard Area ("SFHA"). As a result of this determination, you will not be required to obtain mandatory flood insurance in connection with the making of your loan.

However, there is still a risk of flooding, even in non-SFHA's. As such you, or your lender, may want to consider the advisability of obtaining flood insurance at reduced rates. You should check with your insurance agent or company as to the coverage types and amounts available to you and make your own determination as to whether you desire any such coverage.

If, however, at any time during the term of your loan the improved real estate or mobile home securing your loan is, due to re-mapping by FEMA or otherwise, located in an area that has been identified by FEMA as an area having special flood hazards and in which flood insurance is available under the National Flood Insurance Program, you will be so notified and advised that you must obtain an appropriate amount of flood insurance coverage. If, within 45 days after we send you such notification, you fail to purchase flood insurance in an amount not less than the amount we advise you is necessary, we shall purchase such flood insurance on your behalf at your expense, as we are authorized to do in accordance with the provisions of Flood Disaster Protection Act of 1973, as amended.

I/We, the undersigned borrower(s)/applicants(s), hereby understand and agree to all the above.

DocuSigned by:
Vincent William DeRamo 3/28/2016

| Borrower/Applicant | Date | Borrower/Applicant | Date |
|---|---|---|---|

| Borrower/Applicant | Date | Borrower/Applicant | Date |
|---|---|---|---|

| Borrower/Applicant | Date | Borrower/Applicant | Date |
|---|---|---|---|

Filing # 56527218 E-Filed 05/16/2017 07:09:01 PM

INSTRUMENT # 2016057339   2   PG(S)

5/10/2016 11:25 AM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY, FLORIDA
SIMPLIFILE                    Receipt # 1982781

Prepared by: World Business Lenders, LLC.
Address: 120 West 45ⁿ. St 29ᵗʰ Floor
          New York, NY 10036

### ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that Bank of Lake Mills, for value received does hereby sell, assign, transfer, set over and convey unto World Business Lenders, LLC at 120 W. 45ᵗʰ St 29ᵗʰ Floor, New York, NY 10036, all of its right, title and interest of in and to that certain Mortgage dated 3/24/2016, executed by Tracy E. DeRamo and Vincent W. DeRamo, wife and husband, (Premises A, B) Vincent W. DeRamo, Trustee under agreement dated 3/7/00 and Tracy E. DeRamo, Trustee under agreement dated 3/7/00 (Premises C), and covering the following described property:

### Exhibit A
### Legal Description

<ins>PREMISES A:</ins>

ALL THAT CERTAIN lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 75, Oaks, according to the plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

<ins>PREMISES B:</ins>

ALL THAT CERTAIN lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 77, Oaks, according to the Plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

PREMISES C:
ALL THAT CERTAIN lot or piece of ground situate in the City of Sarasota, County of Sarasota, State of Florida.
Lot 62, SOUTHPOINTE SHORES, Unit No. 2, as per plat thereof, recorded in Plat Book 10, Page 58, of the Public Records of Sarasota County, Florida.
Commonly Known as 74 Sugarmill Drive, Osprey, FL 34229, and 82 Sugarmill Drive, Osprey, FL 34229, and 7614 Peninsular Drive, Sarasota, FL 34231

filed for record on 4/12/2016, as Instrument No. 2016043540 and recorded in the Official Records of Sarasota County, Florida, together with note debts and claims secured by said mortgage and the covenants contained therein.



EXHIBIT

8

IN WITNESS WHEREOF, **Bank of Lake Mills** has caused this instrument to be signed by its **Attorney-in-Fact** hereto this _21st_ day of _April_, _2016_.

_Bank of Lake Mills_

By: Alex Nadler
**Title: Vice President, World Business Lenders,**
**LLC as Attorney-in-Fact for Bank of Lake Mills**
_By Power of Attorney recorded 11/24/2015 in Bk 19031 Pg392_
_of official records of Pinellas County, Florida._

State of _New York_

County of _New York_

BE IT REMBERED, That on this _21st_ day of _April_, _2016_ before me, the undersigned a Notary Public in and for said County and State came _Alex Nadler_ the _Attorney-In-Fact_ (title) who is personally known to me to be the same person who executed the within instrument of writing, and duly acknowledged the execution of the same.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal the day and year last above written.

Notary Public _Victoria Bretton_

My Commission Expires _Jan 29, 2019_

VICTORIA BRETTON
Notary Public, State of New York
Registration #01BR5032138
Qualified in New York County
Commission Expires Jan. 29, 2019

Filing # 56527218 E-Filed 05/16/2017 07:09:01 PM

This document was prepared by:
World Business Lenders, LLC
101 Hudson Street, 33rd Floor
Jersey City , NJ 07302

Return To:
CT LIEN SOLUTIONS
PO BOX 29071
GLENDALE , CA 91209-9071
Phone #: 800-331-3282

INSTRUMENT # 2017057402   3   PG(S)

5/8/2017 2:40 PM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY, FLORIDA

SIMPLIFILE                  Receipt # 2108967

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 101 Hudson Street, 33rd Floor, Jersey City, NJ, 07302 , does hereby grant, sell, assign, transfer and convey, unto WBL SPE II, LLC , a corporation organized and existing under the laws of Delaware (herein "Assignee"), whose address is 101 Hudson Street, 33rd Floor, Jersey City, NJ, 07302 , a certain Mortgage dated 03/16/2016 , made and executed by Vincent W. DeRamo, Trustee under agreement dated 3/7/00, as to an undivided one-half interest, and Tracy E. DeRamo, Trustee under agreement dated 3/7/00, as to an undivided one-half interest , to and in favor of Bank of Lake Mills, its successors and/or assigns upon the following described property situated in Sarasota County , State of Florida:

Such Mortgage having been given to secure payment of Four Hundred Fifty Seven Thousand Six Hundred Twenty Five dollars and Zero cents ( $457,625.00 ) which Mortgage is of record in: Instrument No: 2016034543, of the Sarasota County Clerk of the Circuit Court Records of Sarasota County, State of Florida, together with the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

Description/Additional information: See attached.
Originally Recorded on: 03/23/2016
TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.
IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on 05/08/2017 .

World Business Lenders, LLC
(Assignor)

_____ Electronic Signature

By: ALEX NADLER
Its: Vice President

_____ Electronic Signature

Witness FAN FAN

_____ Electronic Signature

Witness Cassidy Dou

Page # 1  58804026 RPY Ref# 1684488 38631 FL115 Sarasota Cou R19484 7614 Penninsular Dr, Sarasota FL 34231
VMP995-FL, WOLTERS KLUWER FINANCIAL SERVICES © 2016



EXHIBIT
9

**Filed  05/17/2017 09:01 AM - Karen E. Rushing, Clerk of the Circuit Court, Sarasota County, FL**

STATE OF NEW JERSEY, HUDSON COUNTY

On **May 08, 2017** before me, the undersigned, a notary public in and for said state, personally appeared **ALEX NADLER, Vice President of World Business Lenders, LLC** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

*Seth A. Notes*
                                                    Electronic
                                                    Notarization

Notary Public SETH A. NOTES

Commission Expires: 07/15/2021

SETH A. NOTES
NOTARY PUBLIC OF NEW JERSEY
Comm. # 50041976
My Commission Expires 7/15/2021

**Exhibit A**

**Legal Description**

**ALL THAT CERTAIN** lot or piece of ground situate in the City of Sarasota, County of Sarasota, State of Florida.
Lot 62, SOUTHPOINTE SHORES, Unit No. 2, as per plat thereof, recorded in Plat Book 10, Page 58, of the Public Records of Sarasota County, Florida.

Commonly Known as 7614 Peninsular Drive, Sarasota, FL 34231 

Filing # 56527218 E-Filed 05/16/2017 07:09:01 PM

This document was prepared by:
World Business Lenders, LLC
101 Hudson Street, 33rd Floor
Jersey City, NJ 07302

INSTRUMENT # 2017057407   3   PG(S)

5/8/2017 2:41 PM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY, FLORIDA
SIMPLIFILE              Receipt # 2108972

Return To:
CT LIEN SOLUTIONS
PO BOX 29071
GLENDALE, CA 91209-9071
Phone #: 800-331-3282

## ASSIGNMENT OF MORTGAGE



For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 101 Hudson Street, 33rd Floor, Jersey City, NJ, 07302 , does hereby grant, sell, assign, transfer and convey, unto WBL SPE II, LLC , a corporation organized and existing under the laws of Delaware (herein "Assignee"), whose address is 101 Hudson Street, 33rd Floor, Jersey City, NJ, 07302 , a certain Mortgage dated 03/24/2016 , made and executed by Tracy E. DeRamo and Vincent W. DeRamo, wife and husband, (Premises A, B) and Vincent W. DeRamo, Trustee under agreement dated 3/7/00 and Tracy E. Deramo, Trustee under agreement dated 3/7/00 (Premises C) , to and in favor of  Bank of Lake Mills, its successors and/or assigns  upon the following described property situated in Sarasota County , State of Florida:

Such Mortgage having been given to secure payment of Ninety One Thousand Two Hundred Fifteen dollars and Zero cents  ( $91,215.00 ) which Mortgage is of record in:  Instrument No: 2016043540, of the Sarasota County Clerk of the Circuit Court Records of Sarasota County, State of Florida, together with the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

Description/Additional Information: See attached.
Originally Recorded on: 04/12/2016
    TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.
    IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on 05/08/2017 .

World Business Lenders, LLC
(Assignor)

_____ Electronic Signature

By: ALEX NADLER
Its: Vice President

_____ Electronic Signature

Witness FAN FAN

_____ Electronic Signature

Witness Cassidy Dou

Page # 1  56804018 RPY Ref# 1684490 38831 FL115 Sarasota Cou R18547 74 Sugarmill Drive, Osprey, FL 34229, and 62 Sugarmill Drive, Osprey, FL 34229, and 7614 Peninsular Drive, Sarasota, FL 34231
VMP995-FL, WOLTERS KLUWER FINANCIAL SERVICES © 2016



EXHIBIT
10

STATE OF NEW JERSEY, HUDSON COUNTY

On May 08, 2017 before me, the undersigned, a notary public in and for said state, personally appeared **ALEX NADLER, Vice President of World Business Lenders, LLC** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

*Seth A. Notes*
Electronic
Notarization

_____
Notary Public **SETH A. NOTES**

Commission Expires: 07/16/2021
**SETH A. NOTES**
**NOTARY PUBLIC OF NEW JERSEY**
**Comm. # 50041976**
**My Commission Expires 7/16/2021**

Exhibit "A"

Legal Description

**PREMISES A:**

**ALL THAT CERTAIN** lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 75, Oaks, according to the plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

**PREMISES B:**

**ALL THAT CERTAIN** lot or piece of ground situate in the County of Sarasota, State of Florida.

Lot 77, Oaks, according to the Plat thereof recorded in Plat Book 28, Pages 48, 48A through 48S, inclusive, of the Public Records of Sarasota County, Florida.

Commonly Known as 74 Sugarmill Drive, Osprey, FL 34229, and 82 Sugarmill Drive, Osprey, FL 34229